RECEIPT # _54900_

AMOUNT $ _150.00_

SUMMONS ISS. _yes_

LOCAL RULE 4.1 ✓

WAIVER OF SERV. _____

MCF ISSUED _____

AO 120 OR 121 _____

BY DPTY CLK. _defo_

DATE _3-30-04_

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

_____

PETER J. DONOVAN pro se,

      Plaintiff,

  vs.

CITY OF WOBURN,

WOBURN LICENSE COMISSION,

PAUL WENTWORTH,

J. KEVIN MAGUIRE,

OWEN McCAFFERY,

STEVE PARIS, and

EDWARD ROBERTSON,

      Defendants.

_____

Case No:

04 · 10614 RWZ

*Referred to CMJ MBBowler*

### COMPLAINT

### JURY TRIAL DEMANDED

### INTRODUCTION

1.    This is an action, by Peter J. Donovan (Plaintiff, Donovan, PJD hereafter), arising from the decisions of Defendant, City of Woburn License Commission ("WLC" hereafter) denying the plaintiff's applications, pursuant to MGL c. 138, § 15, for the 8th all-alcoholic package store license in June 2001 and on July 31, 2003 that would allow PJD to operate his corporate gift company specializing in wine baskets and other gift arrangements. The Defendant's decisions violated the Plaintiff's following rights as an individual; Due Process Clause/Rights pursuant to the Constitution of the Commonwealth, Fourteenth Amendment's Equal Protection Clause under a "Class of One" of the United States Constitution, Freedom of Speech Clause of the First Amendment of the United States Constitution, and the Federal RICO ACT and not limited to. All in retaliation for him being a constant critic of Woburn's political system, especially members of WLC, the Building Commissioner, the City Solicitor and the sitting major and not limited to.

1       2.    Other related cases filed in this matter include the following and not limited to; a).
The Boston Beer and Wine Company, Inc. v. ABCC docket number 97-4332; b.) Peter
2    Donovan v. Woburn License Commission et. al. docket number 02-2230; c.) Peter Donovan v.
Woburn Zoning Board of Appeals et. al. docket number 02-3386; And d.) Peter Donovan v.
3    Woburn License Commission et. al. docket number 03-3568.    These cases were filed in
Middlesex Superior Court, Cambridge, Middlesex County, MA ("MA Court" hereafter).
4

5                                           **PARTIES**

6

        3.    The plaintiff, Peter J. Donovan (PJD, Donovan or Plaintiff hereinafter) is an
7    individual who resides at 35 Longmeadow Road, Arlington, Middlesex County, MA.    Mr.
Donovan is also known as Peter J. Donovan d/b/a Corporate Wines & Gifts.  At all relevant
8    times, PJD has been 100% Shareholder of The Boston Beer and Wine Company, Inc. (BBWC
hereafter) and Sole Proprietor of Corporate Wines and Gift.
9

        4.    The defendant, Woburn License Commission (WLC hereinafter), is the duly
10   constituted licensing authority for the City of Woburn pursuant to MGL c. 138 s. 4. Usual place
of Business is City of Woburn, City Hall, 10 Common Street, Middlesex County, Woburn, MA.
11   01801. Current Members include J. Kevin Maguire, Paul Wentworth and Owen McCaffery.

12      5.    The defendant, city of Woburn, (city hereinafter), is a duly organized
Massachusetts municipal corporation. Their usual place of business is Woburn City Hall, 10
13   Common Street, Middlesex County, Woburn, MA. 01801.

14      6.    The defendant, Paul Wentworth (Wentworth hereinafter) is an individual who
resides at 17 Highet Avenue, Middlesex County, Woburn, MA 01801.  Wentworth is now and
15   has been at all relevant times, a duly appointed Member of the Woburn License Commission.
Wentworth is being sued in his official capacity and as an individual.
16

        7.    The defendant, J. Kevin Maguire (Maguire hereinafter) is an individual who
17   resides at 15 Waltham Street, Middlesex County, Woburn, MA.  Maguire is now and has been
at all relevant times, a duly appointed Member of the Woburn License Commission.  Maguire
18   is being sued in his official capacity and as an individual.

19      8.    The defendant, Owen McCaffery (McCaffery hereinafter) is an individual who
resides at 19 Duran Avenue, Middlesex County, Woburn, MA 01801.  McCaffery is now and
20   has been at all relevant times, a duly appointed Member of the Woburn License Commission.
McCaffery is being sued in his official capacity and as an individual.
21

        9.    The defendant, Steve Paris (Paris hereinafter) is an individual who resides at 3
22   Fisher Terrace, Middlesex County, Woburn, MA 01801.  Paris is now and has been at all
relevant times, the Building Commissioner of the city of Woburn.  Paris is being sued in his
23   official capacity and as an individual.

24      10. The defendant, Edward Robertson (Robertson hereinafter) is an individual who
resides at 16 Hart Place, Middlesex County, Woburn, MA 01801.  Robertson is the former city
25   solicitor for the city of Woburn from 1985 to 2001.  Robertson is being sued in his official
capacity and as an individual.

1

2                                      **JURISDICTION**

3

4       11. This court has subject matter jurisdiction over this action pursuant to U.S.C. §
1331, as this action arises out of the Constitution and laws of the United States. This court
also has subject matter jurisdiction over certain claims under Civil Federal RICO ACT and has
5       supplemental jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367 and not
limited to.
6

7                                        **FACTS**

8       12. Peter J. Donovan has been trying to obtain a package store license pursuant to
G.L. c. 138, §. 15 in the city of Woburn since November 1994. During that nine-year period,
9       there have minor incarnations of his business plan, but broadly stated he has sought to open a
niche business specializing in the sale of gift baskets containing fine wines and liquors to be
10      delivered via company vehicle.

11      13. In March 1995, the WLC voted to issue license to Donovan's corporation The
Boston Beer and Wine Company, Inc with conditions. Then in June 1995 the WLC re-voted
12      not to issue license to BBWC.

13      14. In June 2000, the ABCC remanded license matter back to WLC for further hearing
after MA Court overturned prior ABCC decision upholding WLC to deny license to Donovan in
14      1996.

15      15. Over a period of three years (June 2000 – May 2003), PJD went before the WLC
regarding this matter, in September 2000, May 2001, November 2001, May 2002 and July 31,
16      2003. In September 2000, November 2001 and May 2002 the WLC denied PJD a public
hearing on PJD's license application because of zoning matters.
17

16. In May 2001 PJD went before the WLC on his application for 325 Washington
18      Street. The WLC sought a zoning opinion from the city solicitor without knowing all the
relevant facts regarding PJD's business or proposed use of space. The WLC denied PJD the
19      license because of zoning (Wentworth, Maguire and McCaffery) and public need (Maguire
only). This matter was never appealed to MA Court because PJD could not appeal a zoning
20      opinion from a city solicitor pursuant to MGL.

