**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER J. DONOVAN pro se, | Case No: 04-10614RWZ |
| Plaintiff, | |
| vs. | |
| CITY OF WOBURN, | |
| WOBURN LICENSE COMISSION, | |
| PAUL WENTWORTH, | |
| J. KEVIN MAGUIRE, | |
| OWEN McCAFFERY, | |
| STEVE PARIS, and | |
| EDWARD ROBERTSON, | |
| Defendants. | |

**"AMENDED" COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

**INTRODUCTION**

1.    This is an action, by Peter J. Donovan (Plaintiff, Donovan, PJD hereafter), arising from the decisions of Defendant, City of Woburn License Commission ("WLC" hereafter) denying the plaintiff's applications, pursuant to MGL c. 138, § 15, for the 8th all-alcoholic package store license in June 2001 and on July 31, 2003 that would allow PJD to operate his corporate gift company specializing in wine baskets and other gift arrangements. The Defendant's decisions violated the Plaintiff's following rights as an individual; Equal Protection Clause under a "Class of One" 14th Amendment of the United States Constitution, Freedom of Speech Clause 1st Amendment of the United States Constitution, and the Federal RICO ACT and not limited to.  All with the intent to harm, punish and "to get" Donovan in retaliation for him, and not limited to the following, being a constant critic of Woburn's political system, especially members of WLC, the Building Commissioner, the City Solicitor and the sitting major.

- 1 -

1

## PARTIES

2

3      2.    The plaintiff, Peter J. Donovan (PJD, Donovan or Plaintiff hereinafter) is an individual who resides at 35 Longmeadow Road, Arlington, Middlesex County, MA.  Mr.
4      Donovan is also known as Peter J. Donovan d/b/a Corporate Wines & Gifts.  At all relevant times, PJD has been 100% Shareholder of The Boston Beer and Wine Company, Inc. (BBWC
5      hereafter) and Sole Proprietor of Corporate Wines and Gift.

6      3.    The defendant, Woburn License Commission (WLC hereinafter), is the duly constituted licensing authority for the City of Woburn pursuant to MGL c. 138 s. 4.  Usual place
7      of Business is City of Woburn, City Hall, 10 Common Street, Middlesex County, Woburn, MA. 01801.  Current Members include J. Kevin Maguire, Paul Wentworth and Owen McCaffery.

8      4.    The defendant, city of Woburn, (city hereinafter), is a duly organized
9      Massachusetts municipal corporation.  Their usual place of business is Woburn City Hall, 10 Common Street, Middlesex County, Woburn, MA. 01801.

10     5.    The defendant, Paul Wentworth (Wentworth hereinafter) is an individual who
11     resides at 17 Highet Avenue, Middlesex County, Woburn, MA 01801.  Wentworth is now and has been at all relevant times, a duly appointed Member of the Woburn License Commission.
12     Wentworth is being sued in his official capacity and as an individual.

13     6.    The defendant, J. Kevin Maguire (Maguire hereinafter) is an individual who resides at 15 Waltham Street, Middlesex County, Woburn, MA.  Maguire is now and has been
14     at all relevant times, a duly appointed Member of the Woburn License Commission.  Maguire is being sued in his official capacity and as an individual.

15     7.    The defendant, Owen McCaffery (McCaffery hereinafter) is an individual who
16     resides at 19 Duran Avenue, Middlesex County, Woburn, MA 01801.  McCaffery is now and has been at all relevant times, a duly appointed Member of the Woburn License Commission.
17     McCaffery is being sued in his official capacity and as an individual.

18     8.    The defendant, Steve Paris (Paris hereinafter) is an individual who resides at 3 Fisher Terrace, Middlesex County, Woburn, MA 01801.  Paris is now and has been at all
19     relevant times, the Building Commissioner of the city of Woburn.  Paris is being sued in his official capacity and as an individual.

20     9.    The defendant, Edward Robertson (Robertson hereinafter) is an individual who
21     resides at 16 Hart Place, Middlesex County, Woburn, MA 01801.  Robertson is the former city solicitor for the city of Woburn from 1985 to 2001.  Robertson is being sued in his official
22     capacity and as an individual.

23

## JURISDICTION

24

25

11. This court has subject matter jurisdiction over this action pursuant to U.S.C. § 1331, as this action arises out of the Constitution and laws of the United States.  This court

1   also has subject matter jurisdiction over certain claims under Civil Federal RICO ACT and has
    supplemental jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367 and not
2   limited to.

3
                                              **FACTS**
4
        12. Peter J. Donovan has been trying to obtain a package store license pursuant to
5   G.L. c. 138, §. 15 in the city of Woburn since November 1994.  During that nine-year period,
    there have minor incarnations of his business plan, but broadly stated he has sought to open a
6   niche business specializing in the sale of gift baskets containing fine wines and liquors to be
    delivered via company vehicle.
7
        13. In March 1995, the WLC voted to issue license to Donovan's corporation The
8   Boston Beer and Wine Company, Inc with conditions.  Then in June 1995 the WLC re-voted
    not to issue license to BBWC.
9
        14. In June 2000, the ABCC remanded license matter back to WLC for further hearing
10  after MA Court overturned prior ABCC decision upholding WLC to deny license to Donovan in
    1996.
11
        15. Over a period of three years (June 2000 – May 2003), PJD went before the WLC
12  regarding this matter, in September 2000, May 2001, November 2001, May 2002 and July 31,
    2003.  In September 2000, November 2001 and May 2002 the WLC denied PJD a public
13  hearing on PJD's license application because of zoning matters.

14      16. It is common knowledge throughout Woburn that the proposed locations Donovan
    has sought since 2000 have been used for retail for a number of years.  The owner of the
15  property even advertises "retail" space at said locations in Boston Globe and on a sign along
    Washington Street.  Please note:  the Building Commissioner issues sign permits to hang any
16  sign in the city of Woburn.

17      17. In May 2001 PJD went before the WLC on his application for 325 Washington
    Street.  The WLC sought a zoning opinion from the city solicitor without knowing all the
18  relevant facts regarding PJD's business or proposed use of space.  The WLC denied PJD the
    license because of zoning (Wentworth, Maguire and McCaffery) and public need (Maguire
19  only).  This matter was never appealed to MA Court because PJD could not appeal a zoning
    opinion from a city solicitor pursuant to MGL.
20
        A. Wentworth's decision from the Administrative Record page 61 dated May 31, 2001;
21
                *" I'm opposed to the issuance of the license because no one authority or*
22          *this licensing board has the authority to bypass or ignore zoning requirements.*

23                  *This is an O-P zone.  It is against the ordinance and also, as stated*
            *before, this required a special permit from the City Council and we had no right*
24          *to change that without their proper authority.  Therefore, I'm opposed to*
            *issuance of the license"*
25
        B. McCaffery's decision from the Administrative Record page 61 dated May 31, 2001:

1
2
3
4

> *"The reason I'm opposed to it is because the letter here states (letter from city solicitor)  in other words the local licensing authority has no jurisdiction whatsoever to override or circumvent zoning regulations through the exercise of its discretion.*
>
> *I vote against it."*

