UNITED STATES DISTRICT COURT
DISTRICT OF EASTERN MASSACHUSETTS

CASE NUMBER: 04-10614RWZ

| | |
|---|---|
| PETER J. DONOVAN, pro se, | ) |
| Plaintiff | ) |
| v. | ) |
| CITY OF WOBURN, et. al. | ) |
| Defendants | ) |

### PLAINTIFF'S "REVISED" STATEMENT OF UNDISPUTED MATERIAL FACTS

The Plaintiff, Peter J. Donovan, submits the following Statement of Undisputed Material Facts in support of his Motion for Partial Summary Judgment.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.) This matter was first heard by the WLC in March 1995 in which the WLC granted said 8th full package store license (2 to 0 vote) to PJD under The Boston Beer and Wine Company, Inc. with the condition that PJD sell only beer and wine. Then in June 1995 the WLC reversed their decision (1 vote to issue license - Maguire and 1 vote against issuing license - Galante) to deny PJD the license because the condition could not be met. Based on testimony, Galante's family were giving her all kinds of grief for voting to issue license in March 1995 **(Exhibit 9E, page 10 question 8).** In addition, zoning was not an issue for the WLC at this March/June 1995 hearing. **(Exhibits 1A, 1B, 1C, 1D).**

2.) In June 1996, PJD again applied for this 8th full package store license under The Boston Beer and Wine Company, Inc. with no conditions on license and the WLC denied the license 3 to 0 vote. This decision was appealed to the ABCC and in November 1997 the ABCC remanded matter back to WLC for a more detailed statement for denial. In February 1997 the WLC issues a more detailed statement. This decision was then appealed to the ABCC with

hearing scheduled for May 1997. In June/July 1997 the ABCC upheld the WLC's decision. The ABCC's decision was then appealed to MA Courts pursuant to MGL c. 30A to which MA Courts overturned the ABCC's decision on August 17, 1999 remanding matter back to ABCC for further review. In June 2000, the ABCC finally remanded back to WLC for further review. **(Exhibits 2A, 2B, 2C, 2D, 2E, 2F, 2G, 2H, 2I ).**

3.) Over the next three years, PJD went before the WLC regarding this matter, in September 2000, May 2001, November 2001, May 2002 and July 31, 2003. In September 2000, May 2001, November 2001, May 2002 the WLC denied PJD a Public Hearing on PJD's license application because of zoning matters or denied him license outright because of zoning. All license application addresses were for 345 Washington Street, 325 Washington Street or 30 Cedar Street.

4.) It is common knowledge if you reside in Woburn and or familiar with the Cummings Park area that Donovan's proposed locations have been used for retail use going back to the early 1990's. **(Exhibits 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J, 3K, 3L, 3M, 3N).**

5.) In April 2001, the WLC reported Donovan to the ABCC for trying sell his corporation. The newspaper articles regarding this matter were written in away to insinuate that Donovan did something wrong or illegal. It is alleged that the WLC reported Donovan to the ABCC so they could get him on the character issue when he came before them regarding this license. **(Exhibits 4A, 4B, 4C, 4D).**

6.) In May 2001 PJD went before the WLC on his application for 325 Washington Street. The WLC sought a zoning opinion from the city solicitor without knowing all the relevant facts regarding PJD's business or proposed use of space. The WLC denied PJD the license because of zoning (Wentworth, Maguire and McCaffery) and public need (Maguire only). This matter was never appealed to MA Courts because PJD could not appeal a zoning

opinion from a city solicitor. In addition, this matter had so much publicity in the local papers and the landlord was getting questioned on handicap requirements by city officials (never before was the landlord questioned on handicap matters, it started when PJD applied for this license at this location), landlord would not sign a lease with PJD. **(Exhibits 5A, 5B, 5C).**

> **A.** Wentworth's decision from the Administrative Record dated May 31, 2001;
> **(Exhibit 5C, page 61)**
>
> " *I'm opposed to the issuance of the license because no one authority or this licensing board has the authority to bypass or ignore zoning requirements.*
>
> *This is an O-P zone. It is against the ordinance and also, as stated before, this required a special permit fro the City Council and we had no right to change that without their proper authority. Therefore, I'm opposed to issuance of the license"*
>
> **B.** McCaffery's decision from the Administrative Record dated May 31, 2001:
> **(Exhibit 5C, page 61)**
>
> *"The reason I'm opposed to it is because the letter here states in other words the local licensing authority has no jurisdiction whatsoever to override or circumvent zoning regulations through the exercise of its discretion.*
>
> *I vote against it."*

7.) Then September 11, 2001 came along and PJD had to change the way he did business, as did most businesses throughout the world. He changed the name of the company from The Boston Beer and Wine Company, Inc. to Corporate Wine and Gift because of the negative publicity BBWC has received over the past seven years in the local papers -- directly relating to this 8th package store license and PJD's dealings with the WLC and other city officials. There have been over 60 news articles regarding PJD and BBWC in the local newspapers since 1995. PJD is still 100% shareholder of BBWC. He changed the ownership structure from S-Corp to Sole Proprietorship for financial planning purposes. He changed his primary target market from consumer/business to business only (B to B), because under the new business model it allows

