COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT DEPARTMENT

MIDDLESSEX, SS

DOCKET NO:

03-3568

CITY CLERKS OFFICE

2003 AUG 29 A 10: 49

WOBURN, MA 01

PETER J. DONOVAN pro se,

      Plaintiff,

    vs.

CITY OF WOBURN, CITY OF WOBURN

LICENSE COMISSION, PAUL WENTWORTH, J.

KEVIN MAGUIRE AND OWEN McCAFFERY,

      Defendants.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE ... ESEX
AUG 28 2003
CLERK

## COMPLAINT

### INTRODUCTION

1.    This is an action in the nature of certiorari pursuant to MGL c. 249, s. 4, by PJD (DBA Corporate Wine & Gifts) arising from the decision of Defendant, City of Woburn License Commission denying the plaintiff's application, pursuant to MGL c. 138, s. 15, for the 8th all-alcoholic package store license that would allow PJD to operate his corporate gift company specializing in wine baskets and other gift arrangements.  This is the second time the WLC denied PJD this license after being remanded back to the WLC in June 2000 by the ABCC via this Court (The Boston Beer and Wine Company v. ABCC docket number 97-4332). The plaintiff seeks judicial review of the denial because, the City's decision exceeded its authority, was arbitrary and capricious, was made with malice, was an abuse of discretion and was an abuse

-1-

1  of process.  See WLC Decision dated August 5, 2003 attached hereto as EXHIBIT

2  A.

3      2.  The original administrative record regarding this matter is from

4  The Boston Beer and Wine Company, Inc. v. ABCC docket number 97-4332.  Other

5  cases directly related to this matter include docket numbers Peter Donovan v.

6  Woburn License Commission et. al. docket number 02-0349, Peter Donovan v.

7  Woburn License Commission et. al. docket number 02-2230 and Peter Donovan v.

   Woburn Zoning Board of Appeals et. al. docket number 02-3386.

8

9                              PARTIES

10     3.  Plaintiff Peter J. Donovan (PJD, Donovan or Plaintiff hereinafter)

11  is an individual who resides at 35 Longmeadow Road, Arlington, Middlesex

12  County, MA.  Mr. Donovan is also known as Peter J. Donovan d/b/a Corporate

13  Wines & Gifts.  At all relevant times, PJD has been 100% Shareholder of The

14  Boston Beer and Wine Company, Inc. and Sole Proprietor of Corporate Wines and

15  Gift.

16     4.  The defendant, Woburn License Commission (WLC hereinafter), is the

17  duly constituted licensing authority for the City of Woburn pursuant to MGL

18  c. 138 s. 4.  Usual place of Business is City of Woburn, City Hall, 10 Common

19  Street, Middlesex County, Woburn, MA. 01801.  Current Members include J.

20  Kevin Maguire, Paul Wentworth and Owen McCaffery.

21     5.  The defendant, city of Woburn, (city hereinafter), is a duly

22  organized Massachusetts municipal corporation.  Their usual place of business

23  is Woburn City Hall, 10 Common Street, Middlesex County, Woburn, MA. 01801.

24     6.  The defendant, Paul Wentworth (Wentworth hereinafter) is an

25  individual who resides at 17 Highet Avenue, Middlesex County, Woburn, MA

1  01801.  Wentworth is now and has been at all relevant times, a duly appointed

2  Member of the Woburn License Commission. Wentworth is being sued in his

3  official capacity and as an individual.

4      7.  The defendant, J. Kevin Maguire (Maguire hereinafter) is an

5  individual who resides at 15 Waltham Street, Middlesex County, Woburn, MA.

6  Maguire is now and has been at all relevant times, a duly appointed Member of

7  the Woburn License Commission.  Maguire is being sued in his official

8  capacity and as an individual.

9      8.  The defendant, Owen McCaffery (McCaffery hereinafter) is an

10  individual who resides at 19 Duran Avenue, Middlesex County, Woburn, MA

11  01801.  McCaffery is now and has been at all relevant times, a duly appointed

12  Member of the Woburn License Commission.  McCaffery is being sued in official

13  capacity and as an individual.

14                          JURISDICTION

15      9.  This Court has jurisdiction over this matter pursuant to MGL c. 249

16  s. 4.   In addition, this court has jurisdiction in ordering the WLC to issue

17  said license to PJD pursuant Ballarin, Inc. v. Licensing Board for the City

18  of Boston (2000) 730 N.E.2d 904, Mass.App.Ct. 506.

19

20                      FACTUAL ALLEGATIONS

21      10.   This matter was first heard by the WLC in March 1995 in which the

22  WLC granted said 8th full package store license (2 to 0 vote) to PJD under The

23  Boston Beer and Wine Company, Inc. with the condition that PJD would only

24  sell beer and wine, then in June 1995 the WLC reversed their decision (1 for

25  Maguire to 1 vote against Galante) to deny PJD the license because the

condition could not be met.  This matter was appealed to the ABCC in August

-3-

1    1995 pursuant to MGL c. 138 s. 67 to which the ABCC upheld the WLC decision.