21      A. Wentworth's decision from the Administrative Record page 61 dated May 31, 2001;

22              " I'm opposed to the issuance of the license because no one authority or
this licensing board has the authority to bypass or ignore zoning requirements.
23
This is an O-P zone. It is against the ordinance and also, as stated
24              before, this required a special permit from the City Council and we had no right
to change that without their proper authority. Therefore, I'm opposed to
25              issuance of the license"

B. McCaffery's decision from the Administrative Record page 61 dated May 31, 2001:

-3-

1

2        *"The reason I'm opposed to it is because the letter here states (letter
         from city solicitor)  in other words the local licensing authority has no
         jurisdiction whatsoever to override or circumvent zoning regulations through*
3        *the exercise of its discretion.*

4        *I vote against it."*

5        17. Then September 11, 2001 came along and PJD had to change the way he did
         business, as did most businesses throughout the world.  He changed the name of the
6        company from The Boston Beer and Wine Company, Inc. to Corporate Wines and Gift
         because of the negative publicity BBWC has received over a seven-year period in the local
7        papers – directly relating to this 8th package store license and his dealings with the WLC and
         other city of Woburn officials.  There have been over 150 articles regarding PJD and BBWC in
8        the local newspapers since 1995.  PJD was 100% shareholder of BBWC.  He changed the
         ownership structure from S-Corp to Sole Proprietorship for financial planning purposes.  He
9        changed his primary target market from consumer/business to business only (B to B), because
         under the new business model it allows PJD to become more "focused".  He did away with
10       importing and brokering of wines, because it became tough to deal with oversea vendors
         because of new rules on importing and exporting after 9/11. He changed his product to be sold
11       from beer and wine of the month clubs to wine gift baskets as corporate gifts, non-alcoholic gift
         baskets or arrangements as corporate gifts, wine racking systems to be sold to high end
12       retailers and wine, because it allows PJD to become more focused on one market.

13       18. In November 2001, PJD applied for the license under a sole proprietorship DBA
         Corporate Wine and Gift with the sole focus (primary target market) on the 10,000 businesses
14       within a five-mile radius of proposed location (345 Washington Street, Woburn, MA).  Again,
         the WLC sought a zoning opinion, this time from the Building Commissioner.  The WLC sought
15       this opinion without having any relevant facts regarding PJD's amended business plan.  And
         most important, the WLC did not have the relevant information regarding the history of the
16       particular space or PJD proposed use when seeking such an opinion. Again the WLC denied
         PJD a public hearing because the zoning was illegal and application was never heard.

17

18       19. In May 2002, PJD found another location (30 Cedar Street) and applied for the
         license under dba Corporate Wine and Gift.  Again, the WLC sought a zoning opinion from the
         Building Commissioner not knowing all the relevant facts regarding the premises and PJD's
19       business.  PJD's application was never heard by the WLC.

20       20. This zoning issue went back and forth for at least three years and in May 2003, the
         city of Woburn and Donovan entered into three agreements;

21
                  a.) **Agreement One:** was to settle Peter Donovan v. Woburn Zoning Board of
22                Appeals et. al. docket number 02-3386 that was before MA Court and to
                  settle an outstanding torts claim.   This agreement allowed Donovan to
23                operate his proposed business at 30 Cedar Street, 32 Cedar Street and or
                  345 Washington Street with conditions.  The City of Woburn, Zoning Board
24                of Appeals and Building Commissioner, MA Court and Donovan signed off
                  on this agreement.
25
                  b.) **Agreement Two**: was to settle Peter Donovan v. Woburn License
                  Commission et. al. docket number 02-2230 (this was consolidated into

                                              -4-

docket 02-3386) that was before MA Court. This agreement was to allow Donovan to operate his proposed business at 30 Cedar Street, 32 Cedar Street and or 345 Washington Street with conditions. The City of Woburn, MA Court and Donovan signed off on this agreement.

c.) **Agreement Three:** In order for parties to enter into agreements, Donovan was to release all defendants in pending cases before MA Courts from any legal liability.    The city of Woburn and Donovan signed off on this agreement.

21. In the agreements, Donovan would not advertise product or address in local newspapers, will not sell nips, ½ pints or pints of hard liquor, sell condiments, sell lottery tickets, will have no refrigeration and will not have neon in windows. These agreements also included that Donovan will only deliver Monday through Thursday to business addresses only.

22. On June 19, 2003, PJD submitted an application (with no conditions on license) for the 8th full package store license to the WLC to meet the customer demand for wine gift baskets and other gift arrangements.

23. On July 31, 2003 a hearing was held before the WLC. At the public hearing (July 31, 2002) Chairman of the WLC J. Kevin Maguire recused himself from hearing because of a prior conflict he had with Donovan. Wentworth and McCaffery were the only members voting on Donovan's application.

24. At the public hearing (July 31, 2003), Donovan presentation was roughly one and half hours long to which he gave a brief historical overview on his dealings with the WLC since 1995, gave an overview of his primary market, gave an overview of his product to be sold, gave an overview of his internal policies regarding deliveries and ID checking, gave an overview of hours of operation, gave an overview of his management team and their experiences in the wine and spirits industry, gave an overview of the benefits his company would provide to the city of Woburn, gave an overview of the zoning settlement, gave an overview of the criteria of issuing a liquor license pursuant to MGL c. 138 § 15, gave an overview of the public need at said location and gave an overview of relevant case law.

25. At said hearing the WLC (Wentworth and McCaffery) questioned the conditions of the May Agreement and indicated that the conditions cannot be enforced. The WLC also questioned Donovan's delivery service and public need. The WLC denied Donovan the 8th package store license on public need, delivery service and conditions of agreement. The decision was mailed to Donovan on and around August 5, 2003.

26. Since the 1960's other package store owners have been allowed to deliver alcohol within the city and have delivery licenses without any scrutiny by WLC.

27. In January 2004, the WLC issued Bickford's Restaurant a full liquor license with nine conditions without any scrutiny by the WLC. In fact, many other license holders have conditions on licenses throughout the city.

28. Since 1995, the WLC have issued many restaurant liquor licenses and have allowed two package stores to relocate and expand without WLC addressing public need or scrutinizing license holders on public need.

1    29. Since at least 1995, the WLC have never sought zoning opinions regarding any
     other applicant before them from city solicitor or building commissioner.
2

3                                    **OTHER FACTS**

4    30. Donovan grew up in Woburn and was educated in the Woburn School system.
     Donovan has four brothers to which two still reside in Woburn.  Donovan's father was a former
5    city councilman and chairman of the WLC Commission from 1984 to May 1996.  Mr. Donovan
     passed away in May 1999.  Donovan's mother still resides in Woburn.  Many of PJD childhood
6    friends still reside in Woburn.  Donovan is well versed in local politics.