18. Then September 11, 2001 came along and PJD had to change the way he did business, as did most businesses throughout the world.  He changed the name of the company from The Boston Beer and Wine Company, Inc. to Corporate Wines and Gift because of the negative publicity BBWC has received over a seven-year period in the local papers – directly relating to this 8th package store license and his dealings with the WLC and other city of Woburn officials.  There have been over 60 articles regarding PJD and BBWC in the local newspapers since 1995.  PJD was 100% shareholder of BBWC.  He changed the ownership structure from S-Corp to Sole Proprietorship for financial planning purposes. He changed his primary target market from consumer/business to business only (B to B), because under the new business model it allows PJD to become more "focused".  He did away with importing and brokering of wines, because it became tough to deal with oversea vendors because of new rules on importing and exporting after 9/11.  He changed his product to be sold from beer and wine of the month clubs to wine gift baskets as corporate gifts, non-alcoholic gift baskets or arrangements as corporate gifts, wine racking systems to be sold to high end retailers and wine, because it allows PJD to become more focused on one market.

19. In November 2001, PJD applied for the license under a sole proprietorship DBA Corporate Wine and Gift with the sole focus (primary target market) on the 10,000 businesses within a five-mile radius of proposed location (345 Washington Street, Woburn, MA).  Again, the WLC sought a zoning opinion, this time from the Building Commissioner.  The WLC sought this opinion without having any relevant facts regarding PJD's amended business plan.  And most important, the WLC did not have the relevant information regarding the history of the particular space or PJD proposed use when seeking such an opinion. Again the WLC denied PJD a public hearing because the zoning was illegal and application was never heard.

20. In May 2002, PJD found another location (30 Cedar Street) and applied for the license under dba Corporate Wine and Gift.  Again, the WLC (Wentworth) sought a zoning opinion from the Building Commissioner not knowing all the relevant facts regarding the premises and PJD's business.  PJD appealed Building Commissioner's decision up through MA Courts.  PJD's application was never heard by the WLC.

21. This zoning issue went back and forth for at least three years and in May 2003, the city of Woburn and Donovan entered into three agreements;

   a.) **Agreement One:** was to settle <u>Peter Donovan v. Woburn Zoning Board of Appeals</u> et. al. docket number 02-3386 that was before MA Court and to settle an outstanding torts claim.  This agreement allowed Donovan to operate his proposed business at 30 Cedar Street, 32 Cedar Street and or 345 Washington Street with conditions.  The City of Woburn, Zoning Board of Appeals and Building Commissioner, MA Court and Donovan signed off on this agreement.

   b.) **Agreement Two**: was to settle <u>Peter Donovan v. Woburn License Commission</u> et. al. docket number 02-2230 (this was consolidated into

1            docket 02-3386) that was before MA Court.  This agreement was to allow
Donovan to operate his proposed business at 30 Cedar Street, 32 Cedar

2            Street and or 345 Washington Street with conditions.  The City of Woburn,
MA Court and Donovan signed off on this agreement.

3

            c.) **Agreement Three:** In order for parties to enter into agreements, Donovan

4            was to release all defendants in pending cases before MA Courts from any
legal liability.   The city of Woburn and Donovan signed off on this

5            agreement.

6       22. In the agreements, Donovan would not advertise product or address in local
newspapers, will not sell nips, ½ pints or pints of hard liquor, sell condiments, sell lottery

7  tickets, will have no refrigeration and will not have neon in windows.  These agreements also
included that Donovan will only deliver Monday through Thursday to business addresses only.

8

       23. On June 19, 2003, PJD submitted an application <u>(with no conditions on license)</u> for

9  the 8th full package store license to the WLC to meet the customer demand for wine gift
baskets and other gift arrangements.

10

       24. On July 31, 2003 a hearing was held before the WLC. At the public hearing (July

11  31, 2002) Chairman of the WLC J. Kevin Maguire recused himself from hearing because of a
prior conflict he had with Donovan. Wentworth and McCaffery were the only members voting

12  on Donovan's application.

13     25. At the public hearing (July 31, 2003), Donovan presentation was roughly one and
half hours long to which he gave a brief historical overview on his dealings with the WLC since

14  1995, gave an overview of his primary market, gave an overview of his product to be sold,
gave an overview of his internal policies regarding deliveries and ID checking, gave an

15  overview of hours of operation, gave an overview of his management team and their
experiences in the wine and spirits industry, gave an overview of the benefits  his company

16  would provide to the city of Woburn, gave an overview of the zoning settlement, gave an
overview of the criteria of issuing a liquor license pursuant to  MGL c. 138 § 15, gave an

17  overview of the public need at said location and gave an overview of relevant case law.

18     26. At said hearing the WLC (Wentworth and McCaffery) questioned the conditions of
the May Agreement and indicated that the conditions cannot be enforced.  The WLC also

19  questioned Donovan's delivery service and public need.  The WLC denied Donovan the 8th
package store license on public need, delivery service and conditions of agreement.   The

20  decision was mailed to Donovan on and around August 5, 2003.

21     27. Since the 1960's other package store owners have been allowed to deliver alcohol
within the city and have delivery licenses without any scrutiny by WLC.

22

       28. In January 2004, the WLC (McCaffery and Wentworth) issued Bickford's Restaurant

23  a full liquor license with nine conditions without any scrutiny by the WLC.  In fact, many other
license holders have conditions on licenses throughout the city.

24

       29. In December 2004, the WLC (McCaffery and Wentworth) voted to issue another full

25  liquor license to a restaurant.

30. Since 1995, the WLC have issued many restaurant liquor licenses and have allowed two package stores to relocate and expand without WLC addressing public need or scrutinizing license holders on public need.

31. Since at least 1995, the WLC have never sought zoning opinions regarding any other applicant before them from city solicitor or building commissioner.

32. Since at least 1995, retailers and competitors of Donovan have been allowed to operate in the same office park and at the same proposed locations as Donovan proposed on his liquor license applications without scrutiny by city officials.

33. In 1992, the WLC determined that Kevin McDonough had a right to operate in the same office park as Donovan proposed on his liquor application. McDonough was proposing a full package store without conditions. The WLC denied him on "public need" only.

34.   Donovan appealed WLC's July 30, 2003 decision to MA Courts and on March 10, 2005 oral arguments were heard before MA Appeals Court on pending state matter.

## OTHER FACTS

35. Donovan grew up in Woburn and was educated in the Woburn School system. Donovan has four brothers to which two still reside in Woburn. Donovan's father was a former city councilman (1978 – 1981) and chairman of the WLC Commission from 1984 to May 1996. Mr. Donovan passed away in May 1999. Donovan's mother still resides in Woburn. Many of PJD childhood friends still reside in Woburn. Peter Donovan is well versed in local politics.

36. In and around October 1995, Donovan started a writing campaign (including lawsuits) speaking out against members of the Woburn License Commission, Mayor Rabbit (1984 – 1995), Mayor Dever (1996 – 2001), Mayor Curran (2002 – present) Building Commissioner (Paris), Alderman Medeiros and former City Solicitor (Robertson) on how they were handling the proceedings against BBWC/Donovan.