PJD to become more "focused". He did away with importing and brokering of wines, because it became tough to deal with oversea vendors because of new rules on importing and exporting after 9/11. He changed his product to be sold from beer and wine of the month clubs to wine gift baskets as corporate gifts, non-alcoholic gift baskets or other arrangements as corporate gifts, because it allows PJD to become more focused on one market. **(Exhibit 8E, pages 6–10).**

8.) In November 2001, PJD applied for the license under a sole proprietorship DBA Corporate Wine and Gift with the sole focus (primary target market) on the 10,000 businesses within a five-mile radius of proposed location (345 Washington Street, Woburn, MA). Again, the WLC sought a zoning opinion, this time from the Building Commissioner. The WLC sought this opinion without having any relevant facts regarding PJD amended business plan. And most important, the WLC did not have the relevant information regarding the history of the particular space or PJD proposed use when seeking such an opinion. Again the WLC denied PJD a public hearing because the zoning was illegal. **(Exhibits 6A, 6B, 6C, 6D, 6E, 6F, 6G, 6H, 6I ).**

9.) In February 2002, Rainbow, Inc. moves into the space Donovan had on his license application. Rainbow is a retailer of jungle gyms **(Exhibit 3M).** In October 2002, Just Kidding, A Toy Store moved into another space at 345 Washington Street **(Exhibit 3L).**

10.) Then in May 2002, PJD found another location (30 Cedar Street) and applied for the license under dba Corporate Wine and Gift. Again, the WLC (Wentworth) sought a zoning opinion from the Building Commissioner not knowing all the relevant facts regarding the premises and PJD's business. Also, PJD caught wind from his local "inside" sources that the WLC (especially Maguire and Wentworth) were going to derail the public hearing on the "character issue" because PJD got into a "pushing match" in January 2002 with WLC Maguire's close friend and filed a lawsuit in MA Courts to have Wentworth and Maguire removed from the voting process. PJD's application was never heard by the WLC. In addition, PJD appealed the

Building Commissioner's denial to MA Courts. **(Exhibits 7A, 7B, 7C, 7D, 7E, 7F, 7G, 7H, 7I, 7J, 7K, 7L, 7M, 7N, 7O, 7P, 7Q, 7R, 7S, 7T, 7U).**

11.) In June 2002, MA Courts "stayed" (Justice Kerns) the license matter until all zoning matters were resolved. **(Exhibit 7J).**

12.) In July 2002, Wentworth and McCaffery demanded that Donovan come before the WLC to hear his May 2002 license application and to review an incident Donovan had with Maguire's friend at Woburn CC in January 2002. Wentworth and McCaffery where going to use this incident at Woburn CC to determine Donovan's character. **(Exhibit 7K).**

13.) The WLC, nor did the Woburn Police speak to Donovan or Donovan's sole witness regarding this incident at Woburn CC in January 2002. The WLC and WPD only heard one side of the story – Maguire's friend and Woburn CC side of the story **(Exhibit 7I).** In addition, the WLC never brought the actual license holder to any hearing regarding the over serving of alcohol. Donovan was banned from the Pub at Woburn CC for this incident **(Exhibit 7U).**

14.) In February 2003, MA Courts took jurisdiction over Donovan's character. The WLC could not use it against him at future public hearings regarding his license application.

15.) In May 2003, the zoning matter was finally settled between the city of Woburn and Donovan. The City of Woburn and Donovan entered into three agreements;

      **a.)** Agreement One: was to settle <u>Peter Donovan v. Woburn Zoning Board of Appeals</u> et. al. docket number 02-3386 that was before MA Court and to settle an outstanding torts claim. This agreement allowed Donovan to operate his proposed business at 30 Cedar Street, 32 Cedar Street and or 345 Washington Street with conditions. The City of Woburn, Zoning Board of Appeals and Building Commissioner, MA Court and Donovan signed off on this agreement. **(Exhibits 7Q, 7S)**

      **b.)** Agreement Two: was to settle <u>Peter Donovan v. Woburn License Commission</u> et. al. docket number 02-2230 (this was consolidated into docket 02-3386) that was before MA Court. This agreement was to allow Donovan to operate his proposed business at 30 Cedar Street, 32 Cedar Street and or 345 Washington Street with conditions. The City of

Woburn, MA Court and Donovan signed off on this agreement. **(Exhibits 7Q, 7S).**

    c.) Agreement Three: In order for parties to enter into agreements, Donovan was to release all defendants in pending cases before MA Courts from any legal liability. The city of Woburn and Donovan signed off on this agreement. **(Exhibit 7T).**