2    The matter was then appealed to this court pursuant to MGL c. 30A, but was

3    voluntarily dismissed by PJD.

4         11.  In June 1996, PJD again applied for this 8th full package store

5    license under The Boston Beer and Wine Company, Inc. with no conditions on

6    license and the WLC denied the license (3 to 0 vote)(BBWC v. ABCC docket

7    number 97-4332, Admin Rec. at 0011).  This matter was then appealed to the

8    ABCC in May 1997 pursuant to MGL c. 138 s. 67 to which the ABCC upheld the

9    WLC decision (BBWC v. ABCC docket number 97-4332, Admin Rec. at 0100).  The

10   ABCC's decision was then appealed to this court pursuant to MGL c. 30A to

11   which this court overturned the ABCC's decision on August 17, 1999 ordering

12   the ABCC to remand matter back to WLC for further hearing - see Judge Zobel's

13   decision attached hereto as Exhibit B.

14        12.  Between August 1999 and May 2000, PJD had to file a contempt

15   charge against the ABCC for not remanding this matter back to the WLC per

16   court order dated August 17, 1999.  On June 30, 2000, the ABCC finally

17   remanded matter back to the WLC - see ABCC Remand Notice dated June 30, 2000

18   attached as Exhibit C.

19        13.  Over a period of three years, PJD went before the WLC regarding

20   this matter, in September 2000, May 2001, November 2001, May 2002 and July

21   31, 2003.  In September 2000, May 2001, November 2001, May 2002 the WLC

22   denied PJD a Public Hearing on PJD's license application because of zoning

23   matters or denied him license outright because of zoning.  All hearings were

24   for addresses (345 Washington Street, 325 Washington Street and 30 cedar

25   Street) are within an eighth 1/8 of a mile of 25 Olympia Avenue, which was

1    the original location stated on the application filed before WLC in June

2    1996.

3        14.    Specifically, in June 2001 PJD went before the WLC on his

4    application for 325 Washington Street.  The WLC sought a zoning opinion from

5    the city solicitor without knowing all the relevant facts regarding PJD's

6    business or proposed use of space.  The WLC denied PJD the license because of

7    zoning (Wentworth, Maguire and McCaffery) and public need (Maguire only).

8    This matter was never appealed to this court because PJD could not appeal a

9    zoning opinion from a city solicitor and because the matter had so much

10   publicity in the local papers and the landlord was getting questioned on

11   handicap requirements by city officials (never before was the landlord

12   questioned on handicap matters, it only happened after PJD applied for this

13   license at his property), he would not sign a lease with PJD.

14       A.    Wentworth's decision from the Administrative Record page 61 dated

15   May 31, 2001;

16              " I'm opposed to the issuance of the license because no one

17              authority or this licensing board has the authority to bypass or
               ignore zoning requirements.

18              This is an O-P zone.  It is against the ordinance and also,

19              as stated before, this required a special permit fro the City
               Council and we had no right to change that without their proper

20              authority.   Therefore, I'm opposed to issuance of the license"

21

         B.    McCaffery's decision from the Administrative Record page 61 dated

22   May 31, 2001:

23

24              "The reason I'm opposed to it is because the letter here
               states in other words the local licensing authority has no

25              jurisdiction whatsoever to override or circumvent zoning
               regulations through the exercise of its discretion.

               I vote against it."

1

2      15.    Then September 11, 2001 came along and PJD had to change the way

3  he did business, as did most businesses throughout the world.  He changed the

4  name of the company from The Boston Beer and Wine Company, Inc. to Corporate

5  Wines and Gift because of the negative publicity BBWC has received over a

6  seven-year period in the local papers – directly relating to this 8th package

7  store license and his dealings with the WLC and other city of Woburn

8  officials.   There have been over 150 articles regarding PJD and BBWC in the

9  local newspapers since 1995.  PJD was 100% shareholder of BBWC.  He changed

10  the ownership structure from S-Corp to Sole Proprietorship for financial

11  planning purposes.  He changed his primary target market from

12  consumer/business to business only (B to B), because under the new business

13  model it allows PJD to become more "focused".  He did away with importing and

14  brokering of wines, because it became tough to deal with oversea vendors

15  because of new rules on importing and exporting after 9/11. He changed his

16  product to be sold from beer and wine of the month clubs to wine gift baskets

17  as corporate gifts, non-alcoholic gift baskets or arrangements as corporate

18  gifts, wine racking systems to be sold to high end retailers and wine,

19  because it allows PJD to become more focused on one market.