7    31. In and around October 1995, Donovan started a writing campaign (including
     lawsuits) speaking out against members of the Woburn License Commission, Mayor Rabbit
8    (1984 – 1995), Mayor Dever (1996 – 2001), Building Commissioner (Paris), Alderman
     Medeiros and former City Solicitor (Robertson) on how they were handling the proceedings
9    against BBWC/Donovan.

10   Specific Acts:

11           a. In and around February 1996 (under Dever's Administration), Donovan filed a
                complaint in MA courts to remove Galante because of her conflict of interest.
12              This matter was well covered in the local newspapers.

13           b. In September 1996, Donovan started informing federal and state officials (IRS,
                DOR etc) regarding Maguire's business practices, such as paying a disabled
14              firefighter under the table and not limited to.

15           c. In March 1997, Donovan wrote to the Woburn City Council regarding the
                appointment of Owen McCaffery to the WLC.  Based on Donovan's letter it
16              was determined that McCaffery's appointment would be illegal under MGL.
                Maguire had to change his political party affiliation (Democrat to Republican) in
17              order for new appointment to go through.  This matter was well covered in the
                local newspapers.
18
             d. In April 1997, Donovan wrote to Dan Bosely, Chairman of Committee of
19              Government Regulations for the Commonwealth of Massachusetts on the
                Home Rule Petition to ban beer and wine package store licenses filed by
20              Woburn's City Council indicating that it filed was filed to protect certain local
                package store owners from competition.  This memo was forwarded to the
21              local newspapers, Boston Globe Spotlight Team and the State Ethics
                Commission.
22
             e. In July 1997, Donovan wrote to the Middlesex County District Attorney
23              indicating that the WLC was violating public meeting laws by not producing
                minutes to public hearings and not limited to.  In February 1999, the District
24              Attorney determined the following; (1) the WLV failed to record and provide
                minutes for its public hearings and executive sessions in a timely manner;  (2)
25              failed to follow statutory procedure for convening executive sessions; and (3)
                not allowing Donovan to videotape public hearing on June 27, 1996.

                                             -6-

f.  In 1997/1998 Donovan filed a Civil Rights/RICO suit in Federal Court against Rabbitt, Dever, Galante, Maguire, Wentworth and other politicians. This case was dismissed without prejudice in 2000.

g.  In February 2001, Donovan wrote a Letter to the Editor (Woburn Daily Times) indicating that Mayor Dever was *"pulling the wool"* over the residents eyes regarding the city budget and not limited to. That the Building Commissioner (Paris), City Solicitors (Robinson and Doucette) and Chief of Police should be fired. And that the Woburn Golf and Ski Authority must be dissolved.

h.  In August 2001, Donovan wrote another letter to the Editor (Woburn Daily Times) indicating that the Woburn Golf and Ski Authority must be dissolved.

i.  In September 2001, Donovan wrote to the Middlesex County District Attorney and State Ethics Commission regarding Mayor Dever, City Solicitors Robertson and Doucette, Building Commissioner Paris and the WLC regarding Conspiracy, Collusion and Violation of the Open Meeting Laws regarding May 2001 public hearing and what transpired thereafter. The State Ethics Commission needed more information to go forth with investigation and the DA never responded.

j.  In October 2001, Donovan wrote to every city councilman, the mayor and local newspapers regarding Maguire's character because he was a finalist for a position with the department of city works. There is very good reason to believe that the contents of this letter regarding Maguire derailed his chances of obtaining this job, thus jeopardizing his pension. As reported above, Donovan has also reported Maguire to the IRS, Mass. DOR and other state agencies for fraud going back to 1996 and not limited to.

k.  In October 2001, Donovan wrote to the WLC to have Maguire recused from voting on his most recent license application.

l.  In November 2001, Donovan wrote to The Editor (Woburn Daily Times) regarding Woburn Golf and Ski Authority.

m. In November 2001, Donovan wrote to the State Ethics Commission regarding Kevin Maguire's potential new job with the city that he was applying for. The State Ethics Commission never responded to letter.

n.  In November 2001, Donovan wrote to the city solicitor (Robertson) indicating that he should be fired from his position and not limited to.

o.  In November 2001, Donovan wrote letter to WLC and Robertson indicating that if public hearing is not held on his new license application, he will file a lawsuit in the form of a writ of mandamus forcing WLC to have hearing.

p.  In April 2002, Donovan files with Mayor Curran notification of Torts Claim Act against WLC, Dever, Paris and Robertson.

-7-

1       q. In May 2002, Donovan filed a lawsuit in MA Courts to have Maguire and
         Wentworth removed from hearing his most current license application before
2        them.

3       r. There have been many other letters written by Donovan to the Editor and city
         of officials, but the above are the ones that stand out.
4

         32. It is alleged that former Mayor Rabbitt (1984-1995) and former Mayor Dever (1996-
5   2001) have made unwritten city policy/custom to appointed boards and officials under their
    direct control that they were to deny this 8th package store license to Donovan at all cost and
6   any matter related to said license, such as zoning. The Building Commissioner, Zoning Board
    of Appeals, City Solicitor and License Commission report directly to the mayor.
7

         33. As indicated above, Donovan has been a huge critic of the Woburn Golf and Ski
8   Authority (Authority hereafter) who operate Woburn Country Club. Wentworth plays golf at
    Woburn CC at least five times per week and is very friendly with members of the Authority who
9   Donovan has been a critic of. It is also alleged that Wentworth could have been influenced by
    WGA members to deny Donovan license (appearance of conflict).
10

11                  **FACTS SUPPORTING RICO VIOLATION AND OTHER VIOLATIONS**

12       34. Donovan's business requires it to purchase wine and other related product from
    other states and foreign countries for retail to the end consumer. In fact, 90% of all products to
13  be purchased by Donovan would come from countries like South Africa, Australia, France,
    Spain, South America and states like California, Oregon, and Washington.
14

         35. To sell liquor in the Commonwealth of Massachusetts one must obtain a retail
15  liquor license through the city or town in which the business is located.

16       36. The WLC is a Commission regulated under Massachusetts General Law chapter
    138. Its members, Maguire, Wentworth and McCaffery, are appointed by the mayor for the
17  city of Woburn and reconfirmed by the city council. Each appointment is six years. In this
    case, Maguire was appointed in 1984 by Mayor Rabbitt (1984 – 1995) and along the way
18  being reappointed by the mayor every six years. Maguire resigned from WLC in January
    2004. Wentworth was appointed by Mayor Dever (1996 – 2001) in May 1996 and reappointed
19  in May 2002 by Mayor Curran (2002 – present). McCaffery was appointed in April 1997 by
    Mayor Dever and his term expires in April 2004.
20

         37. It is common that Mayor's would "holdover" appointments on certain boards with
21  out the formal reappointment by the city council. It is alleged that Mayor's would use this
    "holdover" method to control said boards or commissions under them. Mayor Rabbitt had a
22  long history of doing this.

23       38. One of the major functions of the WLC is to issue liquor retail licenses under Mass.
    G. L. c. 138. The amount of licenses per town is based on the population of said town. In
24  Woburn there are eight package store license available based on the population of just over
    37,000. Currently, there are seven licenses issued. Originally issued package store licenses
25  have a street value up to $250,000.