Specific Acts:

a. On January 2, 1996, Donovan files Tort Claim Act against city of Woburn, WLC and other city officials.

b. In February 1996 Donovan filed a complaint in MA courts to remove Galante because of her conflict of interest and other matters.

c. In September 1996, Donovan started informing federal and state officials (IRS, DOR etc) regarding Maguire's business practices, such as paying a disabled firefighter under the table and not limited to.

- In May 1997 – Donovan seeks leases from City Treasurer for North Warren Street. Maguire parked his trucks on city property for years with out paying rent to the city or including this benefit on his tax return as income. Shortly after this letter was sent and after Donovan spoke to State Police investigators, Maguire's trucks were not park on city property any more.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

- In October 2001, Donovan seeks for Maguire to recuse himself because of a potential conflict of interest because of a potential job he was seeking full-time with the city.

- In October 2001, Donovan writes every city councilor, mayor, and local newspapers that Maguire cannot get job he is seeking because all he is doing it for is to get a pension. Maguire did not get job.

- In November 2001, Donovan reports Dever and Maguire to State Ethics Commission regarding the job Maguire was going for with the city.

d. In March 1997, Donovan wrote to the Woburn City Council regarding the appointment of Owen McCaffery to the WLC. Based on Donovan's letter it was determined that McCaffery's appointment would be illegal under MGL. Maguire had to change his political party affiliation (Democrat to Republican) in order for new appointment to go through. This matter was well covered in the local newspapers.

e. In March 1997, Donovan files Tort Claim Act against WLC Galante, former Mayor Rabbitt.

f. In April 1997, Donovan wrote to Dan Bosely, Chairman of Committee of Government Regulations for the Commonwealth of Massachusetts on the Home Rule Petition to ban beer and wine package store licenses filed by Woburn's City Council indicating that it filed was filed to protect certain local package store owners from competition. This memo was forwarded to the local newspapers, Boston Globe Spotlight Team and the State Ethics Commission.

g. In July 1997, Donovan wrote to the Middlesex County District Attorney indicating that the WLC was violating public meeting laws by not producing minutes to public hearings and not limited to. In February 1999, the District Attorney determined the following; (1) the WLV failed to record and provide minutes for its public hearings and executive sessions in a timely manner; (2) failed to follow statutory procedure for convening executive sessions; and (3) not allowing Donovan to videotape public hearing on June 27, 1996.

h. In 1998 Donovan filed a Civil Rights/RICO suit in Federal Court against Rabbitt, Dever, Galante, Maguire, Wentworth, Medeiros and other politicians. This case was dismissed without prejudice in 2000.

- In this case Wentworth (February 2000) is quoted as saying *"I in good conscience not say that Donovan is of good character"*.

i. In 1999, Donovan filed suit in Middlesex Superior Court against Maguire, Wentworth and former WLC member Galante regarding June 1996 WLC hearing for disallowing Donovan to video tape hearing.

j. In November 1999, Donovan writes letter to Justice Hinkle who resided over McDonough v. WLC matter in 1993. A copy of this letter was sent to Mayor Dever. This letter is directed towards the WLC on how they screwed McDonough and how her decision was wrong in October 1994 regarding McDonough.

k. In December 1999, Donovan writes to State Ethics Commission regarding Maguire and Wentworth taking part in future hearings regarding license because of pending suits against them by Donovan.

l. In May 2001, Donovan writes to Attorney General, DOR, IRS, DA, US Attorney, Globe Spotlight Team and local papers regarding the stealing of money at Woburn CC which implicates Mayor Dever and Woburn's Golf and ski Authority.  Please note:  Wentworth plays golf at Woburn CC at least five times per week and associates with members of Woburn's Golf and Ski Authority.   Plus Dever appointed Wentworth to the WLC.

m. In September 2001, Donovan writes to State Ethics Commission and Middlesex County DA's Office that WLC (Wentworth, McCaffery and Maguire) for conspiracy, collusion and violation of open meeting laws about the WLC decision to deny Donovan license in May 2001.

n. In December 2001, Donovan files Tort Claim Act with city of Woburn against Mayor Dever, Paris, Maguire, Wentworth and McCaffery for the handling of Donovan's WLC's hearings in September 2000, May 2001 and November 2001 on acts of conspiracy, collusion, deceitful and wrongful acts, abuse of process, abuse of office etc.

o. In May 2002, Donovan filed a lawsuit in MA Courts to have Maguire and Wentworth removed from hearing his most current license application filed with WLC in May 2002.

p. In June 2002, Donovan reports city solicitor (Tom Lawton) to Board of Bar Overseers for basically lying to MA Courts.

q.  In June 2002, Donovan reports WLC to Middlesex District Attorneys Office for violations of open meeting laws.  In December 2002, the DA concluded that it was Wentworth who sought zoning opinions from Building Commissioner in May 2002.

r. In March 2004, Donovan files Tort Claim Act against city of Woburn for WLC reneging on Zoning Agreements that parties agreed to in May 2003.

## FACTS SUPPORTING RICO VIOLATION AND OTHER VIOLATIONS

37. Donovan's business requires it to purchase wine and other related product from other states and foreign countries for retail to the end consumer.  In fact, 90% of all products to be purchased by Donovan would come from countries like South Africa, Australia, France, Spain, South America and states like California, Oregon, and Washington.

38.  To sell liquor in the Commonwealth of Massachusetts one must obtain a retail liquor license through the city or town in which the business is located.

39. The WLC is a Commission regulated under Massachusetts General Law chapter 138.  Its members, Maguire, Wentworth and McCaffery, are appointed by the mayor for the city of Woburn and reconfirmed by the city council.  Each appointment is six years.  In this case, Maguire was appointed in 1984 by Mayor Rabbitt (1984 – 1995) and along the way being reappointed by the mayor every six years.  Maguire resigned from WLC in January 2004.  Wentworth was appointed by Mayor Dever (1996 – 2001) in May 1996 and reappointed

1  in May 2002 by Mayor Curran (2002 – present). McCaffery was appointed in April 1997 by
   Mayor Dever and his term expires in April 2004.
2
         40. It is common that Mayor's would "holdover" appointments on certain boards with
3  out the formal reappointment by the city council. It is alleged that Mayor's would use this
   "holdover" method to control said boards or commissions under them. Mayor Rabbitt had a
4  long history of doing this.

5        41. One of the major functions of the WLC is to issue liquor retail licenses under Mass.
   G. L. c. 138. The amount of licenses per town is based on the population of said town. In
6  Woburn there are eight package store license available based on the population of just over
   37,000. Currently, there are seven licenses issued. Originally issued package store licenses
7  have a street value up to $250,000.