16. In the agreements, Donovan would not advertise product or store location in local newspapers, would not sell nips, ½ pints or pints of hard liquor, would not sell condiments, would not sell lottery tickets, would have no refrigeration and would not have neon in windows. These agreements also included that Donovan will only deliver Monday through Thursday to business addresses only. **(Exhibits 7S, 17A, 17B, 17C, 17D).**

17. On June 19, 2003, PJD submitted an application (with no conditions on license) for the 8th full package store license to the WLC to meet the customer demand for wine gift baskets and other gift arrangements. **(Exhibits 8A, 8B, 8C, 8D, 8E, 8F, 8G, 8H, 8I, 8J, 8K, 8L, 8M, 8N, 8O, 8P, 8Q, 8R, 8S).**

18. The first application had 345 Washington Street listed on it. 345 Washington Street is a heavily traveled street with up 45,000 cars per day traveling it. PJD never wanted this much visual exposure and he wanted to limit walk in traffic because under his new business model, it does not really allow for walk in traffic. So he amended his June 19, 2003 application, after working with the owner of the property, Cummings Properties, who found another unit/space for PJD located at 30 Cedar Street. 30 Cedar Street is located directly behind 345 Washington Street. It has no street exposure from Washington Street and limited exposure from Cedar Street **(Exhibit 8A).**

19. The proposed space at 30 Cedar Street is roughly 2,500 square feet. 5% of this space or 125 square feet will be use for accessory retail. This accessory retail space will accommodate walk in business and on site gift pick-ups.

20. Cummings Properties would like PJD to be a tenant because his business provides a "niche" service to other Cummings Property tenants that is not currently available. Plus, Cummings Property would like PJD as a tenant, because PJD is willing to sign a long-term lease.

21. On July 31, 2003 a public hearing was held before the WLC on Donovan's application. **(Exhibit 8B).**

22. The WLC could not use zoning or character as a matter of denial because these matters were settled by MA Courts.

23. At the public hearing (July 31, 2002) Wentworth and McCaffery were the only members voting on PJD's application **(Exhibit 8B, page 2).**

24. At the public hearing (July 31, 2003), PJD presentation was roughly one and half hours long to which he gave a brief historical overview on his dealings with the WLC since 1995, gave an overview of his primary market, gave an overview of his product to be sold, gave an overview of his internal policies regarding deliveries and ID checking, gave an overview of hours of operation, gave an overview of his management team and their experiences in the wine and spirits industry, gave an overview of the benefits his company would provide to the city of Woburn, gave an overview of the zoning settlement, gave an overview of the criteria of issuing a liquor license pursuant to MGL c. 138 s. 15, gave an overview of the public need at said location and gave an overview of relevant case law **(Exhibits 8B, 8E).**

25. At the public hearing (July 31, 2003), PJD presented the following evidence to establish "public need" for this type of business at this "particular" location pursuant to MGL. c. 138 s. 23:

> a.   Going back to the 1970's this 8th package store license was issued in the city of Woburn. The license was originally issued to Mayor Gilgun's brother who then sold it to Martignetti on or before September 23, 1974. In 1978 Martignetti had to give the license back to the city of Woburn pursuant to case law *Johnson v. Martignetti* (1978) 375 N.E. 2d 290, 374 Mass. 784. This is how this license became/is available today. **(Exhibits 8B pages 16 –26, 12C).**
>
> b.   On March 11, 1976 the WLC approved Martignetti's relocation and expansion from 354 Cambridge Street (1,700 square feet) to 368 Cambridge Street (12,000 square feet). This relocation never went through because current package store owners of Woburn put injunction on relocation. **(Exhibit 12C page 4 and 6).**
>
> c.   The population in the city of Woburn in the 1970's was roughly 37,000 and in 2003 it is at 37,260 pursuant to U.S. Census Bureau, Census 2000. The only difference between Woburn today and in the 1970's is the daily traffic and the creation of Woburn's Industrial Park. Today the traffic is 1,000 times more

than it was in the 1970s. A majority of this traffic is due to the 3,000 or so businesses that operate within the city. A majority of these businesses are located in the Northeast corner of the city in Woburn's Industrial Park, which includes West Cummings Park and Cummings Park. Woburn Industrial Park was in the planning stages in the 1960's and 1970's. Cummings Park was built in the late 1970's early 1980's. Route 128 and Route 93 intersect at this corner of the city and has been labeled as the busiest traffic intersection in the Commonwealth. Most of this traffic is due to the inflows and outflows of traffic coming from Woburn Industrial Park. To alleviate this traffic problem, the Commonwealth made a separate on/off ramp into the Industrial Park north of Route 128 on Route 93 in 2000. **(Exhibits 8B pages 16-26, 8O and 2C pages 23 and 24).**

d.   Woburn Industrial Park has at least fourteen (14) MGL. c. 138 s. 12 licenses (restaurant/hotel/on site- pouring liquor licenses) servicing this particular area on a daily basis. Or, more than 34% of all liquor licenses issued in the city of Woburn are located in this park. A majority of these licenses were issued between 1984 and 1996 to which Maguire sat on the WLC. These restaurants are mostly regional and national chains including, but limited to, Fridays, Bertucci's Pizza, Joes American Bar and Grille, 99 Restaurant, Chicago Bar and Grille etc. **(Exhibits 8B pages 16-26, 8P).**