20      16.    In November 2001, PJD applied for the license under a sole

21  proprietorship DBA Corporate Wine and Gift with the sole focus (primary

22  target market) on the 10,000 businesses within a five-mile radius of proposed

23  location (345 Washington Street, Woburn, MA).  Again, the WLC sought a zoning

24  opinion, this time from the Building Commissioner.  The WLC sought this

25  opinion without having any relevant facts regarding PJD amended business

plan.  And most important, the WLC did not have the relevant information

1   regarding the history of the particular space or PJD proposed use when

2   seeking such an opinion. Again the WLC denied PJD a public hearing because

3   the zoning was illegal.  See courts decision Peter Donovan et al V. Woburn

4   License Commission et. al. docket number 02-0349 attached hereto as Exhibit

5   D.

6        17.    Then in May 2002, PJD found another location (30 Cedar Street)

7   and applied for the license under dba Corporate Wine and Gift.  Again, the

8   WLC sought a zoning opinion from the Building Commissioner not knowing all

9   the relevant facts regarding the premises and PJD's business (see WLC Memo to

10  Building Commissioner dated May 14, 2002 attached hereto as Exhibit E and see

11  Building Commissioner's Memo to WLC dated May 23, 2002 attached hereto as

12  Exhibit F).  Also, PJD caught wind from his local sources that the WLC were

13  going to derail the public hearing on the "character issue" because PJD got

14  into a "pushing match" in January 2002 with WLC Maguire's close friend.  This

15  matter is well documented in Peter Donovan v. WLC et al docket number 02-

16  2230.  PJD's application was never heard by the WLC.  PJD appealed the

17  Building Commissioner's decision to this court in Peter J. Donovan V. Woburn

18  Zoning Board of Appeals at el docket number 02-3386. The zoning matter was

19  settled between parties in May 2003 – see Zoning Settlement attached hereto

20  as EXHIBIT G.

21       18.    On June 2002, this Court "stayed" (Justice Kerns) the license

22  matter until all zoning matters were resolved.  See Clerk's Notice dated June

23  18, 2002 attached hereto as Exhibit H.

24       19.    In addition, in February 2003 this Court further put an

25  "injunction" on license from being issued until all zoning matter were

1    resolved (Justice Fahey).  See Clerk's Notice dated February 4, 2003 attached

2    hereto as Exhibit I.

3        20.   On June 19, 2003, PJD submitted an application (with no

4    conditions on license) for the 8th full package store license to the WLC to

5    meet the customer demand for wine gift baskets and other gift arrangements.

6        21.   The first application had 345 Washington Street listed on it.

7    345 Washington Street is a very busy street with up 45,000 cars per day

8    traveling it.  PJD never wanted this much visual exposure and he wanted to

9    limit walk in traffic because under his new business model, it does not

10   really allow for walk in traffic.  So he amended his June 19, 2003

11   application, after working with the owner of the property, Cummings

12   Properties, who found another unit/space located at 30 Cedar Street.  30

13   Cedar Street is located directly behind 345 Washington Street.  It has no

14   street exposure from Washington Street and limited exposure from Cedar

15   Street.  See letter to WLC dated June 26, 2003 attached hereto as Exhibit J.

16       22.   The propose space at 30 Cedar Street is roughly 2,500 square

17   feet.  5% of this space or 125 square feet will be use for accessory retail.

18   This accessory retail space will accommodate walk in business and on site

19   gift pick-ups.

20       23.   Cummings Properties would like PJD to be a tenant because his

21   business provides a "niche" service to other Cummings Property tenants that

22   is not currently available.  Plus, Cummings Property would like PJD as a

23   tenant, because PJD is willing to sign a long-term lease.

24       24.   On July 31, 2003 a hearing was held before the WLC. PJD notified

25   all abutters via certified mail and public notice was placed in local

     newspapers regarding hearing scheduled pursuant to MGL. c. 138.

1       25.    At the public hearing (July 31, 2002) Chairman of the WLC J.

2   Kevin Maguire recused himself from all proceedings because of a conflict

3   between PJD and his close friend (conflict detailed in docket number 02-

4   2230).   Wentworth and McCaffery were the only members voting on PJD's

5   application.

6       26.    At the public hearing (July 31, 2003), PJD presentation was

7   roughly one and half hours long to which he gave a brief historical overview

8   on his dealings with the WLC since 1995, gave an overview of his primary

9   market, gave an overview of his product to be sold, gave an overview of his

10  internal policies regarding deliveries and ID checking, gave an overview of

11  hours of operation, gave an overview of his management team and their

12  experiences in the wine and spirits industry, gave an overview of the

13  benefits  his company would provide to the city of Woburn, gave an overview

14  of the zoning settlement, gave an overview of the criteria of issuing a

15  liquor license pursuant to  MGL c. 138 s. 15, gave an overview of the public

16  need at said location and gave an overview of relevant case law.

17      27.    At the public hearing (July 31, 2003), PJD presented the

18  following evidence to establish "public need" for this type of business at

19  this "particular" location pursuant to MGL. c. 138 s. 23:

20         a.    Going back to the 1970's this 8th package store license was

21  issued in the city of Woburn.   The license was originally issued to Mayor

22  Gilgun's brother who then sold it to Martignetti in or around 1973.   In 1978

23  Martignetti had to give the license back to the city of Woburn pursuant to

24  case law Johnson v. Martignetti (1978) 375 N.E. 2d 290, 374 Mass. 784.   This

25  is how this license became/is available today.