-8-

1    39. Donovan has been trying to obtain this eighth package store license since 1995.
     He has tied this license up from being issued in legal proceedings since that time.
2

     40. Going back to the 1950's, history will show that originally issued package store
3    licenses go to family, friends and close associates of the sitting mayor or very connected
     people. For example, former president of the city council and former Woburn District Court
4    Judge Francis Cullen received one in the 1950's while a member of Woburn's city council.
     Former mayor Shaunessey received a package store license the day after he left office.
5    Former mayor Gilgun's brother received one (eighth license) in the early 1970's, who then sold
     license to Martignetti in 1974 for $135,000. Gilgun's brother was former Woburn District Court
6    Judge Fred Gilgun.

7    41. In fact in February 2000, historian and local attorney John D. McElhiney published
     "Woburn – A Past Observed". This book outlines the history of Woburn from the late 1800's to
8    the late 1970's. In the book, he outlines who received these particular package store licenses
     and he quotes the following on page 381;
9
                     "The barrooms and taverns had been gone since 1944, but the voters
10                   had continually opted to keep the package stores, and indeed, before the
                     decade was over, the population increase would merit a sixth license as well.
11
                     As is implied from earlier footnote, these licenses, once obtained, aren't
12                   given up very easily. Not surprisingly, therefore, the process to obtain one, and
                     to keep one, could always be counted onto provide for an interesting story, with
13                   perhaps just a wee bit of good natured politics somewhere in the background."

14   42. It is alleged that two politically connected families always wanted a package store
     license in the city of Woburn. They are the Higgins family and the Galante family. Rumors still
15   float around the city that these two families still want the license.

16   43. In 1978, Martignetti had to return the eighth package store license to the city of
     Woburn because they had over three stores throughout Massachusetts. Under Mass. G.L. c.
17   138, you can only have three licenses under one name or entity. Martignetti had five stores
     with licenses. This how this eighth license became available – Martignetti had to return it to
18   the city of Woburn.

19   44. In 1978, Mayor Higgins (who allegedly wanted license) was elected to office and
     served until 1983. The license could not be issued because Martignetti appealed case and
20   was paying the annual fee on the license until the appeals period was over. Higgins has been
     quoted as saying while he was mayor, "why does Martignetti still continue to pay this annual
21   fee for this license".

22   45. In 1983, Mayor Rabbitt was elected to office and the first thing he did was get rid of
     Higgin's people on the license commission. Appointing Maguire and Donovan (plaintiff's
23   father). In 1986, he appointed Patricia Galante to the commission.

24   46. Mayor Rabbitt's close friend, neighbor and campaign manager was Oliver Galante.
     Patricia Galante's brother in-law. It is alleged that Oliver Galante has always wanted this
25   license going back to the early 1970's and Rabbitt promised this license to him as a pay back
     for being loyal.

-9-

1    47. From 1978 until 1992, it is alleged that this eighth package store license was held
     under close control by the WLC and mayor. If someone called city hall seeking such license,
2    members of the Woburn License Commission would indicate that it was not available.

3    48. In 1992, city council president, Kevin McDonough, found about license because he
     had inside knowledge working at city hall. In December 1992, McDonough formally applied of
4    license. When word got out on the street that license was available, eight other applicants
     completed applications and filed them with the city of Woburn. Two applications were filed by
5    Galante family members.

6    49. It is alleged there was a long history of McDonough going against Rabbitt on policy
     matters and other matters. Because McDonough was president of the City Council, he
7    became sitting mayor when Rabbitt was absent. In addition, it is alleged that McDonough
     reported Rabbitt to the Middlesex District Attorney's office for wrongdoing in and around the
8    time he applied for license.

9    50. In December 1992, the WLC denied license to McDonough on "public need".
     McDonough proposed a full package store. McDonough had overwhelming public support.
10   The only person to oppose McDonough's application where the Galantes. The WLC never
     sought a zoning opinion for McDonough's proposed location even though it is in the same
11   office park as Donovan's proposed locations. WLC decision was mailed to McDonough via
     US Postal Service in and around January 2, 1993.
12

     51. In mid 1994, Donovan started his campaign for said license. Donovan was
13   proposing a mail order type business with limited walk in. Dennis Donovan (Chairman WLC)
     wanted plaintiff to purchase an existing business instead of going for this eighth license.
14   There were two package stores up for sale at the time. Both were selling for over $100,000.
     Donovan refused to pay for a license when one was available for $1,800.
15

     52. In March 1995, the WLC heard Donovan's license application and issued said
16   license to Donovan. Maguire and Galante both voting in favor to issue license. The only
     person to oppose license was Oliver Galante. WLC decision was mailed to plaintiff in and
17   around April 5, 1995.via US Postal Service.

18   53. In June 1995, the WLC re-voted on license and denied Donovan license outright.
     Galante voted against. Maguire voted for license to be issued. Under MA G.L c. 138 a one to
19   one vote equated to a denial. Based on testimony, Galante's family were giving her all kinds
     of grief for voting to issue license in March 1995. WLC decision was mailed to plaintiff in and
20   around July 1, 1995 via US Postal Service.

21   54. In and around October 1995, Donovan went on a letter writing campaign against
     sitting members of the license commission including his father and mayor Rabbitt.
22
     55. In June 1996, Donovan went before the WLC again for same license. He felt he
23   would do better under a new administration (Rabbitt left office end of 1995). Dever became
     mayor in 1996 appointing Wentworth to the commission replacing Dennis Donovan in May
24   1996. This time Maguire voted against Donovan and so did Galante and Wentworth. The
     denial was based on public need. Again the WLC decision was mailed to plaintiff around July
25   5, 1996 via the US Postal Service.

-10-

56. Mayor Dever is former mayor Higgins cousin. It is alleged that Dever wanted Higgins son, Michael, on the commission but he refused. It is also alleged that Higgin's did not want to be on the commission, because he wanted said license and being on the WLC would not allow him to have said license.

57. In June 2000 MA Courts remanded back to WLC for further review after Donovan appealed June 1996 WLC decision up through MA Courts. Over the next three years, Donovan went before the WLC in May 2001, November 2001, May 2002 and July 2003. Each time the WLC sought zoning opinions without knowing all the relevant facts to seek such opinions from the city solicitor and the building commissioner. Donovan would apply for license, notify all abutters, have public hearing notice published in newspapers and then when he had hearing on said license, Maguire would stop meeting outright stating *"we have a memo stating that zoning is illegal"* and cannot hear your license application. This zoning issue would force Donovan to appeal zoning decisions up through MA Courts.

58. In November 2001, it is alleged that Robertson advised the WLC to seek a zoning opinion from the Building Commissioner, because (Robertson) knew that any decision or opinions his office made could not be appealed by Donovan regarding zoning. Especially after Donovan indicated to Robertson, in writing, that he (Donovan) would not divulge his amended business or zoning matters until WLC public hearing regarding new application scheduled for late November 2001.