8        42. Donovan has been trying to obtain this eighth package store license since 1995.
   He has tied this license up from being issued in legal proceedings since that time.
9
         43. Going back to the 1950's, history will show that originally issued package store
10 licenses go to family, friends and close associates of the sitting mayor or very connected
   people. For example, former president of the city council and former Woburn District Court
11 Judge Francis Cullen received one in the 1950's while a member of Woburn's city council.
   Former mayor Shaunessey received a package store license the day after he left office.
12 Former mayor Gilgun's brother received one (eighth license) in the early 1970's, who then sold
   license to Martignetti in 1974 for $135,000. Gilgun's brother was former Woburn District Court
13 Judge Fred Gilgun.

14       44. In fact in February 2000, historian and local attorney John D. McElhiney published
   "Woburn – A Past Observed". This book outlines the history of Woburn from the late 1800's to
15 the late 1970's. In the book, he outlines who received these particular package store licenses
   and he quotes the following on page 381;
16
                    "The barrooms and taverns had been gone since 1944, but the voters
17              had continually opted to keep the package stores, and indeed, before the
                decade was over, the population increase would merit a sixth license as well.
18
                    As is implied from earlier footnote, these licenses, once obtained, aren't
19              given up very easily. Not surprisingly, therefore, the process to obtain one, and
                to keep one, could always be counted onto provide for an interesting story, with
20              perhaps just a wee bit of good natured politics somewhere in the background."

21       45. It is alleged that two politically connected families always wanted a package store
   license in the city of Woburn. They are the Higgins family and the Galante family. Rumors still
22 float around the city that these two families still want the license.

23       46. It is also alleged that in another political camp, that certain politicians are protecting
   other politically connected package store owners from competition by not issuing this license.
24
         47. In 1978, Martignetti had to return the eighth package store license to the city of
25 Woburn because they had over three stores throughout Massachusetts. Under Mass. G.L. c.
   138, you can only have three licenses under one name or entity. Martignetti had five stores

1   with licenses.  This how this eighth license became available – Martignetti had to return it to
    the city of Woburn.
2
        48.  In 1978, Mayor Higgins (who allegedly wanted license) was elected to office and
3   served until 1983.  The license could not be issued because Martignetti appealed case and
    was paying the annual fee on the license until the appeals period was over.  Higgins has been
4   quoted as saying while he was mayor, *"why does Martignetti still continue to pay this annual
    fee for this license"*.
5
        49.  In 1983, Mayor Rabbitt was elected to office and the first thing he did was get rid of
6   Higgin's people on the license commission.  Appointing Maguire and Donovan (plaintiff's
    father).  In 1986, he appointed Patricia Galante to the commission.
7
        50.  Mayor Rabbitt's close friend, neighbor and campaign manager was Oliver Galante.
8   Patricia Galante's brother in-law.  It is alleged that Oliver Galante has always wanted this
    license going back to the early 1970's and Rabbitt promised this license to him as a pay back
9   for being loyal.

10      51.  From 1978 until 1992, it is alleged that this eighth package store license was held
    under close control by the WLC and mayor.  If someone called city hall seeking such license,
11  members of the Woburn License Commission would indicate that it was not available.

12      52. In 1992, city council president, Kevin McDonough, found about license because he
    had inside knowledge working at city hall.  In December 1992, McDonough formally applied of
13  license.  When word got out on the street that license was available, eight other applicants
    completed applications and filed them with the city of Woburn.  Two applications were filed by
14  Galante family members.

15      53. It is alleged there was a long history of McDonough going against Rabbitt on policy
    matters and other matters.  Because McDonough was president of the City Council, he
16  became sitting mayor when Rabbitt was absent.  In addition, it is alleged that McDonough
    reported Rabbitt to the Middlesex District Attorney's office for wrongdoing in and around the
17  time he applied for license.

18      54. In December 1992, the WLC denied license to McDonough on "public need".
    McDonough proposed a full package store.  McDonough had overwhelming public support.
19  The only person to oppose McDonough's application where the Galantes.  The WLC never
    sought a zoning opinion for McDonough's proposed location even though it is in the same
20  office park as Donovan's proposed locations.  WLC decision was mailed to McDonough via
    US Postal Service in and around January 2, 1993.
21
        55. In mid 1994, Donovan started his campaign for said license.  Donovan was
22  proposing a mail order type business with limited walk in.  Dennis Donovan (Chairman WLC)
    wanted plaintiff to purchase an existing business instead of going for this eighth license.
23  There were two package stores up for sale at the time.  Both were selling for over $100,000.
    Donovan refused to pay for a license when one was available for $1,800.
24
        56. In March 1995, the WLC heard Donovan's license application and issued said
25  license to Donovan.  Maguire and Galante both voting in favor to issue license. The only
    person to oppose license was Oliver Galante.  WLC decision was mailed to plaintiff in and
    around April 5, 1995.via US Postal Service.

1

57. In June 1995, the WLC re-voted on license and denied Donovan license outright.
2   Galante voted against.  Maguire voted for license to be issued.  Under MA G.L c. 138 a one to
one vote equated to a denial.  Based on testimony, Galante's family were giving her all kinds
3   of grief for voting to issue license in March 1995.  WLC decision was mailed to plaintiff in and
around July 1, 1995 via US Postal Service.
4

58. In and around October 1995, Donovan went on a letter writing campaign against
5   sitting members of the license commission including his father and mayor Rabbitt.

6

59. In June 1996, Donovan went before the WLC again for same license.  He felt he
would do better under a new administration (Rabbitt left office end of 1995).  Dever became
7   mayor in 1996 appointing Wentworth to the commission replacing Dennis Donovan in May
1996.  This time Maguire voted against Donovan and so did Galante and Wentworth.  The
8   denial was based on public need.  Again the WLC decision was mailed to plaintiff around July
5, 1996 via the US Postal Service.
9

60. Mayor Dever is former mayor Higgins cousin.  It is alleged that Dever wanted
10  Higgins son, Michael, on the commission but he refused.  It is also alleged that Higgin's did not
want to be on the commission, because he wanted said license and being on the WLC would
11  not allow him to have said license.

12

61. In June 2000 MA Courts remanded back to WLC for further review after Donovan
appealed June 1996 WLC decision up through MA Courts.  Over the next three years,
13  Donovan went before the WLC in May 2001, November 2001, May 2002 and July 2003.  Each
time the WLC sought zoning opinions without knowing all the relevant facts to seek such
14  opinions from the city solicitor and the building commissioner.  Donovan would apply for
license, notify all abutters, have public hearing notice published in newspapers and then when
15  he had hearing on said license, Maguire would stop meeting outright stating *we have a memo
stating that zoning is illegal"* and cannot hear your license application.  This zoning issue
16  would force Donovan to appeal zoning decisions up through MA Courts.

17

62. In November 2001, it is alleged that Robertson advised the WLC to seek a zoning
opinion from the Building Commissioner, because (Robertson) knew that any decision or
18  opinions his office made could not be appealed by Donovan regarding zoning.  Especially after
Donovan indicated to Robertson, in writing, that he (Donovan) would not divulge his amended
19  business or zoning matters until WLC public hearing regarding new application scheduled for
late November 2001.
20

63. In May 2003, zoning was finally settled between the city of Woburn and Donovan –
21  which allow Donovan to go forth with public hearing on license.