e.   Woburn Industrial Park does not have one MGL. c. 138 s. 15 license (off premise license/package store) located within it's borders to support the businesses and people who come into this park on a daily basis. It is estimated that up to 30,000 people work in this park. The nearest location for a MGL c. 138 Section 15 license within Woburn is roughly 2.5 miles away. In Reading on the north-side of the park the nearest location is roughly two miles away. In Stoneham on the northeast side of the park, the nearest location is roughly two miles away. **(Exhibit 8B pages 16-26, 8O, and 2C pages 23 and 24).**

f.   Not one package store located in Woburn or surrounding towns, solely focus on the 10,000 businesses within a five-mile radius of Cummings Park/Woburn Industrial Park. In addition and to the best of PJD's knowledge, there is no business within Massachusetts that hold a package store license that solely focus on wine gift baskets as corporate gifts. **(Exhibit 8B pages 16-26).**

g.   PJD proposed location is at 30 Cedar Street, which is in Cummings Park. There are no neighborhoods, churches or schools in this area and it is zoned strictly for business. This location is ideal for PJD's business because of it's proximity to RT. 128 and RT. 93 (distribution). **(Exhibit 8B pages 16-26).**

h.   Comments made by Maguire over the years:

- In 1992, Chairman Maguire said, *"that he wanted this license issued under his tenure"*. Maguire has been on the WLC since 1984.

- In March 1995, Maguire voted in favor of issuing license to PJD regardless of conditions and said, *"that it was the best presentation and was the best*

- 8 -

*interest of Woburn to have its license issued to BBWC, because of it's location etc."*.

**i.** In 1995/1996, 160 taxpayers signed a petition in support of issuing Woburn's 8th all alcoholic package store license to BBWC/PJD. Today, many of these people still support the issuing of this license to PJD. This list was signed by people from "all walks of life" that included doctors, lawyers, Woburn School Teachers, Woburn Police Officers, Woburn Firemen, local business owners, Woburn City Councilman, Woburn School Committee Members, Plumbers, Carpenters, Truck Drivers, etc. In addition, letters in support of issuing this license to PJD were sent to the Mayor and WLC. The reason PJD had people sign the above list and send letters to city officials was because former Chairman of the License Commission (Dennis Donovan – PJD's father) indicated that he heard from "all walks of life" in opposition to this license when Kevin McDonough applied for it in 1992. PJD confronted his father on this issue, but Chairman Donovan could not produce one person's name he spoke to. **(Exhibits 8B page 16, 8E pages 13-18, 2C).**

**j.** In 1996, the Woburn City Council (elected officials) voted to keep this 8th full package store license on the cities books and voted to get rid of the beer and wine package store licenses through a home rule petition that became law in 1997. **(Exhibit 9E page 8).**

**k.** In November 2001 PJD completed a survey to his primary market (sample sent to 250 businesses within Woburn's Industrial Park). 92% of the respondents indicated that there was a *"public need"* for this type of business at this *"particular location"*. 92% of the respondents indicated that they would purchase a product from PJD. 95% of the respondents indicated that the hours of operation were adequate. **(Exhibits 8E page 17, 8F, 8K #3).**

l. In March 2003, PJD conducted another survey to his primary target market (sample sent to 102 businesses within Woburn's Industrial Park). 71% of the respondents indicated that there was a *"public need"* for this type of business at this *"particular location"*. 81% of the respondents indicated that they would purchase a product from PJD. 95% of the respondents indicated that the hours of operation were adequate. **(Exhibits 8E page 18, 8G, 8K #4).**

m. In August 1995, the WLC allowed Giles Liquor to relocate and expand from 500 square feet to 1,700 square feet. Woburn City Councilman Scott Galvin family owns Giles Liquor. **(Exhibits 8R, 8E page 14).**

n. In July 1997, the WLC allowed Giles Liquor to relocate again and expand from 1,700 square feet to 5,300 square. **(Exhibits 8R, 8L, 8E page 14).**

***o.*** In June 2000, the WLC allowed S&L Liquors to relocated and expand from 2,000 square feet to 4,200 square feet. The owner is quoted in the newspaper as saying *"I need the space so I can make more money"*. **(Exhibits 8S, 8L, 8E page 14).**

     *p.*    On June 17, 2002, Judge Kerns went on record as follows,;

> *"And with respect to how the Court would act on the license issue, if that zoning issue were to be resolved in Mr. Donovan's favor, in that case I am speaking to the Court in the --- sense of Judge Kern, and it may not be Judge Kern who gets to hear that issue once that "stay" is lifted. At that point, the best Mr. Donovan can do is say, and we have a record, and that's --- aside from the fact that we have testimony and we had a pro se going forward, we have a record that he could pay for, that would indicate that, at least, Judge Kern's inclination was to demand that the Commission grant the license."* **(Exhibit 7N, page 61).**