-9-

1    b.    The population in Woburn in the 1970's was roughly 37,000 and in

2  2003 it is at 37,260 pursuant to U.S. Census Bureau, Census 2000.  The only

3  difference between Woburn today and in the 1970's is the daily traffic, which

4  is 1,000 times more than it was in the 1970s and new businesses due to the

5  creation of Woburn's Industrial Park.  A majority of this traffic is due to

6  the 3,000 or so businesses that operate within the city.  A majority of these

7  businesses are located in the Northeast corner of the city in Woburn's

8  Industrial Park, which includes West Cummings Park and Cummings Park.  Woburn

9  Industrial Park was in the planning stages in the 1960's and 1970's.

10  Cummings Park was built in the late 1970's early 1980's.  Route 128 and Route

11  93 intersect at this corner of the city and has been labeled as the busiest

12  traffic intersection in the Commonwealth.  Most of this traffic is due to the

13  inflows and outflows of traffic coming from Woburn Industrial Park.  To

14  alleviate this traffic problem, the Commonwealth made a separate on/off ramp

15  into the Industrial Park north of Route 128 on Route 93 in 2000.

16    c.    Woburn Industrial Park has over twelve (12) MGL. c. 138 s. 12

17  licenses (restaurant/on site- pouring license) servicing this particular

18  business market on a daily basis.  Or, more than 27% of all liquor licenses

19  issued in the city of Woburn are located in this park.  A majority of these

20  licenses were issued between 1984 and 1996 to which Maguire sat on the WLC.

21  These restaurants are mostly regional and national chains including, but

22  limited to, Fridays, Bertucci's Pizza, Joes American Bar and Grille, 99

23  Restaurant, Chicago Bar and Grille etc.

24    d.    Woburn Industrial Park does not have one MGL. c. 138 s. 15

25  license (off premise license/package store) located within it's general area

   to support the businesses and people who come into this park on a daily

1    basis.  It is estimated that up to 30,000 people work in this park.  The

2    nearest location for a MGL c. 138 Section 15 license within Woburn is roughly

3    2.5 miles away.  In Reading on the north-side of the park the nearest

4    location is roughly two miles away.  In Stoneham on the northeast side of the

5    park, the nearest location is roughly two miles away.

6         e.    Not one package store located in Woburn or surrounding towns,

7    solely focus on the 10,000 businesses within a five-mile radius of Cummings

8    Park/Woburn Industrial Park.  In addition and to the best of PJD's knowledge,

9    there is no business within Massachusetts that hold a package store license

10   that solely focus on wine gift baskets as corporate gifts.

11        f.    PJD proposed location is at 30 Cedar Street, which is in Cummings

12   Park.  There are no neighborhoods, churches or schools in this area and it is

13   zoned strictly for business.  This location is ideal for PJD's business

14   because of it's proximity to RT. 128 and RT. 93 (distribution).

15        g.    Comments made by Maguire over the years:

16                  -  In 1992, Chairman Maguire said, "that he wanted this

17                     license issued under his tenure".  Maguire has been on the WLC

18                     since 1984.

19                  -  In March 1995, Maguire voted in favor of issuing license to

20                     PJD regardless of conditions and said, "that it was the best

21                     presentation and was the best interest of Woburn to have its

22                     license issued to BBWC, because of it's location etc." See WLC

23                     Maguire's comments BBWC v. ABCC docket number 97-4332 Admin.

24                     Rec. at 0182-0183).

25        h.    In 1996, 160 taxpayers, residents and business owners signed a

          petition in support of issuing Woburn's 8th all alcoholic package store

-11-

1  license to BBWC/PJD in 1995/1996. Today, many of these people still support

2  the issuing of this license to PJD.  This list was signed by people from "all

3  walks of life" that included doctors, lawyers, Woburn School Teachers, Woburn

4  Police Officers, Woburn Firemen, local business owners, Woburn City

5  Councilman, Woburn School Committee Members, Plumbers, Carpenters, Truck

6  Drivers, etc.  In addition, letters in support of issuing this license to PJD

7  were sent to the Mayor and WLC. (See <u>BBWC v. ABCC</u> docket 97-4332, Admin.

8  Record starting at 0239 through 0251, at 0362 and at 0363.  Also see comments

9  made by Stephen McDonough Admin Rec. at 0151-0152).  The reason PJD had

10 people sign the above list and send letters to city officials was because

11 former Chairman of the License Commission (Dennis Donovan - PJD's father)

12 indicated that he heard from "all walks of life" in opposition to this

13 license when Kevin McDonough applied for it in 1992.  PJD confronted his

14 father on this issue, but Chairman Donovan could not produce one person's

15 name he spoke to.  See this Court's Decision in <u>McDonough v. City of Woburn</u>

16 docket number 93-2428B page 2.