59. It is also alleged that Maguire, although he recused himself from public hearing on July 31, 2003, he influenced (conspired with) Wentworth and McCaffery to deny PJD this license in retaliation of PJD derailing Maguire's potential Public Works job with the city in October 2001 and not limited to.

60. Prior to July 31, 2003, all motions to deny issuing the license to Donovan and or to deny Donovan from entering evidence were made by Chairman Maguire at the WLC public hearings in May 2001, November 2001 and May 2002. None of the other License Commissioners (Wentworth and McCaffery) made any motions – they just went along with Maguire.

61. In May 2003, zoning was finally settled between the city of Woburn and Donovan – which allow Donovan to go forth with public hearing on license.

62. "Public Need" is just one criterion that is used to determine the issuing of a license in the commonwealth. It also happens to be the one that is most open to interpretation by license commissioners. The other criterion is personal character of applicant, age of applicant, citizen of applicant and zoning of proposed location.

## RICO SCHEMES

63. From 1978 to July 2003, it is alleged there have been at least four schemes derived by the WLC and the sitting mayor at the time indirectly and directly on not issuing this eighth package store license at all cost.

64. **Scheme #1:** It is believed between 1978 and 1992 that this eighth package store license was held under close guard by members of the Woburn License Commission not disclosing that it was available to the general public in order to protect it so it could be issued to close allies of the sitting mayor. Mayor Higgins was one person to receive license once his

1    term ended and the other persons were the Galante family under Rabbitt's administration.
     Both mayors stacked the license commission with there own people, including putting relatives
2    on the commission. This was a profit motive or pay back scheme that went on for at least
     fourteen years before word got out that license was available when McDonough (McDonough
3    was an insider) applied for license in 1992.

4    65. **Scheme #2:** It is believed that the defendants used more than one delay tactic not
     to issue said license;
5
                    **a.) Delay Tactic #1:** From 1992 to 2003, it is alleged that members of the WLC
6                   would deny any applicant the license on *"public need"* forcing these
                    applicants, including the plaintiff, to appeal said denials up through MA
7                   Courts. It is alleged that these denials were in retaliation of applicants
                    reporting sitting mayors to state agency for corruption (McDonough and
8                   Rabbitt) and retaliation for suing sitting mayors and WLC members in court
                    and critizing local politicians (Donovan on Rabbitt and Dever). It is alleged
9                   that "Public Need" was one delay tool used by the WLC to deny license
                    hoping applicants would go away. In late 1994, the former chairman of the
10                  Woburn License Commission drafted certain notes regarding this package
                    store license – as follows;
11
                         *"Delaying Tactic – New Mayor maybe next year. Will hold up as*
12                       *much as possible".*

13                  b.) **Delay Tactic #2:** It is alleged that another delaying tactic used by the WLC
                    was to seek zoning opinions from the city solicitor (May 2001) and building
14                  commissioner (November 2001 and May 2002) not knowing all the relevant
                    facts to seek such opinions when Donovan applied for license after it was
15                  remanded back to city of Woburn for further review by MA Courts in June
                    2000. Members of the WLC would deny Donovan public hearings on said
16                  license based on zoning. Every time Donovan would find a location for his
                    business he would file an application for the license and at public hearing for
17                  license the WLC would produce a memorandum from the Building
                    Commissioner or City Solicitor stating that zoning was illegal at this location.
18                  By denying zoning it would force Donovan to appeal zoning decisions up
                    through MA Courts. It is alleged that this scheme was used to make
19                  Donovan jump every hurdle possible and hopefully making him go away.

20        66. **Scheme #3:** The city solicitors Edward Robinson and Ellen Doucette were
     appointed by mayor Rabbitt in the 1980's. Building Commissioner Steve Paris was appointed
21   by mayor Rabbitt in the 1980's. Most members of the Zoning Board of Appeals were
     appointed by mayor Rabbitt in the 1980's. Under mayor Dever, it is alleged that all of these
22   people did what Dever told them to do or they would be removed from office. Many of these
     people were approaching twenty years of service with city, which would make them eligible for
23   a pension. In May 2003 under a new administration – Mayor Curran (2002 to present) the
     zoning matter was settled and Robertson was replaced. All zoning denials by Building
24   Commissioner and ZBA were mailed to Donovan via US Postal Service. One decision was
     mailed in late December 2000. Another decision was mailed on August 8, 2002. This scheme
25   was coordinated by the WLC and the sitting mayor at the time Mayor Dever. It is alleged that
     Dever instructed boards under his direct control including the WLC, *"If you give into Donovan,
     you will be fired and you will most likely loss your pension".*

-12-

1

67. **Scheme #4:** In May 2003 the city of Woburn, Building Commissioner, Zoning
2  Board of Appeals, Mayor Dever, Maguire, Wentworth and McCaffery were released from
   pending lawsuits filed by Donovan. These lawsuits were costing the city money. In return for
3  having city officials released from lawsuits, they would allow Donovan to operate his business
   at 30 Cedar Street, 32 Cedar Street or 345 Washington Street with certain conditions. By
4  having the zoning matter solved and city officials released from pending lawsuits it allowed
   Donovan to go forth with his license application before the WLC on July 31, 2003. The WLC
5  denied Donovan the license on "public need" and indicating that conditions put on zoning
   cannot be enforced. It alleged that city officials, especially members of the WLC were going to
6  deny license regardless of zoning agreement. This breach cost Donovan a substantial amount
   of time and money.
7

8         68. Donovan believes that the defendants committed numerous predicated acts of mail
              fraud and wire fraud to furtherance of the above mentioned schemes. Donovan
9             believes that the predicated acts relating to schemes include and are not limited to;

              a.) In December 1992, the WLC denied license to McDonough on "public
10                 need". McDonough proposed a full package store. McDonough had
                   overwhelming public support. WLC decision was mailed to McDonough via
11                 US Postal Service in and around January 2, 1993.

12            b.) In March 1994, the city solicitor drafted a letter to the WLC to hold a hearing
                   on Covino's beer and wine package store license application before them.
13                 The WLC never held a public hearing on Covino's license application. It is
                   alleged that if the WLC issued a beer and wine package store license, it
14                 would dilute the value of the eighth full package store license that was
                   allegedly promised by Rabbitt to the Galante Family. This letter was mailed
15                 to Covino via US Postal Service.