22

64. "Public Need" is just one criterion that is used to determine the issuing of a license
in the commonwealth.  It also happens to be the one that is most open to interpretation by
23  license commissioners.  The other criterion is personal character of applicant, age of applicant,
citizen of applicant and zoning of proposed location.
24

**RICO SCHEMES**

25

65. From 1978 to July 2003, it is alleged there have been at least four schemes derived by the WLC and the sitting mayor at the time indirectly and directly on not issuing this eighth package store license at all cost.

66. **Scheme #1:** It is believed between 1978 and 1992 that this eighth package store license was held under close guard by members of the Woburn License Commission not disclosing that it was available to the general public in order to protect it so it could be issued to close allies of the sitting mayor. Mayor Higgins was one person to receive license once his term ended and the other persons were the Galante family under Rabbitt's administration. Both mayors stacked the license commission with there own people, including putting relatives on the commission. This was a profit motive or pay back scheme that went on for at least fourteen years before word got out that license was available when McDonough (McDonough was an insider) applied for license in 1992.

67. **Scheme #2:** It is believed that the defendants used more than one delay tactic not to issue said license;

    a.) **Delay Tactic #1:** From 1992 to 2003, it is alleged that members of the WLC would deny any applicant the license on *"public need"* forcing these applicants, including the plaintiff, to appeal said denials up through MA Courts. It is alleged that these denials were in retaliation of applicants reporting sitting mayors to state agency for corruption (McDonough and Rabbitt) and retaliation for suing sitting mayors and WLC members in court and critizing local politicians (Donovan on Rabbitt and Dever). It is alleged that "Public Need" was one delay tool used by the WLC to deny license hoping applicants would go away. In late 1994, the former chairman of the Woburn License Commission drafted certain notes regarding this package store license – as follows;

        *"Delaying Tactic – New Mayor maybe next year. Will hold up as much as possible".*

    b.) **Delay Tactic #2:** It is alleged that another delaying tactic used by the WLC was to seek zoning opinions from the city solicitor (May 2001) and building commissioner (November 2001 and May 2002) not knowing all the relevant facts to seek such opinions when Donovan applied for license after it was remanded back to city of Woburn for further review by MA Courts in June 2000. Members of the WLC would deny Donovan public hearings on said license based on zoning. Every time Donovan would find a location for his business he would file an application for the license and at public hearing for license the WLC would produce a memorandum from the Building Commissioner or City Solicitor stating that zoning was illegal at this location. By denying zoning it would force Donovan to appeal zoning decisions up through MA Courts. It is alleged that this scheme was used to make Donovan jump every hurdle possible and hopefully making him go away.

68. **Scheme #3:** The city solicitors Edward Robinson and Ellen Doucette were appointed by mayor Rabbitt in the 1980's. Building Commissioner Steve Paris was appointed by mayor Rabbitt in the 1980's. Most members of the Zoning Board of Appeals were appointed by mayor Rabbitt in the 1980's. Under mayor Dever, it is alleged that all of these people did what Dever told them to do or they would be removed from office. Many of these

1   people were approaching twenty years of service with city, which would make them eligible for
2   a pension. In May 2003 under a new administration – Mayor Curran (2002 to present) the
    zoning matter was settled and Robertson was replaced. All zoning denials by Building
3   Commissioner and ZBA were mailed to Donovan via US Postal Service. One decision was
    mailed in late December 2000. Another decision was mailed on August 8, 2002. This scheme
4   was coordinated by the WLC and the sitting mayor at the time Mayor Dever. It is alleged that
    Dever instructed boards under his direct control including the WLC, *"If you give into Donovan,*
5   *you will be fired and you will most likely loss your pension"*.

6       69. **Scheme #4:** In May 2003 the city of Woburn, Building Commissioner, Zoning
    Board of Appeals, Mayor Dever, Maguire, Wentworth and McCaffery were released from
7   pending lawsuits filed by Donovan. These lawsuits were costing the city money. In return for
    having city officials released from lawsuits, they would allow Donovan to operate his business
8   at 30 Cedar Street, 32 Cedar Street or 345 Washington Street with certain conditions. By
    having the zoning matter solved and city officials released from pending lawsuits it allowed
9   Donovan to go forth with his license application before the WLC on July 31, 2003. The WLC
    denied Donovan the license on "public need" and indicating that conditions put on zoning
10  cannot be enforced. It alleged that city officials, especially members of the WLC were going to
    deny license regardless of zoning agreement. This breach cost Donovan a substantial amount
11  of time and money.

12      70. Donovan believes that the defendants committed numerous predicated acts of mail
        fraud and wire fraud to furtherance of the above mentioned schemes. Donovan
13      believes that the predicated acts relating to schemes include and are not limited to;

14      a.) In December 1992, the WLC denied license to McDonough on "public
            need". McDonough proposed a full package store. McDonough had
15          overwhelming public support. WLC decision was mailed to McDonough via
            US Postal Service in and around January 2, 1993.

16      b.) In March 1994, the city solicitor drafted a letter to the WLC to hold a hearing
            on Covino's beer and wine package store license application before them.
17          The WLC never held a public hearing on Covino's license application. It is
            alleged that if the WLC issued a beer and wine package store license, it
18          would dilute the value of the eighth full package store license that was
            allegedly promised by Rabbitt to the Galante Family. This letter was mailed
19          to Covino via US Postal Service.

20      c.) In 1994, the Plaintiff started campaign for full package store during this time
            his father who was Chairman of the WLC drafted the following notes:

21          *"Delaying Tactic – New Mayor maybe next year. Will hold up as much
22          as possible"*.   It is alleged that in 1994, the WLC made telephone calls
            to the ABCC regarding Donovan's proposed business and that ABCC
23          informed the WLC that they should use every delay tactic possible on
            PJD's application.

24      d.) In November 1994, Robertson drafts a memorandum to Building
25          Commissioner indicating that Paris is not allowed to give zoning opinions
            because of potential lawsuits under G.L. c. 258.

e.) On April 5, 1995, after WLC issued license to Donovan, Robertson drafts a note to Attorney Edward Donohoe that conditions are not allowed on license and zoning was illegal. This letter was mailed via US Postal Service and faxed to Donohoe.

f.) In June 1995, the WLC drafts decision to deny license on "Public Need" after they voted to issue license to Donovan in March 1995. This letter was mailed via US Postal Service to Donovan.

g.) In July 1996, the WLC drafts decision to deny license to Donovan on Public Need. This letter was mailed via US Postal Service to Donovan.

h.) In February 1997, the WLC drafts another decision (after ABCC remanded matter back to WLC) denying Donovan on "Public Need" and "Zoning". This letter was mailed via US Postal Service to Donovan.

i.) In October 1998, Donovan (under the name John O'Brien) seeks a zoning opinion from Building Commissioner. Paris responds that he cannot issue zoning opinions and attaches November 1994 memo from Robertson. This letter was mailed via US Postal Service to Donovan.