26.) At the public hearing (July 31, 2003), PJD reviewed his delivery policy; He would deliver to business addresses only Monday through Thursday as indicated in Zoning Settlement. That all persons accepting product regardless of contents (wine related, non alcohol related) would have to show an ID (21 years or older) and sign for product. No product would be left on doorstep unsigned for. A delivery log would be on hand for review by the WLC, Police department, ABCC and other officials. **(Exhibit 8B, page 12)**

27.) Going back to the 1960's and currently, other package stores in Woburn have been allowed to deliver to residential addresses without scrutiny by the WLC. **(Exhibit 8Q).**

28.) At public hearing (July 31, 2003), PJD reviewed his ID checking policy on walk in sales; that all person purchasing alcoholic product at location through walk in sales would have to show ID regardless of age. As indicated at the hearing, PJD would have the strictest ID checking policy in the city. PJD is very concerned about underage drinking and drinking and driving and he will do everything possible to avoid it. He will consult with the WLC, DARE Program (PJD's brother is the Woburn Police Dept's DARE Officer), Woburn Police Officials, ABCC Officials and MADD on local and national trends on these issues. **(Exhibit 8B pages10- 12 and 14).**

29.) At public hearing (July 31, 2003), PJD reviewed his primary target market; Primary Target Market is the 10,000 businesses that operate within a five-mile radius of Woburn's

Industrial Park. This includes Woburn, Burlington and Stoneham. Potential corporate customers include General Electric, KPMG Peat Marwick and Morgan Stanley. PJD will not target homeowners. **(Exhibit 8B page 9).**

30.) At public hearing (July 31, 2003), PJD reviewed his advertising policy; he would not advertise his address to discourage walk in business. In addition, PJD will not advertise in local newspapers period. **(Exhibits 8A, 8B pages 8, 16 and 53).**

31.) At the public hearing (July 31, 2003), PJD indicated that would hire six new people with unemployed Woburn residents given first preference to positions. Job creation is a top priority of the federal and state government. **(Exhibit 8B page 15).**

32.) According to testimony in December 1999 by Chairman of the WLC - Maguire, the WLC does not have any methodology in place or method in place to determine "public need" other than MGL c. 138. **(Exhibit 9H1 page 4).**

33.) The Town of Burlington is north of the city of Woburn has the highest concentration of full package stores per population than all surrounding towns at .00022%. Woburn is at .00019%. **(Exhibits 8T, 8T1).**

34.) On July 31, 2003, the only persons to oppose the issuing of said license was Alderman Medeiros and his wife. Both were sued in Donovan's RICO Complaint for trying ban this license. In this suit, Donovan exposed Medeiros in taken money from local package store owners in and around the time he proposed this ban. It is alleged that these package store owners wanted this license ban to limit competition. (Please note; the only people to oppose the issuing of this license going back to 1992 were Medeiros above and the Galante family who had competing applications on file). **(Exhibits 8B pages 36-41, 9H5 page 2)**

35.) On July 31, 2003, the WLC voted 2 to 0 to reject PJD's application with actual drafted decision dated August 5, 2003. **(Exhibits 8D, 8B page 73).**

36.) On August 1, 2003, PJD sent a letter to the WLC asking them to reconsider their decision of July 31, 2003. PJD requested that the WLC oversee a blind survey to be sent to PJD's primary market to address "public need" at proposed location. The WLC refused request. **(Exhibit 8C)**.

## OTHER UNDISPUTED MATERIAL FACTS

37.) PJD grew up in Woburn and was educated in the Woburn School system. PJD has four brothers to which two still reside in Woburn. PJD father, Dennis, was Chairman of the WLC Commission from 1984 to May 1996 and city councilor from 1978 to 1981. Mr. Donovan passed away in May 1999. PJD's mother still resides in Woburn. Many of PJD's childhood friends still reside in Woburn. PJD is well versed in local politics.

38.) Maguire was appointed to the WLC in 1984 by Mayor Rabbitt. Wentworth was appointed to the WLC in May 1996 by Mayor Dever. McCaffery was appointed to the WLC in March 1997 by Mayor Dever.

39.) In and around October 1995, Donovan started a writing campaign (including lawsuits) speaking out against, criticizing and undermining members of the Woburn License Commission, Mayor Rabbit (1984 – 1995), Mayor Dever (1996 – 2001), Building Commissioner (Paris), Alderman Medeiros and former City Solicitor (Robertson) on how they were handling the proceedings against BBWC/Donovan.

Specific Acts:

  a. On January 2, 1996, Donovan files Tort Claim Act against city of Woburn, WLC and other city officials. **(Exhibit 9A)**

  b. In February 1996 Donovan filed a complaint in MA courts to remove Galante because of her conflict of interest and other matters. **(Exhibit 9B)**

   c. In September 1996, Donovan started informing federal and state officials (IRS, DOR etc) regarding Maguire's private business practices, such as paying a disabled firefighter under the table and not limited to.