17    i.    In 1996, the Woburn City Council (elected officials) voted to

18 keep this 8th full package store license on the cities books and voted to get

19 rid of the beer and wine package store licenses through a home rule petition

20 that became law in 1997.

21    j.    In November 2001 PJD completed a survey to his primary market

22 (sample sent to 250 businesses within Woburn's Industrial Park).  92% of the

23 respondents indicated that there was a "*public need*" for this type of

24 business at this "*particular location*".  92% of the respondents indicated

25 that they would purchase a product from PJD.  95% of the respondents

indicated that the hours of operation were adequate.  PJD submitted a summary

1   of the survey results and copies of actual responses with attached business

2   cards of respondents to WLC on July 31, 2003.  No objections to survey were

3   raised by the WLC at public hearing.

4       k.   In March 2003, PJD conducted another survey to his primary target

5   market (sample sent to 102 businesses within Woburn's Industrial Park).  71%

6   of the respondents indicated that there was a "public need" for this type of

7   business at this "particular location". 81% of the respondents indicated that

8   they would purchase a product from PJD.  95% of the respondents indicated

9   that the hours of operation were adequate.  Again, PJD submitted a summary of

10  the survey results and copies of actual responses with attached business

11  cards of respondents to WLC on July 31, 2003.  No objections to survey were

12  raised by the WLC at public hearing.

13      l.   In August 1995, the WLC allowed Giles Liquor to relocate and

14  expand from 500 square feet to 1,700 square feet.  This expansion was allowed

15  by the WLC without addressing "public need".

16      m.   In July 1997, the WLC allowed Giles Liquor to relocate again and

17  expand from 1,700 square feet to 5,500 square. This expansion was allowed by

18  the WLC without addressing "public need".

19      n.   In June 2000, the WLC allowed S&L Liquors to relocated and expand

20  from 2,000 square feet to 4,200 square feet.  This expansion was allowed by

21  the WLC without addressing "public need".

22      o.   On June 17, 2002, Judge Kerns went on record as follows,;  "And

23  with respect to how the Court would act on the license issue, if that zoning

24  issue were to be resolved in Mr. Donovan's favor, in that case I am speaking

25  to the Court in the --- sense of Judge Kern, and it may not be Judge Kern who

    gets to hear that issue once that "stay" is lifted.  At that point, the best

1    *Mr. Donovan can do is say, and we have a record, and that's --- aside from*

2    *the fact that we have testimony and we had a pro se going forward, we have a*

3    *record that he could pay for, that would indicate that, at least, Judge*

4    *Kern's inclination was to demand that the Commission grant the license."*  See

5    page 61 Testimony of Kevin Maguire <u>PJD v. WLC</u> docket number 02-2230.

6

7        28.    At the public hearing (July 31, 2003), PJD reviewed his delivery

8    policy; He would deliver to business addresses only Monday through Thursday

9    as indicated in Zoning Settlement.  That all persons accepting product

10   regardless of contents (wine related, non alcohol related) would have to show

11   an ID (21 years or older) and sign for product.  No product would be left on

12   doorstep unsigned for.  A delivery log would be on hand for review by the

13   WLC, Police department, ABCC and other officials.

14       29.    Going back to the 1960's and currently, other package stores in

15   Woburn have been allowed to deliver to residential addresses without scrutiny

16   by the WLC.  See <u>BBWC v. ABCC</u> docket number 97-4332, Admin Record at pages

17   0375 through 398.

18       30.    At public hearing (July 31, 2003), PJD reviewed his ID checking

19   policy on walk in sales; that all person purchasing alcoholic product at

20   location through walk in sales would have to show ID regardless of age.  As

21   indicated at the hearing, PJD would have the strictest ID checking policy in

22   the city.  PJD is very concerned about underage drinking and drinking and

23   driving and he will do everything possible to avoid it.  He will consult with

24   the WLC, DARE Program (PJD's brother is the Woburn Police Dept's DARE

25   Officer), Woburn Police Officials, ABCC Officials and MADD on local and

     national trends on these issues.

1    31.   At public hearing (July 31, 2003), PJD reviewed his primary

2  target market; Primary Target Market is the 10,000 businesses that operate

3  within a five-mile radius of Woburn's Industrial Park.  This includes Woburn,

4  Burlington and Stoneham.  Potential corporate customers include General

5  Electric, KPMG Peat Marwick and Morgan Stanley.  PJD will not target

6  homeowners.

7    32.   At public hearing (July 31, 2003), PJD reviewed his advertising

8  policy; he would not advertise his address to discourage walk in business.

9  In addition, PJD will not advertise in local newspapers period.

10    33.   At the public hearing (July 31, 2003), PJD indicated that would

11  hire six new people with unemployed Woburn residents given first preference

12  to positions.  Job creation is a top priority of the federal and state

13  government.

14    34.   The WLC Decision dated August 5, 2003 does not state which towns

15  are considered in Wentworth's survey in November 2001, nor did Wentworth

16  disclose who he spoke to at the July 31, 2003 public hearing.