16            c.) In 1994, the Plaintiff started campaign for full package store during this time
                   his father who was Chairman of the WLC drafted the following notes:
17
                   *"Delaying Tactic – New Mayor maybe next year. Will hold up as much*
18                 *as possible"*. It is alleged that in 1994, the WLC made telephone calls
                   to the ABCC regarding Donovan's proposed business and that ABCC
19                 informed the WLC that they should use every delay tactic possible on
                   PJD's application.
20
              d.) In November 1994, Robertson drafts a memorandum to Building
21                 Commissioner indicating that Paris is not allowed to give zoning opinions
                   because of potential lawsuits under G.L. c. 258.
22
              e.) On April 5, 1995, after WLC issued license to Donovan, Robertson drafts a
23                 note to Attorney Edward Donohoe that conditions are not allowed on license
                   and zoning was illegal. This letter was mailed via US Postal Service and
24                 faxed to Donohoe.

25            f.) In June 1995, the WLC drafts decision to deny license on "Public Need"
                   after they voted to issue license to Donovan in March 1995. This letter was
                   mailed via US Postal Service to Donovan.

-13-

g.) In July 1996, the WLC drafts decision to deny license to Donovan on Public Need. This letter was mailed via US Postal Service to Donovan.

h.) In February 1997, the WLC drafts another decision (after ABCC remanded matter back to WLC) denying Donovan on "Public Need" and "Zoning". This letter was mailed via US Postal Service to Donovan.

i.) In October 1998, Donovan (under the name John O'Brien) seeks a zoning opinion from Building Commissioner. Paris responds that he cannot issue zoning opinions and attaches November 1994 memo from Robertson. This letter was mailed via US Postal Service to Donovan.

j.) In May 2001, the City Solicitor issued a zoning opinion indicating that Donovan cannot use proposed location. This opinion was drafted after Donovan refused to seek a zoning opinion from Paris. This letter was mailed via US Postal Service to Donovan.

k.) In early June 2001, the WLC drafts another decision denying Donovan license based on "Public Need and Zoning". This letter was mailed via US Postal Service to Donovan.

l.) In or around June 22, 2001, another letter is drafted by the WLC substituting the original denial earlier in the month.    This letter was mailed via US Postal Service to Donovan.

m.) In October 2001, Donovan receives email from Planning Board Director for the City of Woburn indicating that zoning is legal for Donovan's proposed business and proposed location. The Planning Board Director oversees all development in the city of Woburn and is considered a zoning expert.

n.) In October 2001, Donovan files new application for license and the WLC refers matter to City Solicitor. This WLC's letter was mailed via US Postal Service to Donovan.

o.) In November 2001, City Solicitor drafts letter to Donovan regarding zoning on new application. Donovan responds indicating to Robertson that he will not unveil new operations until public hearing. Robertson's letter was mailed via US Postal Service to Donovan.

p.) In November 2001, City Solicitor drafts letter regarding Maguire's appearance of conflict after Donovan request that Maguire be removed from upcoming November 2001 hearing. City Solicitor letter was mailed via US Postal Service to State Ethics Commission.

q.) In November 2001, the WLC seeks zoning opinion from Building Commissioner. It is alleged that the WLC sought this opinion via telephone.

r.) In January 2002, Building Commissioner drafts zoning denial and mails letter via US Postal Service to Geoffrey Curtis.

s.) In April 2002, the WLC mails via US Postal Service to Donovan his $100 application fee from his November 2001 license application that was never heard.

t.) In May 2002, the WLC sought another zoning opinion from the Building Commissioner. It is alleged that this opinion was sought via fax.

u.) In May 2002, the Building Commissioner's response to the WLC request was faxed or mailed via US Postal Service to the Woburn Daily Times.

v.) In July 2002, the WLC drafts letter to Donovan indicating that he is to appear before commission in August 2002 regarding Donovan's May 2002 application. This WLC's letter was mailed via US Postal Service to Donovan.

w.) In August 2002, the Zoning Board of Appeals denied Donovan's zoning from Paris's decision dated May 2002. The ZBA's decision was mailed via US Postal Service to Donovan.

x.) In April and May 2003, the Defendants entered into three agreements to end the zoning matter before MA Courts. All agreements were faxed and mailed via US Postal Service back and forth on more than one occasion during negotiation period.

y.) In August 2003, the WLC denies Donovan license again after zoning was resolved. This WLC's letter was mailed via US Postal Service to Donovan.

69. The WLC's decisions listed above, Building Commissioner's decisions listed above and City Solicitor's decisions listed above denying Donovan license, zoning and not limited to violated Contract Law (Tort), violated the Constitution of the Commonwealth of Massachusetts, violated the Constitution of the United States and violated the Federal RICO Act and not limited to.

70. The WLC failed to act in a fair, judicial and reasonable based upon the evidence presented to it in that its decision did not adequately consider the undisputed evidence in support of an unopposed applicant and to a person (Donovan) offering employment to qualified unemployed residents of the city of Woburn. Especially when putting unemployed people back to work is a top priority of the state and federal government.

71. The actions of the Defendants were in retaliation for Donovan being a constant critic of Woburn's political system and were calculated to threaten, intimidate and coerce Donovan so as to have a chilling effect on his exercise of his right to free speech, his right to due process, his right to equal protection as a class of one and not limited to. The egregious actions of the defendant's were a final attempt to silence Donovan and stop him from getting this prized 8th package store license at all cost. The defendants wanted to silence Donovan once and for all, especially after a nine year struggle by him to obtain said license.

72. As a direct result of Defendant's actions, Donovan; a) has lost at least $250,000 in personal income since matter was remanded back to city in June 2000; b.) has lost at least $750,000 in personal income since 1995; c.) has direct outstanding debt related to this matter exceeding $80,000; d.) has lost market share; e.) has lost brand name value; f.) has lost

-15-

1    license value; g.) has lost salary; h.) has lost future earnings; i.) has suffered severe stress
     and anxiety; j.) has suffered mental distress and anguish; And k.) has suffered depression and
2    not limited to.

3                                          **COUNT I**

4                                 **BREACH OF CONTRACT**

5    **(WLC decision dated August 5, 2003 was made in violation of the May 2003 Agreement
     between Plaintiff and City of Woburn pursuant to the Torts Claim Act M.G.L c. 258. –**
6    **Defendant - City of Woburn)**

7            73. Donovan incorporates the allegations contained in the preceding paragraphs as
     though fully set forth herein.
8

             74. The WLC's decision dated August 5, 2003 violated the May 2003 Agreement
9    between the city of Woburn and the Plaintiff regarding zoning conditions set forth in
     agreement.  The conditions of the agreement were settled by the city of Woburn and the
10   Plaintiff in May 2003.  These conditions are set in stone and should not have been used
     against Donovan when he went for said liquor license in July 2003.  Donovan would not have
11   entered into agreements if he knew they would be used against by the WLC in July 2003.  The
     defendant's actions were planned in advance.  The defendant's entered into agreement with
12   Donovan knowing that he would sign release, allowing other persons to walk away from
     pending litigation, even though defendant's had no intentions of honoring agreement.
13

             75. Defendant's (city of Woburn) conduct was willful, knowing, intentional, with malice,
14   demonstrated a complete lack of care and was conscious disregard for the rights of Donovan.
     Donovan therefore is entitled to an award of punitive damages from all defendants.
15

16                                         **COUNT II**

17                                      **NEGLIGENCE**

18   **(Zoning Decisions made in November 2001 and May 2002 by the Building
     Commissioner were made with Negligence costing Donovan a substantial amount of**
19   **time and money – pursuant to the Torts Claim Act M.G.L c. 258  – Defendants' City of
     Woburn and Paris)**
20

             76. Donovan incorporates the allegations contained in the preceding paragraphs as
21   though fully set forth herein.

22           77. Defendants Paris and city of Woburn assumed, undertook, and owed to Donovan a
     duty of reasonable care and competence to evaluate Donovan's business plan, current zoning
23   ordinance, past zoning ordinance and history of tenants that leased the particular space
     Donovan intended to lease for continuation of non-conforming use requirements and not
24   limited to, so determined if Donovan met the proper zoning requirements.