j.) In May 2001, the City Solicitor issued a zoning opinion indicating that Donovan cannot use proposed location. This opinion was drafted after Donovan refused to seek a zoning opinion from Paris. This letter was mailed via US Postal Service to Donovan.

k.) In early June 2001, the WLC drafts another decision denying Donovan license based on "Public Need and Zoning". This letter was mailed via US Postal Service to Donovan.

l.) In or around June 22, 2001, another letter is drafted by the WLC substituting the original denial earlier in the month.  This letter was mailed via US Postal Service to Donovan.

m.) In October 2001, Donovan receives email from Planning Board Director for the City of Woburn indicating that zoning is legal for Donovan's proposed business and proposed location. The Planning Board Director oversees all development in the city of Woburn and is considered a zoning expert.

n.) In October 2001, Donovan files new application for license and the WLC refers matter to City Solicitor. This WLC's letter was mailed via US Postal Service to Donovan.

o.) In November 2001, City Solicitor drafts letter to Donovan regarding zoning on new application. Donovan responds indicating to Robertson that he will not unveil new operations until public hearing. Robertson's letter was mailed via US Postal Service to Donovan.

p.) In November 2001, City Solicitor drafts letter regarding Maguire's appearance of conflict after Donovan request that Maguire be removed from

upcoming November 2001 hearing. City Solicitor letter was mailed via US Postal Service to State Ethics Commission.

q.) In November 2001, the WLC seeks zoning opinion from Building Commissioner. It is alleged that the WLC sought this opinion via telephone.

r.) In January 2002, Building Commissioner drafts zoning denial and mails letter via US Postal Service to Geoffrey Curtis.

s.) In April 2002, the WLC mails via US Postal Service to Donovan his $100 application fee from his November 2001 license application that was never heard.

t.) In May 2002, the WLC sought another zoning opinion from the Building Commissioner. It is alleged that this opinion was sought via fax.

u.) In May 2002, the Building Commissioner's response to the WLC request was faxed or mailed via US Postal Service to the Woburn Daily Times.

v.) In July 2002, the WLC drafts letter to Donovan indicating that he is to appear before commission in August 2002 regarding Donovan's May 2002 application. This WLC's letter was mailed via US Postal Service to Donovan.

w.) In August 2002, the Zoning Board of Appeals denied Donovan's zoning from Paris's decision dated May 2002. The ZBA's decision was mailed via US Postal Service to Donovan.

**x.)** In April and May 2003, the Defendants entered into three agreements to end the zoning matter before MA Courts. All agreements were faxed and mailed via US Postal Service back and forth on more than one occasion during negotiation period.

y.) In August 2003, the WLC denies Donovan license again after zoning was resolved. This WLC's letter was mailed via US Postal Service to Donovan.

71.    It is alleged that former Mayor Rabbitt (1984-1995), former Mayor Dever (1996-2001) and current Mayor Curran (2002 to Present) have made unwritten city policy/custom to appointed boards and officials under their direct control that they were to deny this 8th package store license to Donovan at all cost and any matter related to said license, such as zoning. All with the intent to harm, punish or "to get" Donovan in retaliation for Donovan undermining political officials, filing law suits politicians, reporting city officials to state and federal agencies for illegal activities and being a critic of the system – thus treating Donovan differently than others in similar situations etc. The Building Commissioner, Zoning Board of Appeals, City Solicitor and License Commission report directly to the mayor.

72.    Regardless of the alleged policy above, it is also alleged because the WLC was the brunt of Donovan's campaigns that the WLC's (Wentworth and McCaffery) decision of "trumped up claims" on July 31, 2003 to deny Donovan license was made with the intent to harm, punish or "to get" Donovan all in retaliation for Donovan criticizing WLC members, filing law suits against WLC members, reporting WLC members to federal and state agencies for

1  illegal activities and not limited to all paragraphs above – thus singling Donovan out and
   treating him differently than others in similar situations etc.
2
       73.    As indicated above, Donovan has been a huge critic of the Woburn Golf and
3  Ski Authority (Authority hereafter) who operate Woburn Country Club.  Wentworth plays golf at
   Woburn CC at least five times per week and is very friendly with members of the Authority who
4  Donovan has been a critic of.  It is also alleged that Wentworth has been influenced by WGA
   members to deny Donovan license for Donovan's criticism and Donovan's incident at Woburn
5  CC with Maguire's friend.

6      74. The WLC's decisions listed above, Building Commissioner's decisions listed above
   and City Solicitor's decisions listed above denying Donovan license, zoning and not limited to
7  violated Contract Law (Tort), violated the Constitution of the United States, violated the
   Federal RICO Act and other laws.
8
       75. The WLC failed to act in a fair, judicial and reasonable based upon the evidence
9  presented to it in that its decision did not adequately consider the undisputed evidence in
   support of an unopposed applicant and to a person (Donovan) offering employment to
10 qualified unemployed residents of the city of Woburn.  Especially when putting unemployed
   people back to work is a top priority of the state and federal government.
11
       76. The actions of the Defendants were in retaliation for Donovan, and not limited to,
12 being a constant critic of Woburn's political system and were calculated to threaten, to harm,
   to punish, "to get" and to intimidate and coerce  Donovan so as to have a chilling effect on his
13 exercise of his right to free speech, his right to equal protection as a class of one and not
   limited to.  The egregious actions of the defendant's were a final attempt to silence Donovan
14 and stop him from getting this prized 8th package store license at all cost. The defendants
   wanted to silence Donovan once and for all, especially after a nine year struggle by him to
15 obtain said license.

16     77. As a direct result of Defendant's actions, Donovan; a) has lost at least $250,000 in
   personal income since matter was remanded back to city in June 2000; b.) has lost at least
17 $500,000 in personal income since 1995; c.) has direct outstanding debt related to this matter
   exceeding $100,000; d.) has lost market share; e.) has lost brand name value; f.) has lost
18 license value; g.) has lost salary; h.) has lost future earnings; i.) has suffered severe stress
   and anxiety; j.) has suffered mental distress and anguish; And k.) has suffered depression and
19 not limited to.

20                                 **COUNT I**

21                      **BREACH OF CONTRACT/AGREEMENT**

22 **(WLC decision dated August 5, 2003 was made in violation of the May 2003 Agreement
   between Plaintiff and City of Woburn pursuant to the Torts Claim Act M.G.L c. 258. –**
23 **Defendant - City of Woburn)**

24     78. Donovan incorporates the allegations contained in the preceding paragraphs as
   though fully set forth herein.
25
       79. The WLC's decision dated August 5, 2003 violated the May 2003 Agreement
   between the city of Woburn and the Plaintiff regarding zoning conditions set forth in

1   agreement.  The conditions of the agreement were settled by the city of Woburn and the
    Plaintiff in May 2003.  These conditions are set in stone and should not have been used
2   against Donovan when he went for said liquor license in July 2003.  Donovan would not have
    entered into agreements if he knew they would be used against by the WLC in July 2003.  The
3   defendant's actions were planned in advance.  The defendant's entered into agreement with
    Donovan knowing that he would sign release, allowing other persons to walk away from
4   pending litigation, even though defendant's had no intentions of honoring agreement.