      - In May 1997 – Donovan seeks leases from City Treasurer for North Warren Street. Maguire parked his trucks on city property for years with out paying rent to the city or including this benefit on his tax return as income. Shortly after this letter was sent and after Donovan spoke to State Police Investigators, Maguire's trucks were not park on city property any more. **(Exhibit 9F).**

      - In October 2001, Donovan seeks for Maguire to recuse himself because of a potential conflict of interest because of a potential job he was seeking full-time with the city. **(Exhibit 9F1)**

      - In October 2001, Donovan writes every city councilor, mayor, and local newspapers that Maguire cannot get job he is seeking because all he is doing it for is to get a pension. Maguire did not get job. **(Exhibit 9F2).**

      - In November 2001, Donovan reports Dever and Maguire to State Ethics Commission regarding the job Maguire was going for with the city. **(Exhibit 9F3).**

   d. In March 1997, Donovan wrote to the Woburn City Council regarding the appointment of Owen McCaffery to the WLC. Based on Donovan's letter it was determined that McCaffery's appointment would be illegal under MGL. Maguire had to change his political party affiliation (Democrat to Republican) in order for new appointment to go through. This matter was well covered in the local newspapers. **(Exhibit 9C)**

   e. In March 1997, Donovan files Tort Claim Act against WLC Galante, former Mayor Rabbitt. **(Exhibit 9D).**

   f. In April 1997, Donovan wrote to Dan Bosely, Chairman of Committee of Government Regulations for the Commonwealth of Massachusetts on the Home Rule Petition to ban beer and wine package store licenses filed by Woburn's City Council indicating that it filed was filed to protect certain local package store owners from competition. This memo was forwarded to the local newspapers, Boston Globe Spotlight Team and the State Ethics Commission. **(Exhibit 9E)**

   g. In July 1997, Donovan wrote to the Middlesex County District Attorney indicating that the WLC was violating public meeting laws by not producing minutes to public hearings and not limited to. In February 1999, the District Attorney determined the following; (1) the WLV failed to record and provide minutes for its public hearings and executive sessions in a timely manner; (2) failed to follow statutory procedure for convening executive sessions; and (3) not allowing Donovan to videotape public hearing on June 27, 1996. **(Exhibits 9G, 9G1, 9G2).**

h. In 1998 Donovan filed a Civil Rights/RICO suit in Federal Court against Rabbitt, Dever, Galante, Maguire, Wentworth, Medeiros and other politicians. This case was dismissed without prejudice in 2000. **(Exhibits 9H, 9H1, 9H2, 9H3, 9H4, 9H5, 9H7)**

- In this case Wentworth (February 2000) is quoted as saying *"I in good conscience not say that Donovan is of good character"* **(Exhibit 9H2 page1)** )

i. In 1999, Donovan filed suit in Middlesex Superior Court against Maguire, Wentworth and former WLC member Galante regarding June 1996 WLC hearing for disallowing Donovan to video tape hearing. **(Exhibit 9I)**

j. In November 1999, Donovan writes letter to Justice Hinkle who resided over McDonough v. WLC matter in 1993. A copy of this letter was sent to Mayor Dever. This letter is directed towards the WLC on how they screwed McDonough and how her decision was wrong in October 1994 regarding McDonough. **(Exhibit 15B)**

k. In December 1999, Donovan writes to State Ethics Commission regarding Maguire and Wentworth taking part in future hearings regarding license because of pending suits against them by Donovan. **(Exhibits 9J, 9J1, 9J2).**

l. In May 2001, Donovan writes to Attorney General, DOR, IRS, DA, US Attorney, Globe Spotlight Team and local papers regarding the stealing of money at Woburn CC which implicates Mayor Dever and Woburn's Golf and ski Authority. Please note: Wentworth plays golf at Woburn CC at least five times per week and associates with members of Woburn's Golf and Ski Authority. Plus Dever appointed Wentworth to the WLC. **(Exhibits 9K, 9K1).**

m. In September 2001, Donovan writes to State Ethics Commission and Middlesex County DA's Office that WLC (Wentworth, McCaffery and Maguire) for conspiracy, collusion and violation of open meeting laws about the WLC decision to deny Donovan license in May 2001. **(Exhibits 9L, 9L1).**

n. In December 2001, Donovan files Tort Claim Act with city of Woburn against Mayor Dever, Paris, Maguire, Wentworth and McCaffery for the handling of Donovan's WLC's hearings in September 2000, May 2001 and November 2001 on acts of conspiracy, collusion, deceitful and wrongful acts, abuse of process, abuse of office etc. **(Exhibit 9M).**

o. In May 2002, Donovan filed a lawsuit in MA Courts to have Maguire and Wentworth removed from hearing his most current license application filed with WLC in May 2002. **(Exhibits 7G, 7H, 7I, 7J, 7L, 7N).**

p. In June 2002, Donovan reports city solicitor (Tom Lawton) to Board of Bar Overseers for basically lying to MA Courts. **(Exhibit 7M).**

q. In June 2002, Donovan reports WLC to Middlesex District Attorneys Office for violations of open meeting laws. In December 2002, the DA concluded that it

was Wentworth who sought zoning opinion from Building Commissioner in May 2002. **(Exhibits 7E, 7F, 9N, 9N1, 9N2).**

r. In March 2004, Donovan files Tort Claim Act against city of Woburn for WLC reneging on Zoning Agreements that parties agreed to in May 2003. **(Exhibit 9O).**