17    35.   According to testimony in 1998 by Chairman of the WLC - Maguire,

18  the WLC does not have any methodology in place or method in place to

19  determine "public need" other than MGL c. 138, s. 23.

20    36.   The WLC Decision dated August 5, 2003 does not list the

21  conditions that cannot be met.  Especially when PJD had no conditions put on

22  license.

23    37.   The WLC Decision dated August 5, 2003 is speculative regarding

24  future sale or transfer of license.  The ABCC has ruled that a decision

25  cannot be speculative regarding future transfer or potential transfer of

license.  See ABCC decision Ristorante Toscano, Inc (February 23, 1994).

1       38.   At the public hearing (July 30, 2003), McCaffery stated it was

2   his "personal opinion" that there were enough places to obtain alcohol in the

3   city of Woburn.  McCaffery did not provide any information to support his

4   "personal opinion".

5       39.   The WLC Decision dated August 5, 2003 regarding proper control of

6   mail order delivery.  Their decision does not state what controls they are

7   concerned with especially when other package stores in the city have current

8   delivery licenses.  And especially when PJD's deliveries will only be made to

9   business addresses only and all person accepting deliveries regardless of

10   contents would have to show ID and sign for package.

11       *40.*   The Town of Burlington is north of the city of Woburn has the

12   highest concentration of full package stores per population than all

13   surrounding towns at .00022%.  Woburn is at .00019%.  Please note: PJD

14   obtained this information from the ABCC and the US Census Bureau.  In

15   addition, these stats do not include "Beer and Wine Package Store Licenses"

16   because surrounding towns (Burlington, Lexington, Winchester, Stoneham) don't

17   recognize them or issue them.  In 1997, the city of Woburn put a home rule

18   petition on beer and wine package store licenses from being issued, even

19   though PJD applied for one in 1995 and WLC would not issue the license.

20   These stats compare "Apples to Apples" full package store licenses to full

21   package store licenses.

22       *41.*   On August 1, 2003, PJD sent a letter to the WLC asking them to

23   reconsider their decision of July 31, 2003.  PJD requested that the WLC

24   oversee a blind survey to be sent to PJD's primary market to address "public

25   need" at proposed location.  The WLC refused request.  See PJD's Letter dated

August 1, 2003 to WLC attached hereto as <u>Exhibit K.</u>

1      42.    90% of all products purchased by PJD will come from countries

2    like South Africa, Australia, France, Spain, South America and states like

3    California, Oregon, and Washington.

4                        **OTHER FACTS**

5      43.    PJD grew up in Woburn and was educated in the Woburn School

6    system. PJD has four brothers to which two still reside in Woburn. PJD

7    father, Dennis, was Chairman of the WLC Commission from 1984 to May 1996.

8    Mr. Donovan passed away in May 1999. PJD mother still resides in Woburn.

9    Many of PJD childhood friends still reside in Woburn. PJD is well versed in

10   local politics.

11      44.    Maguire was appointed to the WLC in 1984 by Mayor Rabbitt.

12   Wentworth was appointed to the WLC in May 1996 by Mayor Dever. McCaffery was

13   appointed to the WLC in March 1997 by Mayor Dever.

14      45.    In November 1995, Peter J. Donovan started a writing campaign

15   speaking out against members of the Woburn License Commission, Mayor Rabbit

16   (1984 – 1995), Mayor Dever (1996 – 2001), Building Commissioner (Paris) and

17   the former City Solicitor (Robertson) on how they handled the proceedings

18   against BBWC/PJD. This campaign included lawsuits. Based on this campaign

19   against city officials, the District Attorney concluded that WLC was

20   violating Open Meeting Laws and the City Council concluded that the WLC was

21   illegally appointed under MGL. 138.

22      46.    In reference to paragraph 45, it is alleged that certain city

23   officials, especially members of the WLC were instructed by former Mayor

24   Dever to do what ever possible and at all cost, not to issue this 8th package

25   store license to PJD because Dever and other officials don't personally like

PJD, because PJD has sued them personally and not limited to.

1     47.    In reference to paragraph 45 and 46, regarding PJD's letter

2  writing campaign against city officials; In November 2001, PJD wrote to every

3  city councilman, the mayor and local newspapers regarding Maguire's character

4  possibly derailing Maguire's chances of obtaining a job with the Public Works

5  that he applied for.  PJD has also reported Maguire to the IRS, Mass. DOR and

6  other state agencies for fraud going back to 1996 and not limited to.

7     48.    It is also alleged that Maguire, although he recused himself from

8  public hearing on July 31, 2003, influenced (conspired) the other members of

9  the WLC to deny PJD this license in retaliation of PJD derailing Maguire's

10 potential Public Works job with the city in November 2001.

11    49.    Before July 31, 2003, all motions to deny issuing the license to

12 PJD and or to deny PJD from entering evidence were made by Chairman Maguire

13 at the WLC public hearings in September 2000, May 2001 and November 2001.