25           78. Defendants Maguire, Wentworth and McCaffery failed to provide any relevant
     zoning information to Paris when he made his decisions to deny zoning.  On top of this, there
     is clear legal history within the Commonwealth that boards or commissions within cities or

1    towns, are not suppose to seek such opinions especially if they don't provide the basic
     information that is required to seek such opinion.
2

          79. Defendant Paris failed to exercise reasonable and ordinary care and competence,
3    including the care and competence of a reasonable Building Commissioner, in performing
     these duties owed to Donovan.  At minimum, Paris should not of responded to the WLC's
4    request, because they did not have the relevant information to seek such opinions.  Especially
     after the city solicitor advised Paris not to issue said opinions.
5

          80. As a proximate result of Paris' negligence, Donovan has been damaged to the
6    extent that he lost valuable property location, time and money appealing these decisions made
     by Paris.
7

          81. Defendant's conduct was reckless or grossly negligent, willful and wanton, with
8    malice, demonstrated a complete lack of care and inattention to duty, and was in conscious
     disregard of Donovan's rights.  Donovan is therefore entitled to an award of punitive damages
9    from Paris and city of Woburn.

10

11                                   **COUNT III**

12        **Due Process Clause under Article XXIX of the Fourteenth Amendment of the
                  Constitution of the Commonwealth  -  All Defendants**
13

14   **(WLC's November 2001 and May 2002 decision to seek a Zoning Opinion from Building
     Commissioner Violated Donovan's Due Process Clause under Constitution of the
15   Commonwealth  – All Defendants including Robertson and Paris because they willfully
     participated in the process).**
16

          82. Donovan incorporates the allegations contained in the preceding paragraphs as
17   though fully set forth herein.

18        83. The defendants, by threats, intimidations and coercion, so acted as to deprive the
     plaintiff of his of due process and other rights guaranteed under the Declaration of Rights and
19   laws of the Commonwealth.

20        84.  The defendants, acting under the color of law, so acted as to deprive the plaintiff of
     his right to due process and other rights guaranteed under the Declaration of Rights and laws
21   of the Commonwealth when rendering their decision and by them seeking (WLC) zoning
     opinions without relevant facts to seek such opinions thus forcing (coercing) Donovan to
22   appeal said denials from Building Commissioner up through this court thus delaying WLC from
     hearing Donovan's application.

23
          85. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a
24   complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
     therefore is entitled to an award of punitive damages from all defendants.

25

                                          -17-

1

## COUNT IV

2

### Equal Protection Clause of a "Class of One" of the Fourteenth Amendment of the

3      ### United States Constitution and Constitution of the Commonwealth  – All Defendants.

4      **(WLC's decisions dated June 5, 2001 and August 5, 2003 violated Donovan's Equal
       Protection Clause of a "Class of One" of the Fourteenth Amendment of the United
5      States Constitution – All Defendants, including Robertson and Paris because they
       willfully participated in the process)**

6

       86.  Donovan incorporates the allegations contained in the preceding paragraphs as
7      though fully set forth herein – see Village of Willowbrook, et. al. v. Grace Olech 528 U.S. 562,
       120 S.Ct. 1073).

8

       87.  The defendants, by threats, intimidations and coercion, so acted as to deprive the
9      plaintiff of his Equal Protection and other rights guaranteed under the Constitution and laws of
       the United States and Declaration of Rights and laws of the Commonwealth.

10

       88. The defendants, acting under the color of law, so acted as to deprive the plaintiff of
11     his right to Equal Protection and other rights guaranteed under the Constitution and laws of the
       United States and Declaration of Rights and laws of the Commonwealth;  1.) The Defendants
12     "singled out" PJD and would not allowed him to operate his business while many other
       companies of the same type, who service the same market, are allowed to operate within the
13     same zoning district and other parts of the city by the city of Woburn;  2.) The Defendants
       "singled out" PJD while other liquor license holders within the city of Woburn can put
14     conditions on licenses and Donovan cannot; 3.) The Defendants "singled out" PJD while
       allowing other package store owners to have delivery licenses while denying Donovan a
15     package store license because he wants to deliver product;  4.) The Defendants "singled out"
       PJD by not scrutinizing new license holders or the two package stores that relocated and
16     expanded (1995, 1997 and 2000) on public need on licenses while denying Donovan license
       on public need; And 5), The defendant's sought zoning opinions regarding Donovan's license
17     application, but don't seek such opinions for other applicants before them.  These actions were
       committed all in retaliation for Donovan being a constant critic against city officials.   The
18     Defendants decisions were made with the intent to deprive PJD of equal protection, equal
       privileges and immunities under the Fourteenth Amendment of the US Constitution's Equal
19     Protection Clause of a Class of One.

20     89. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a
       complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
21     therefore is entitled to an award of punitive damages from all defendants.

22

## COUNT V

23

### First Amendment Rights of the United States Constitution and Constitution of the
24     ### Commonwealth – All Defendants

25

       **(WLC's decisions dated June 5, 2001 and August 5, 2003 and Building Commissioner
       decisions dated November 26, 2001 and May 26, 2002 and City Solicitor's Decisions**

1    **dated May 2001 and not limited to Violated Donovan's First Amendment Rights of the**
     **United States Constitution and Constitution of the Commonwealth – All Defendants)**

2

        90. Donovan incorporates the allegations contained in the preceding paragraphs as
3    though fully set forth herein – see Board of County Commissioners, Wabaunsee County KS v.
     Umbehr, 116 S. Ct. 2343 (1996) and Thomas Grelish DBA The Peabody Citizen v. City of
4    Peabody, MA - USD Ct #97-10455-PBS.

5        91. The defendants, by threats, intimidations and coercion, so acted as to deprive the
     plaintiff of his right of free speech and other rights guaranteed under the Constitution and laws
6    of the United States and Declaration of Rights and laws of the Commonwealth (G.L. c 12, §
     11H and § 11I).
7

        92. The defendants, acting under the color of law, so acted as to deprive the plaintiff of
8    his right of free speech and other rights guaranteed under the Constitution and laws of the
     United States and Declaration of Rights and laws of the Commonwealth in retaliation of
9    Donovan being a constant critic of the City of Woburn political establishment.