5          80. Defendant's (city of Woburn) conduct was willful, knowing, intentional, with malice,
    demonstrated a complete lack of care and was conscious disregard for the rights of Donovan.
6   Donovan therefore is entitled to an award of punitive damages from all defendants.

7
                                      **COUNT II**
8
                                    **NEGLIGENCE**
9
    **(Zoning Decisions made in November 2001 and May 2002 by the Building**
10  **Commissioner were made with Negligence costing Donovan a substantial amount of**
    **time and money – pursuant to the Torts Claim Act M.G.L c. 258  – Defendants' City of**
11  **Woburn and Paris)**

12         81. Donovan incorporates the allegations contained in the preceding paragraphs as
    though fully set forth herein.
13
           82. Defendants Paris and city of Woburn assumed, undertook, and owed to Donovan a
14  duty of reasonable care and competence to evaluate Donovan's business plan, current zoning
    ordinance, past zoning ordinance and history of tenants that leased the particular space
15  Donovan intended to lease for continuation of non-conforming use requirements and not
    limited to, so determined if Donovan met the proper zoning requirements.
16
           83. Defendants Maguire, Wentworth and McCaffery failed to provide any relevant
17  zoning information to Paris when he made his decisions to deny zoning.  On top of this, there
    is clear legal history within the Commonwealth that boards or commissions within cities or
18  towns, are not suppose to seek such opinions especially if they don't provide the basic
    information that is required to seek such opinion.
19
           84. Defendant Paris failed to exercise reasonable and ordinary care and competence,
20  including the care and competence of a reasonable Building Commissioner, in performing
    these duties owed to Donovan.  At minimum, Paris should not of responded to the WLC's
21  request, because they did not have the relevant information to seek such opinions.  Especially
    after the city solicitor advised Paris not to issue said opinions.
22
           85. As a proximate result of Paris' negligence, Donovan has been damaged to the
23  extent that he lost valuable property location, time and money appealing these decisions made
    by Paris.
24
           86. Defendant's conduct was reckless or grossly negligent, willful and wanton, with
25  malice, demonstrated a complete lack of care and inattention to duty, and was in conscious
    disregard of Donovan's rights.  Donovan is therefore entitled to an award of punitive damages
    from Paris and city of Woburn.

1

## COUNT III

2

### Violation of Equal Protection Clause of a "Class of One" of the Fourteenth Amendment of the United States Constitution – All Defendants.

3

**(WLC's decisions dated June 5, 2001 and August 5, 2003 violated Donovan's Equal**
4
**Protection Clause of a "Class of One" of the Fourteenth Amendment of the United**
**States Constitution – All Defendants, including Robertson and Paris because they**
5
**willfully participated in the process)**

6          87.  Donovan incorporates the allegations contained in the preceding paragraphs as
though fully set forth herein – see <u>Village of Willowbrook, et. al. v. Grace Olech</u> 528 U.S. 562,
7    120 S.Ct. 1073) and <u>Esmail v. Macrane</u>, 53F.3d 176 9 (C.A. 7 1995).

8          88.  The defendants, by threats, intimidations, coercion and the intent to harm, punish
and "to get" plaintiff, so acted as to deprive the plaintiff of his Equal Protection and other rights
9    guaranteed under the Constitution and laws of the United States.

10          89. The defendants, acting under the color of law, so acted as to deprive the plaintiff of
his right to Equal Protection and other rights guaranteed under the Constitution and laws of the
11    United States; 1.) The Defendants "singled out" PJD and would not allowed him to operate his
business while many other companies of the same type, who service the same market, are
12    allowed to operate within the same zoning district and other parts of the city by the city of
Woburn;  2.) The Defendants "singled out" PJD while other liquor license holders within the
13    city of Woburn can put conditions on licenses and Donovan cannot; 3.) The Defendants
"singled out" PJD while allowing other package store owners to have delivery licenses while
14    denying Donovan a package store license because he wants to deliver product;   4.) The
Defendants "singled out" PJD by not scrutinizing new license holders or the two package
15    stores that relocated and expanded (1995, 1997 and 2000) on public need on licenses while
denying Donovan license on public need; 5). The defendant's "singled out" Donovan by
16    seeking zoning opinions regarding Donovan's license application, but don't seek such opinions
for other applicants before them. 6.) The defendant's "singled out" Donovan by allowing direct
17    competitors ot operate in the same office park as Donovan proposed. In fact, the WLC
determined in 1992, that a full package store could locate to said park without conditions.
18    These actions were committed with the intent to harm, punish and "to get" Donovan in
retaliation for Donovan, and not limited to the following, being a constant critic of political
19    officials, for undermining political officials, for filing suits against city officials, for reporting city
officials to state and federal agencies for illegal activities.  The Defendants decisions were
20    made with the intent to deprive PJD of equal protection, equal privileges and immunities under
the Fourteenth Amendment of the US Constitution's Equal Protection Clause as others
21    situated in a similar situation or as a Class of One.

22          90. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a
complete lack of care and was conscious disregard for the rights of Donovan.   Donovan
23    therefore is entitled to an award of punitive damages from all defendants.

24

## COUNT IV

25

### Violation of First Amendment Rights of the United States Constitution – All Defendants

1  **(WLC's decisions dated June 5, 2001 and August 5, 2003 and Building Commissioner decisions dated November 26, 2001 and May 26, 2002 and City Solicitor's Decisions**
2  **dated May 2001 and not limited to Violated Donovan's First Amendment Rights of the United States Constitution – All Defendants)**
3

4  91.  Donovan incorporates the allegations contained in the preceding paragraphs as though fully set forth herein – see <u>Board of County Commissioners, Wabaunsee County KS v.</u>
5  <u>Umbehr</u>, 116 S. Ct. 2343 (1996) and <u>Thomas Grelish DBA The Peabody Citizen v. City of</u> <u>Peabody, MA</u> - USD Ct #97-10455-PBS.

6  92.  The defendants, by threats, intimidations, coercion and the intent to harm, punish and "to get" plaintiff, so acted as to deprive the plaintiff of his right of free speech and other
7  rights guaranteed under the Constitution and laws of the United States.

8  93. The defendants, acting under the color of law, so acted as to deprive the plaintiff of his right of free speech and other rights guaranteed under the Constitution and laws of the
9  United States all with the intent to harm, punish and "to get" Donovan in retaliation for Donovan, and not limited to the following, being a constant critic of political officials, for
10  undermining political officials, for filing suits against city officials, for reporting city officials to state and federal agencies for illegal activities.  The Defendant's decisions were made with the
11  intent to deprive PJD of his right to free speech and other rights guaranteed under the First Amendment of the US Constitution.
12

13  94. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a complete lack of care and was conscious disregard for the rights of Donovan.  Donovan
14  therefore is entitled to an award of punitive damages from all defendants.