**<u>Donovan's Letters to the Editor and other matters: (Please note many people were upset with these letters and other actions Donovan took against city officials);</u>**

s. In November 1995, the City Solicitor, Ned Robertson, send memo to Donovan indicating that he was not to send memo's to Galante and City Assessor's Office regarding on going litigation. According to memo, Donovan was causing Galante *"a great deal of emotional distress"*. **(Exhibit 10A).**

t. On February 4, 1996, Donovan writes a Letter to the Editor of the Woburn Daily Times titled "REMOVE CHAIRMAN DONOVAN". Donovan wanted his father removed from WLC for his comments made at a public hearing regarding a Chinese restaurant. Many people were very upset with this editorial. It is alleged that this article led to WLC Chairman Donovan's down fall from WLC. **(Exhibit 10B).**

u. On February 14, 1996, Woburn resident Ted Rose made a response editorial to Donovan's article dated 2/4/96 titled "Peter Donovan Off Base". **(Exhibit 10C).**

v. On February 15, 1996 Peter J. Donovan made a response to Ted Rose's editorial. **(Ex.10D).**

w. On February 16, 1996 Woburn resident, mother of Peter Donovan's daughter Courtney and former vice president of Boston Beer and Wine Company, Inc. Jean O'Connor wrote a letter to Mr. & Mrs. Dennis Donovan indicating that she was upset with Peter Donovan's campaign against city officials. **(Exhibit 10E).**

x. In January 2001, Donovan wrote a Letter to the Editor (Woburn Daily Times) indicating that Mayor Dever was "pulling the wool" over Woburn resident's eyes regarding the city budget and not limited to. That the Building Commissioner (Paris), City Solicitors (Robinson and Doucette) and Chief of Police should be fired. And that the Woburn Golf and Ski Authority must be dissolved. This editorial undermined certain city officials to which Donovan received letters from Woburn residents fed up with system. **(Exhibit 10F).**

y. In August 2001, Donovan wrote another letter to the Editor (Woburn Daily Times) indicating that the Woburn Golf and Ski Authority must be dissolved. Wentworth plays golf at Woburn CC at least five times per week and associates with members of Woburn's Golf and Ski Authority. By undermining the Golf and Ski Authority – you undermine the mayor and city council because they appoint members of the GSA. **(Exhibit 10G).**

z. In November 2001, Donovan wrote another letter to the editor (Woburn Daily Times) mentioning Woburn's Golf and Ski Authority. **(Exhibit 10H).**

**Newpaper Articles regarding Donovan:**

**aa.** There have been over 60 news articles regarding Donovan and his business activities since 1994. Many of these articles are sensational, misleading, pro Woburn government and don't reflect favorable on Donovan. Below are examples of said articles. **(Exhibit 11A).**

- On Monday June 3, 1996 Head Lines of the Woburn Daily Times reads *"Donovan wants Commissioner Galante to recuse self from deliberations"*. **(Exhibit 11B).**

- In February 1997 the Woburn Daily Times reads *"ABCC wants reasons for Boston Beer and Wine Denial"*. **(Exhibit 11C).**

- On March 4, 1997 the front page of the Woburn Daily Times reads *"McCaffery nomination in trouble; Peter Donovan tosses curve ball"*. **(Exhibit 11D).**

- On March 5, 1997 the front page of the Woburn Daily Times reads *"Maguire knocks Donovan's curve out of the park"*. **(Exhibit 11E).**

- On March 20, 1997 the Woburn Advocate article reads *" Few noticed archaic law on License Board"*. Then it goes on to say in the opening paragraph, *"by the strict letter of an old law drafted after Prohibition was repealed, the License Commission may have been conducting business illegally for years"*. **(Exhibit 11F).**

- On September 25, 1997 the Woburn Daily Times articles reads *"Boston Beer & Wine in court, sues ABCC"*. **(Exhibit 11G).**

- On September 2, 1999 the head lines for the Woburn Advocate reads *"Judge: License denial must be reviewed"*. ***(Exhibit 11H).***

- On November 9, 1999, the front page of The Woburn Times reads *"Liquor Dealer – FinCom backs $50,000 to fund legal defenses"*. **(Exhibit 11I).**

- On May 2, 2000 the headlines of the Woburn Daily Times reads *"Magistrate dismisses lawsuit from Boston Beer and Wine"*. **(Exhibit 11J).**