14 None of the other License Commissioners (Wentworth and McCaffery) made any

15 motions - they just went along with Maguire.

16    50.    On July 8, 2001, the Boston Sunday Globe did an article about

17 these particular license in Massachusetts and it reported on page 4 of

18 NorthWest Weekly;

19         *"that little-known fact set off a scramble this spring for a
           license that has a face value of $1,600 but has a street value
20         somewhere between $250,000 and $500,000."*

21    This article was in reference to a new package store license in North
   Andover that came available when the town's population increased.  This
22 article also points out that these licenses are very political.

23    51.    This particular package store license in Woburn has a "street"

24 value worth up to $150,000 and has a "very" political past.  Originally

25 issued package store licenses have only gone to people with close ties to the

   mayor.  For example:  Mayor Gilgun's brother received a license.  Mayor

1   Gilgun is the brother of former District Court Judge Gilgun.  District Court

2   Judge Cullen received a license back in the 1950's.  Mayor Shaunessey

3   received a license the day after he resigned from office.

4        52.     In February 1975, the package store owners of Woburn, who were

5   all politically connected at the time, filed a lawsuit against Martignetti

6   and as a result, Martignetti had to relinquish his Woburn package store

7   license back to the city.  The somewhat famous case is Johnson v. Martignetti

8   (1978) 375 N.E.2d 290, 374 Mass. 784.

9        53.     On February 5, 2000, historian and local attorney John D.

10  McElhiney published "Woburn - A Past Observed".  This book outlines the

11  history of Woburn from the late 1800's to the late 1970's.  In the book, he

12  outlines who received these particular package store licenses and he quotes

13  the following on page 381;

14              *"The barrooms and taverns had been gone since 1944, but the voters
                had continually opted to keep the package stores, and indeed,*
15              *before the decade was over, the population increase would merit a
                sixth license as well.*
16              *     As is implied from earlier footnote, these licenses, once
                obtained, aren't given up very easily.  Not surprisingly,*
17              *therefore, the process to obtain one, and to keep one, could
                always be counted onto provide for an interesting story, with*
18              *perhaps just a wee bit of good natured politics somewhere in the
                background."*

19

20       54.     It is also alleged that based on the history and the "street"

21  value of this 8th Package Store License, that this license was "promised" to

22  someone who is "very" politically connected in the city of Woburn as a

23  "payoff".  Just recently, rumors have surfaced that Oliver Galante still

24  wants this license.  The Galante matter is well documented in BBWC v. ABCC

25  docket number 97-4332.

1    55.    PJD is aggrieved by the decision of the Woburn license

2    Commission and seeks relief in the nature of certiorari pursuant to MGL. C.

3    249 s. 4.

4    56.    PJD has exhausted all administrative appeals and the decision

5    of the Woburn License Commission is final and not otherwise reviewable.

6    57.    The decision of the WLC to deny the application is based on

7    speculation, personal opinions, an error of law, is unsupported by

8    substantial evidence, and is not in accordance with the law.

9

10    COUNT I - (ARBITRARY AND CAPRICIOUS & VIOLATION OF MGL c. 138, s. 23 - All

11                              DEFENDANTS)

12    58.    PJD repeats and incorporates by reference herein the facts

13    alleged in paragraphs 1 to 57 of the Complaint.

14    59.    The City is responsible for the acts and decisions of the WLC.

15    60.    The Commission failed to act in a fair judicial and reasonable

16    manner based upon the evidence presented to it that its decision did not

17    adequately consider the undisputed evidence in support of an unopposed

18    application, and, the reasons given for the denial of the application were an

19    abuse of discretion.

20    61.    As a result, the City exceeded its jurisdiction under MGL c. 138

21    because the WLC's denial of PJD's application was an arbitrary and capricious

22    exercise of its judgment, without respect to public need at this particular

23    location.

24    62.    As a direct result of the action of the Woburn License

25    Commission, PJD has suffered substantial and cognizable damages, including

1  PJD suffering mental anguish and emotional distress, and not limited to,

2  estimated to be over $250,000.

3      63.   The constant delays by the WLC have cost PJD available space at

4  addresses listed on Zoning Settlement.  By the time this court rules on this

5  matter the address listed on PJD's current application before the WLC could

6  be irrelevant.

7

8      COUNT II (WLC DECISION WAS MADE WITH MALICE AND ABUSE OF PROCESS – ALL

9                              DEFENDANTS)

10     64.   PJD repeats and incorporates by reference herein the facts

11 alleged in paragraphs 1 to 63 of the Complaint.

12     65.   The City is responsible for the acts and decisions of the WLC.

13     66.   The WLC's decision was committed with malice in retaliation for

14 PJD being political critic of local politicians and members of the WLC over

15 the past seven years.