10       93. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a
     complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
11   therefore is entitled to an award of punitive damages from all defendants.

12

                                        **COUNT VI**
13

                                **Conspiracy – All Defendants**
14

        94. Donovan incorporates the allegations contained in the preceding paragraphs as
15   though fully set forth herein.

16       95. The Defendants; (a) had an objective to be accomplish; (b) had a course of action,
     to wit, to deprive Donovan of his right to the equal protection of the laws, specially, the right to
17   earn a living, the right to free speech and not limited to; (c) performed one or more unlawful
     acts; and (d) caused Donovan damages that were a direct result of those acts.
18

        96. In the furtherance of their conduct, defendants did two or more overt acts against
19   Donovan. Those unlawful overt acts include, but are not limited to, the facts outlined under
     RICO Schemes and Facts Supporting RICO Claim listed above.
20

        97. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a
21   complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
     therefore is entitled to an award of punitive damages from all defendants.
22

                                        **COUNT VII**
23

                         **Fraud and Willful Deception - All Defendants**
24

        98. Donovan incorporates the allegations contained in the preceding paragraphs as
25   though fully set forth herein.

                                        -19-

1        99. Defendants the city of Woburn, WLC, Wentworth, Maguire and McCaffery made
misrepresentation to Donovan regarding Agreements to settle other lawsuits against the city
2   and city officials in May 2003 and then blindsided Donovan by bringing up agreements in July
2003 saying that the agreement cannot be enforced.
3

4        100. Defendants knew of the falsity of the agreement or should have known when they
signed it in May 2003. It is alleged that they signed agreement to dismiss zoning suit against
zoning officials and liquor suit against WLC and dismiss torts claim against city filed by
5   Donovan all knowing that they were going to turn against Donovan at July 2003 WLC public
hearing to deny license. These pending lawsuits were costing city money and time and the
6   settlement of these suits - was an economic motive for defendants to be released from these
lawsuits, knowing once matter was resolved/signed off they could do what they wanted at July
7   2003 license hearing regardless of agreement.

8        101. The defendants misrepresentation in May 2003 and concealment of their actual
plan (have Donovan dismiss cases against other public officials and then turn on Donovan at
9   July 2003 license hearing after agreement is signed) were made intentionally or recklessly for
the purpose of inducing Donovan to enter into May 2003 Agreement, and were made with
10  reckless and utter disregard as to their truthfulness and completeness.

11       102. Donovan reasonably and justifiably relied on its detriment on the truthfulness of
the defendant's misrepresentation and on the completeness of defendant's disclosures of
12  material facts, and Donovan was induced thereby to enter into May 2003 Agreement.    If
Donovan knew that this May 2003 Agreement would have been used against him in July 2003
13  public hearing, he would not have entered into said agreement.

14       103. Defendant's conduct was knowing, intentional, with malice, demonstrated a
complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
15  therefore is entitled to an award of punitive damages from all defendants.

16

## COUNT VIII

17

### Federal Civil RICO ACT – WLC, Robertson, Paris, Wentworth, Maguire and McCaffery

18

         104. Donovan incorporates the allegations contained in the preceding paragraphs as
19  though fully set forth herein, including the descriptions of the predicated acts directed by
defendants against Donovan and other Victims, forming the basis of a pattern of racketeering
20  activity.

21       105. At all times relevant to this Complaint, the WLC, Robertson, Paris, Wentworth,
Maguire and McCaffery (as individuals) were an association-in-fact enterprise as defined by
22  U.S.C. § 1961(4) that are engaged in, and whose activities affect, interstate and foreign
commerce. The structure of the enterprise is as follows; WLC's primary purpose and function,
23  is an appointed commission within the city to issue liquor licenses for the city of Woburn
(license holders purchase liquor from all over the world); the Building Commissioner is to
24  enforce zoning for the city of Woburn and the city solicitor is the city legal advisor all reporting
directly and indirectly to the mayor.   Each member of the association-in-fact played an
25  important role in using delaying tactics from having said license issued as described in the
preceeding paragraphs.    (See U.S. v. Freeman, C.A 9(Cal.) 1993, 6 F.3d 586 & U.S. v.
Lobue, N.D. Ill. 1990, 751 F.Supp. 748.

1

106. Defendant's Robertson, Paris, Wentworth, Maguire and McCaffery knowingly and
2   willfully associated with the association-fact-enterprise, and they conducted and participated in
    the conduct of the enterprise's affairs, directly and indirectly, by developing schemes to deny
3   Donovan or any other applicant said license worth up to $175,000 through a pattern of
    racketeering activity in violation of 18 U.S.C. § 1962.
4

107. The pattern of racketeering engaged in by the defendants, WLC, Robertson, Paris,
5   Wentworth, Maguire and McCaffery involved at least four previously alleged separate but
    related schemes, carried out from at least from 1994 to the present, directed at Donovan.
6

108. The pattern of racketeering engaged in by the defendants, WLC, Robertson, Paris,
7   Wentworth, Maguire and McCaffery involved the previously alleged separate but related
    schemes, carried out between 1994 to the present and directed at Donovan.
8

109. The pattern of engaged in by the defendants involved the previously alleged
9   predicated acts constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343),
    conspiracy and fraud all of which is "racketeering activity" as defined in 18 U.S.C. § 1961.
10

110. Donovan relied upon the misrepresentation as directed at Donovan by defendants
11  as part of their pattern of racketeering activity, and as a direct result suffered damage to his
    business.
12

13                                      **COUNT IX**

14              **Intentional Infliction of Emotional Distress – All Defendants**

15          111. Donovan incorporates the allegations contained in the preceeding paragraphs as
    though fully set forth herein.
16

112. Donovan was caused to suffer severe emotional distress by actions of the
17  defendants.

18          **WHEREFORE**, the Plaintiff respectfully request that this complaint be heard by a jury
    and prays that this court enter judgment in its favor and against the defendants as follows;
19
            1.  On Count VIII, granting compensatory damages in an amount to be proven at trial
20              but at least $250,000 and trebling of such damages pursuant to 18 USC § 1964, as
                well as reasonable attorneys' fees;
21
            2.  On each of the other Counts, granting damages in an amount to be determined at
22              trial including punitive damages;

23          3.  Annul WLC's decision dated August 5, 2003 and order WLC to issue license to
                Donovan;
24
            4.  Awarding Donovan interest and its cost and attorney's fees incurred herein; and
25
            5.  Granting such other relief as may be appropriate.

                                        -21-

1    Signed under the pains and penalties of perjury on March 30, 2004.

2                                                    Dated this 30th Day of March
                                                     2004
3

4
                                                     Peter J. Donovan, pro se
5                                                    35 Longmeadow Road
                                                     Arlington, MA 02472
6                                                    Tel: 781-643-2848 (home)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25