15
                                    **COUNT V**
16
                            **Conspiracy – All Defendants**
17

18  95. Donovan incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

19  96.  The Defendants; (a) had an objective to be accomplish; (b) had a course of action, to wit, to deprive Donovan of his right to the equal protection of the laws, specially, the right to
20  earn a living, the right to free speech and not limited to; (c) performed one or more unlawful acts; and (d) caused Donovan damages that were a direct result of those acts.
21

22  97. In the furtherance of their conduct, defendants did two or more overt acts against Donovan. Those unlawful overt acts include, but are not limited to, the facts outlined under RICO Schemes and Facts Supporting RICO Claim listed above.
23

24  98. Defendant's conduct was willful, knowing, intentional, with malice, demonstrated a complete lack of care and was conscious disregard for the rights of Donovan.  Donovan therefore is entitled to an award of punitive damages from all defendants.
25
                                    **COUNT VI**

1    **Fraud and Willful Deception - All Defendants (except Paris and Robertson)**

2       99. Donovan incorporates the allegations contained in the preceding paragraphs as
though fully set forth herein.
3

4       100. Defendants the city of Woburn, WLC, Wentworth, Maguire and McCaffery made
misrepresentation to Donovan regarding Agreements to settle other lawsuits against the city
and city officials in May 2003 and then blindsided Donovan by bringing up agreements in July
5    2003 saying that the agreement cannot be enforced.

6       101. Defendants knew of the falsity of the agreement or should have known when they
signed it in May 2003. It is alleged that they signed agreement to dismiss zoning suit against
7    zoning officials and liquor suit against WLC and dismiss torts claim against city filed by
Donovan all knowing that they were going to turn against Donovan at July 2003 WLC public
8    hearing to deny license. These pending lawsuits were costing city money and time and the
settlement of these suits - was an economic motive for defendants to be released from these
9    lawsuits, knowing once matter was resolved/signed off they could do what they wanted at July
2003 license hearing regardless of agreement.
10

11      102. The defendants misrepresentation in May 2003 and concealment of their actual
plan (have Donovan dismiss cases against other public officials and then turn on Donovan at
July 2003 license hearing after agreement is signed) were made intentionally or recklessly for
12    the purpose of inducing Donovan to enter into May 2003 Agreement, and were made with
reckless and utter disregard as to their truthfulness and completeness.
13

14      103. Donovan reasonably and justifiably relied on its detriment on the truthfulness of
the defendant's misrepresentation and on the completeness of defendant's disclosures of
material facts, and Donovan was induced thereby to enter into May 2003 Agreement. If
15    Donovan knew that this May 2003 Agreement would have been used against him in July 2003
public hearing, he would not have entered into said agreement.
16

17      104. Defendant's conduct was knowing, intentional, with malice, demonstrated a
complete lack of care and was conscious disregard for the rights of Donovan. Donovan
therefore is entitled to an award of punitive damages from all defendants.
18

19                                      **COUNT VII**

20    **Federal Civil RICO ACT – WLC, Robertson, Paris, Wentworth, Maguire and McCaffery**

21      105. Donovan incorporates the allegations contained in the preceding paragraphs as
though fully set forth herein, including the descriptions of the predicated acts directed by
22    defendants against Donovan and other Victims, forming the basis of a pattern of racketeering
activity.
23

24      106. At all times relevant to this Complaint, the WLC, Robertson, Paris, Wentworth,
Maguire and McCaffery (as individuals) were an association-in-fact enterprise as defined by
U.S.C. § 1961(4) that are engaged in, and whose activities affect, interstate and foreign
25    commerce. The structure of the enterprise is as follows; WLC's primary purpose and function,
is an appointed commission within the city to issue liquor licenses for the city of Woburn
(license holders purchase liquor from all over the world); the Building Commissioner is to

1    enforce zoning for the city of Woburn and the city solicitor is the city legal advisor all reporting
     directly and indirectly to the mayor.   Each member of the association-in-fact played an
2    important role in using delaying tactics from having said license issued as described in the
     preceeding paragraphs.   (See U.S. v. Freeman, C.A 9(Cal.) 1993, 6 F.3d 586 & U.S. v.
3    Lobue, N.D. Ill. 1990, 751 F.Supp. 748.

4        107. Defendant's Robertson, Paris, Wentworth, Maguire and McCaffery knowingly and
     willfully associated with the association-fact-enterprise, and they conducted and participated in
5    the conduct of the enterprise's affairs, directly and indirectly, by developing schemes to deny
     Donovan or any other applicant said license worth up to $175,000 through a pattern of
6    racketeering activity in violation of 18 U.S.C. §. 1962.

7        108. The pattern of racketeering engaged in by the defendants, WLC, Robertson, Paris,
     Wentworth, Maguire and McCaffery involved at least four previously alleged separate but
8    related schemes, carried out from at least from 1994 to the present, directed at Donovan.

9        109. The pattern of racketeering engaged in by the defendants, WLC, Robertson, Paris,
     Wentworth, Maguire and McCaffery involved the previously alleged separate but related
10   schemes, carried out between 1994 to the present and directed at Donovan.

11       110. The pattern of engaged in by the defendants involved the previously alleged
     predicated acts constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343),
12   conspiracy and fraud all of which is "racketeering activity" as defined in 18 U.S.C. § 1961.

13       111. Donovan relied upon the misrepresentation as directed at Donovan by defendants
     as part of their pattern of racketeering activity, and as a direct result suffered damage to his
14   business.

15
                                         **COUNT VIII**
16
                **Intentional Infliction of Emotional Distress – All Defendants**
17
         112. Donovan incorporates the allegations contained in the preceeding paragraphs as
18   though fully set forth herein.

19       113. Donovan was caused to suffer severe emotional distress by actions of the
     defendants.
20
         **WHEREFORE**, the Plaintiff respectfully request that this complaint be heard by a jury
21   and prays that this court enter judgment in its favor and against the defendants as follows;

22       1. On Count VIII, granting compensatory damages in an amount to be proven at trial
            but at least $500,000 and trebling of such damages pursuant to 18 USC § 1964, as
23          well as reasonable attorneys' fees;

24       2. On each of the other Counts, granting damages in an amount to be determined at
            trial including punitive damages;
25
         3. Annul WLC's decision dated August 5, 2003 and order WLC to issue license to
            Donovan;

                                          - 21 -

4.  Awarding Donovan interest and its cost and attorney's fees incurred herein; and

5.  Granting such other relief as may be appropriate.

Signed under the pains and penalties of perjury on March 23, 2005.

Dated  this 23th Day of March
2005

Peter J. Donovan, pro se
35 Longmeadow Road
Arlington, MA 02472
Tel: 781-643-2848 (home)

**CERTIFICATE OF SERVICE**

I, PETER J DONOVAN, SERVED A COPY OF THIS AMENDED COMPLAINT UPON THE
DEFENDANT'S ATTORNEY VIA HAND DELIVERY ON MARCH 23, 2005. SIGNED
UNDER THE PAINS AND PENALTIES OF PERJURY.

**PETER J. DONOVAN**