- On October 6, 2000, the front page of the Woburn Daily Time reads *"Donovan issues City Solicitor an ultimatum"*. **(Exhibit 11K).**

- On April 6, 2001, the front page of the Woburn Daily Times reads *"Members express bewilderment at sale of Donovan's non-existent license"*. **(Exhibit 4A).**

- On June 5, 2001, the font page of the Woburn Daily Times reads *"Donovan shut off again; License Commission says "NO" 3-0".* **(Exhibit 11L).**

- *On June 3, 20002, the front page of the Woburn Daily Times reads "Latest Donovan request left to court".* **(Exhibit 11M).**

40.) In February, 2000, historian and local attorney John D. McElhiney published "Woburn – A Past Observed". This book outlines the history of Woburn from the late 1800's to the late 1970's. This book also outlines the political history behind package store licenses and who received licenses in the city of Woburn **(Exhibit 12A, 12B pages 264, 376, 380, 381, 382, 386, 12C)** and he quotes the following: **(Exhibit 12B , page 381).**

> *"The barrooms and taverns had been gone since 1944, but the voters had continually opted to keep the package stores, and indeed, before the decade was over, the population increase would merit a sixth license as well.*
>
> *As is implied from earlier footnote, these licenses, once obtained, aren't given up very easily. Not surprisingly, therefore, the process to obtain one, and to keep one, could always be counted onto provide for an interesting story, with perhaps just a wee bit of good natured politics somewhere in the background."*

41. In January 2004, the WLC issued Bickford's Restaurant a full liquor license with nine conditions without any scrutiny by the WLC. In fact, many other license holders have conditions on licenses throughout the city. Wentworth and McCaffery both voted in favor to issue license with conditions **(Exhibit 13A pages 2 and 3).**

42. In December 2004, the WLC issued Restorante II Ducalli a full liquor license. Wentworth and McCaffery both voted in favor. **(Exhibit 14A).**

43. In December 1992, the WLC denied license to McDonough on "public need". McDonough proposed a full package store with no conditions. McDonough had overwhelming public support. The only person to really oppose McDonough's application was John Galante (his two nephews and brother had competing applications on file for same license with WLC). The WLC never sought a zoning opinion for McDonough's proposed location even though it is

in the same office park as Donovan's proposed locations. **(Exhibits 15A, 15B, 15C page 6 Galante opposition, page 7 zoning).**

44. It is alleged that former Mayor Rabbitt (1984-1995), former Mayor Dever (1996-2001) and current Mayor Curran (2002 to Present) have made unwritten city policy/custom to appointed boards and officials under their direct control that they were to deny this 8th package store license to Donovan at all cost and any matter related to said license, such as zoning. All with the intent to harm, punish or "to get" Donovan in retaliation for Donovan undermining political officials, filing law suits against city officials, reporting city officials to state and federal agencies for illegal activities and being a critic of the system – thus treating Donovan differently than others in similar situations etc. The Building Commissioner, Zoning Board of Appeals, City Solicitor and License Commission report directly to the mayor.

45. Regardless of the alleged policy above, it is also alleged because the WLC was the brunt of Donovan's campaigns that the WLC's (Wentworth and McCaffery) decision of *"trumped up claims"* on July 31, 2003 to deny Donovan license was made with the intent to harm, punish or "to get" Donovan all in retaliation for Donovan criticizing WLC members, filing law suits against WLC members, reporting WLC members to federal and state agencies for illegal activities and not limited to all paragraphs above – thus singling Donovan out and treating him much differently than others in similar situations etc.

46. As indicated above, Donovan has been a huge critic of the Woburn Golf and Ski Authority (Authority hereafter) who operate Woburn Country Club. Wentworth plays golf at Woburn CC at least five times per week and is very friendly with members of the Authority who Donovan has been a critic of. It is also alleged that Wentworth has been influenced by WGA members to deny Donovan license for Donovan's criticism and Donovan's incident at Woburn CC with Maguire's friend. **(Exhibit 7H).**

47. The WLC has a history of delay tactics. **(Exhibits 16A, 16B, 9E page 9#5).**

48. In March 2004, Donovan filed a complaint in this court alleging that the WLC and other city officials violated his right to Equal Protection pursuant to 14th Amendment of the US Constitution and other federal violations.

49.    On March 10, 2005 both parties had Oral Arguments before MA Court of Appeals. Parties are just waiting on the "arbitrary and capricious" decision from MA Court of Appeals - which could take another six months. **(Exhibit 8N).**

The above facts are true and accurate – signed under the pains and penalties of perjury.

April 13, 2005

Peter J. Donovan
35 Longmeadow Road
Arlington, MA 02474
781-643-2848

### CERTIFICATE OF SERVICE

**I, PETER J DONOVAN, SERVED A COPY OF THIS MOTION And Supporting Documents UPON THE DEFENDANT'S ATTORNEY VIA First class mail on April 13, 2005. SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.**

**PETER J. DONOVAN**