16     67.   The WLC's decision was just another attempt to delay PJD from

17 going into business and obtaining this "prized" 8th package store license thus

18 abusing AND using the judicial process as a delay tool.  The first couple of

19 attempts were made by the WLC seeking zoning opinions in which they had no

20 jurisdiction to seek such opinion, pursuant to Bradshaw v. Board of Appeals

21 of Sudbury, 346 Mass, 558, 194 N.E. 2d 716 (1963) to which PJD had to appeal

22 to this court.  From day one, PJD could operate at said locations as a matter

23 of "right" pursuant to case law and Woburn Zoning Ordinance.

24     68.   As a direct result of the action of the Woburn License

25 Commission, PJD has suffered substantial and cognizable damages, including

1  PJD suffering mental anguish and emotional distress, and not limited to,

2  estimated to be over $250,000.

3      69.   The constant delays by the WLC have cost PJD available space at

4  addresses listed on Zoning Settlement.  By the time this court rules on this

5  matter the address listed on PJD's current application before the WLC could

6  be irrelevant.

7

8      WHEREFORE, Plaintiff prays that this Court:

9      70.   Grant this appeal from the decision of the Woburn License

10  Commission;

11     71.   Issue an order to Woburn's License Commission it to Certify up to

12  this court, a true, complete and perfect record of all proceedings before it

13  with all reports, papers, stenographer prepared transcripts of testimony of

14  the hearings and copies of PJD's Exhibit's 1 through 14 that he entered into

15  evidence without objection by the WLC on July 31, 2003;

16     72.   Preliminarily enjoin City of Woburn License Commission from

17  issuing or holding a public hearing on the 8th all-alcoholic package store

18  license to any other applicant but PJD, until this matter is settled between

19  both parties or until this license is ordered issued by this Court to PJD.

20     73.   Vacate the decision of the Woburn License Commission dated August

21  5, 2003 (from public hearing on July 31, 2003);

22     74.   Order Woburn License Commission to issue 8th all-alcoholic package

23  store license to PJD at 30 Cedar Street, 32 Cedar Street or 345 Washington

24  pursuant to addresses listed on Zoning Settlement (which ever unit space is

25  available at the time of Courts decision) and pursuant to Ballarin, Inc. v.

Licensing Board for the City of Boston (2000) 730 N.E.2d 904, Mass.App.Ct.

1   506 and ABCC decision dated January 9, 2003 <u>Nobscott Convenience Store v.</u>

2   <u>Framingham</u>.

3          75.    Other issues this Court <u>must</u> consider when rendering its

4   decision;

5          A.)    The possibility that the WLC and it's members violated

6   PJD's 14th Amendment Rights to Equal Protection (under the color of

7   federal and state law) as a "class of one" pursuant to the United States

8   Constitution and <u>Village of Willowbrook v. Olech</u> 528 US 562, 120 S.Ct.

9   1073 and <u>Esmail v. Macrane</u>, 53F.3d 176 (C.A. 7 1995) by allowing other

10  package stores to expand and issuing new restaurant licenses without

11  them (WLC) addressing "public need" and allowing other package store

12  owners to deliver product without scrutinizing them about delivery as

13  they (WLC) have done with PJD since 1995.

14         B.)    The possibility that the WLC and it's members violated

15  PJD's Due Process Rights under the Massachusetts Constitution (under the

16  color of state law) by them (WLC) seeking a zoning opinion forcing

17  (coercing) PJD to appeal such opinion to further delay PJD from going

18  into business and then turn around and deny him the license on another

19  matter altogether.

20         C.)    The possibility that the WLC and its members violated the

21  Federal RICO ACT by acting as a Enterprise (WLC) to protect said license

22  from being issued to PJD at all cost making at least two predicated acts

23  of conspiring to derail (seeking zoning opinions without having

24  jurisdiction to seek such opinions and possibility that this license was

25  promised to someone, for a political payoff - "economic motive") PJD

    from going into business thus interrupting interstate and foreign

1    commerce and indirectly coercing PJD to appeal such zoning opinions

2    substantially delaying PJD from going into business thus interrupting

3    international and interstate commerce.

4        D.)    The possibility that the WLC decision was "tainted" because

5    PJD has become a "nuisance" over the years to the WLC and other public

6    officials.  "Commonsense" will prevail that Wentworth and McCaffery were

7    not free of all bias towards PJD when rendering their final decision.

8        E.)    The possibility that the WLC and it's members violated the

9    Hobbs Act.

10       F.)    Paragraph's A-E above all in retaliation against PJD for

11   him being a constant critic of members of the WLC and other politicians

12   and for PJD exposing members of the WLC and other politicians in

13   lawsuits filed in this court and federal court.

14

15   76.   Grant such other and further relief as may be necessary and

16   appropriate.

17

     Signed under the pains and penalties of perjury.

18

19                           Dated this 28th day of August, 2003

20

21

22                           Peter J. Donovan, pro se
                             35 Longmeadow Road
23                           Arlington, MA 02472
                             Tel: 781-467-7019 (work)
                             Tel: 781-643-2848 (home)
24

25