UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
98-10540-LPC

PETER J. DONOVAN

Plaintiff

v.

CITY OF WOBURN, ET AL.

Defendants



## MEMORANDUM OF DECISION

April 25, 2000

COHEN, M.J.

This is an action brought by plaintiff Peter J. Donovan claiming, among other things, that he (and his corporation The Boston Beer and Wine Company, Inc., hereinafter referred to as "BBWC"), were wrongfully denied a package store license in the City of Woburn. In addition to various and sundry state law claims, plaintiff contends that the denial of applications for a package store violated his civil rights and constituted a violation of the RICO statute.[1] Named and remaining[2] as defendants herein insofar as it relates to plaintiff's federal claims are the so-called City of Woburn defendants,[3] the

---

[1] Hence the filing in this court based on federal claims.

[2] Other defendants have been voluntarily dismissed.

[3] The City of Woburn, the Woburn Licensing Commission, John Rabbit (the Mayor of Woburn at times relevant to the allegations set forth in plaintiff's Amended Complaint), Robert Dever (the Mayor of Woburn from 1996 to the present), Patricia Galante (a member of the Woburn Licensing Commission), Kevin Maguire (a member

-1-

Commonwealth defendants⁴ and the private defendants.⁵

Briefly stated,⁶ plaintiff, as an individual, applied for a package store license in September 1995. A hearing on that application was scheduled before the Woburn Licensing Commission. Upon his arrival at that hearing, plaintiff concluded that the "house was packed" against him.⁷ He accordingly withdrew that application. On two later occasions, his corporate entity, BBWC, filed similar applications. Both were likewise denied by the Woburn Licensing Commission. On the occasion of the latter denial, plaintiff filed an administrative appeal with the ABCC. The ABCC affirmed the decision of the Woburn Licensing Commission.⁸ And, on account of that, he sues the City, State and private defendants for compensatory and punitive damages.

Against this factual background, plaintiff claims that the actions of the defendants violated his due process rights (Count III), his First Amendment rights (Count IV), and the RICO statute (18 U.S.C. § 1961 et seq.). For the reasons which follow, it is hereby

---

of the Woburn Licensing Commission), and Paul Wentworth (a member of the Woburn Licensing Commission). The individuals are sued in their individual capacities.

⁴ The Commonwealth of Massachusetts, the Commonwealth's Alcohol Beverage Control Commission ("ABCC"), Walter Sullivan (Chairman of the ABCC), Suzanne Ianella (a Commissioner of the ABCC), and Frederick Riley (a Commissioner of the ABCC). The Commissioners are sued in their individual capacities.

⁵ North Woburn Package Store, Inc., a current holder of a package store license in the City of Woburn, and Charles McSheffrey (President of North Woburn Package Store, Inc.).

⁶ Other relevant facts as pleaded by the plaintiff in his Amended Complaint, as well as augmented at the hearing before this court, will be set forth infra where appropriate.

⁷ More specifically, plaintiff says that Patricia Galante, a member of the Woburn Licensing Commission, had relatives who - like plaintiff - were interested in securing the last remaining liquor license in the City of Woburn. According to the plaintiff, Ms. Galante ensured that the hearing was attended by many whom she knew would oppose the application filed by the plaintiff, and whom she knew would vocalize their objections to the application filed by the plaintiff. Because of this, plaintiff felt "intimidated", and withdrew his application.

⁸ Although not set forth in the pleadings, at oral argument this court was advised that the decision of the ABCC was vacated by a decision of a Massachusetts Superior Court Judge. That decision, in turn, was appealed to the Massachusetts Appeals Court, and that appeal is currently pending.

ordered that all federal claims asserted by the plaintiff in his Amended Complaint be denied for failure to state a claim upon which relief may be granted.

I. Standing of the Plaintiff (All Federal Claims [Counts III, IV, and X])

In this court's view, apart from the allegations relating to the first application for a liquor license,[9] plaintiff does not have standing to make any claims against the defendants. The two applications which were actually denied by the Woburn Licensing Commission were applications filed by BBWC - not the plaintiff. And the denial of the last application which was reviewed and affirmed by the ABCC also related to an application for a package store filed by BBWC - not the plaintiff. Under settled principles, absent a proper derivative action,[10] a shareholder - even a sole shareholder - does not have standing to assert the rights of a corporate entity under the Civil Rights statutes, e.g., Smith v. Martin, 542 F.2d 688, 690 (6th Cir. 1975); Erlich v. Glasner, 418

---

[9] And which was withdrawn by the plaintiff prior to a hearing thereon. See note 7 above.

[10] And there is no showing in the case that the action was brought as, or could be brought as, an appropriate derivative action.

In a motion to amend the complaint (# 139) filed after the hearing on the motions to dismiss, denied by this court on March 31, 2000 (# 141), plaintiff, invoking Rule 23.1, F.R. Civ. P., sought permission to amend for the purpose of pursuing the rights of the corporate entity, BBWC.

Rule 23.1, however, as a rule of procedure, required a heightened pleading standard, not one governing when a shareholder is authorized to bring a derivative action. Under settled principles, when a plaintiff brings a federal law claim (as has plaintiff in this case), the law of the state of incorporation of the corporate entity will normally determine whether a shareholder may bring a derivative action. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98 (1991); Gonzalez Turul v. Rogatol Distrib., Inc., 951 F.2d 1, 2 (1st Cir. 1991). See also 5 Moore's Federal Practice, § 23.1.04[2] (Matthew Bender 3d ed.).

Under Massachusetts law, a shareholder may initiate a derivative action only upon a showing, at a bare minimum, that he or she has made demand on the corporation's board of directors (unless it is pleaded and shown that a demand would be futile) to bring suit, and the board of directors rejects that demand. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corporation, 326 Mass. 99, 113, 93 N.E.2d 251, 258 (1950).

In this case, plaintiff has not pleaded that he has satisfied these requirements under the substantive law of Massachusetts. Nor can he do so. Indeed, the BBWC qua BBWC has pursued judicial remedies in the state courts in connection with the denial of its last application for a liquor license, and plaintiff, in his pleadings and in his presentation before this court, has proffered nothing indicating that the board of directors of BBWC would reject his demand to bring suit on its own behalf.

F.2d 226, 226-27 (9th Cir. 1969) or under RICO. E.g., Willis v. Lipton, 947 F.2d 998, 1001 (1st Cir. 1991); Roeder v. Alpha Industries, Inc., 814 F.2d 22, 29-30 (1st Cir. 1987); Pappas v. Passias, 887 F. Supp. 465, 470-71 (E.D.N.Y. 1995); Levine v. Prudential Bache Properties, Inc., 855 F. Supp. 924, 939 (N.D.Ill. 1994); General Electric Co. v. Rowe, 1992 WL 277997 (10 E.D.Pa. 1992).

## II. Due Process (Count III)

In Count III of his Amended Complaint, plaintiff alleges that the City and State defendants violated his "due process rights" in denying his application and the subsequent applications by the corporate BBWC for a package license.[12] In particular, plaintiff alleges that the members of the Woburn Licensing Commission were biased, as were the Commissioners of the ABCC when he (or his corporate entity, BBWC) appealed the denial of the applications by the Woburn Licensing Commission.[13] In this

---

[11] There that court observed:

A RICO suit may be brought by a person who is "injured in his business or property by reason of a violation" of the RICO statute. 18 U.S.C. § 1964(c). <u>Shareholders, however, have no standing to bring RICO lawsuits in an individual capacity for claims that in reality are derivative: If the shareholder's injury resulted directly from an injury to the corporation, but only indirectly from the harm the wrongdoer wreaked upon the corporation, the RICO claim belongs to the corporation, and not the shareholder.</u> See Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990); Flynn v. Merrick, 881 F.2d 446, 449 (7th Cir. 1989). (Emphasis added; footnote omitted).

[12] Plaintiff does not specify whether his claim is based on substantive due process, procedural due process, or both. In the circumstances, however, for the reasons set forth in the text below, plaintiff fails under either basis.

[13] And even more specifically, as alleged by the plaintiff.

"(1)    It is believed that Galante never should of voted based on information including two family members having applications on file during all relevant time concerning this last liquor license. Hall v. Thayer, 105 Mass. 219 (1870); Taylor v. County Commissioners of Worcester, 105 Mass. 225 (1870) and Board of Selectman of Barnstable v. ABCC, 373 Mass. 708 (1977).

(2)    It is believed that Maguire should not of voted because he derives his benefits from the city of Woburn and does sub contract work for the city of Woburn and he was influenced by Rabbit and Dever to change his vote.

(3)    It is believed that Wentworth should not of voted based on information including being

-4-

regard, however, plaintiff fails to state a claim upon which relief may be granted under Count III for the following reasons:

    (A)  First, to the extent that his due process claims relate to the denial of applications submitted by the corporate entity, BBWC, BBWC is not a party to this suit, and plaintiff has no standing to assert the due process claims of BBWC for the reasons set forth in Part I above.

    (B)  Second, to invoke either a procedural due process claim, plaintiff must show, at the very least, a deprivation of a liberty or property interest. Plaintiff has not, and cannot, establish the existence of a property right or liberty interest of which he (or the corporate entity, BBWC, for that matter) has been deprived.

Ordinarily, one must look to state law to determine the existence vel non of a property right. E.g., Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). So far as this court can determine, no court has concluded that one has a "right" to be awarded a liquor license,[14] absent a state statute or local ordinance establishing that "right" in the first place. Indeed, precedent in this Circuit and the Massachusetts state courts, as well as positive Massachusetts law, suggests that no such "right" exists. Grendel's Den, Inc. v. Goodwin,

---

influenced by package store owners and Dever.

(4)  It is believed that the ABCC, Commonwealth, Sullivan and Ianella should not of heard the appeal of the Plaintiff's company because they were influenced by lobbyist to vote against the Plaintiff's proposed type of business. In addition, Mr. Sullivan has written articles to this effect in industry business journals."

[14]  What "rights", if any, a holder of a valid liquor license may have vis a vis revocation or termination of that license may implicate other concerns. But that is not this case. Neither plaintiff nor the corporate entity was, during the relevant time alleged in the Amended Complaint, a holder of a liquor license. To the contrary, they were merely applicants who fell short in their respective applications.

662 F.2d 88 (1st Cir. 1981),[15] aff'd en banc 662 F.2d 101 (1st Cir. 1988), rev'd on other grounds sub nom. Larkin v. Grendel's Den, Inc., 459 U.S. 116 (1982); T.T. The Bear's Place, Inc. v. Rodriguez, 2 Mass. L. Rptr. 1, 1994 WL 879647 (Mass. Super. February 17, 1994);[16] GL 138, § 23.[17]

(C)   Third, to the extent that plaintiff relies on any claim that he has a property right, and was improperly denied that right, a claim will not lie under Section 1983 where the plaintiff has failed to allege and show that the plaintiff does not have an adequate post-deprivation remedy in the state courts to correct the errors occurring at the local licensing level. E.g. Hudson v. Palmer, 468 U.S. 517, 536 (1986); Licari v. Ferruzzi,

---

[15]   There that Court observed(Id. at 90, n. 4):

Grendel's contends that the operation of section 16C has deprived it of "liberty, or property, without due process of law." U.S.Const. amend. XIV, § 1. We observe at the outset that it is by no means clear precisely how, if at all, the due process clause serves to constrain a state's procedure for granting limited numbers of privileges to conduct a highly regulated enterprise. Surely Grendel's has no "entitlement" to a liquor license such as would implicate a property interest; nor does an application for a liquor license involve a "fundamental" or "natural" right such as the right to earn a living, engage in one's chosen profession, or even to engage in activities generally available to citizens on equal terms with others that might be characterized as a protected "liberty" interest. See Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Medina v. Rudman, 545 F.2d 244 (1st Cir. 1976), cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977); Raper v. Lucey, 488 F.2d 748 (1st Cir. 1973). (Emphasis added).

[16]   There the judge, construing its own Massachusetts laws, concluded in a matter involving a current holder of a liquor license:

As to plaintiff's due process claim, a holder of a liquor license has no property right in that license with respect to the licensing authority. (Emphasis added).

That case involved a current holder of a valid liquor license. See note 14 above. It cannot be realistically said that, if a holder of a valid license does not have a property interest, that a putative applicant for a license has any property right in securing a license in the future.

[17]   That statute provides in pertinent part:

No holder of such a license or permit hereunder shall have any property right in any document or paper evidencing the granting of such license or permit and issued by the licensing authorities, and said authorities, upon the expiration, suspension, revocation, cancellation or forfeiture of such a license or permit shall be entitled upon demand to the immediate possession thereof. (Emphasis added).

*supra*. In this case, plaintiff has not alleged, and, indeed, cannot show, that he (or his corporate BBWC) did not, or does not, have adequate post-deprivation remedies in the state. As plaintiff concedes, a disappointed applicant for a liquor license may seek review of the decision of the local licensing authority by the ABCC. And if not satisfied by the review provided by the ABCC, the disappointed applicant may then file an action in the Massachusetts Superior Court. Indeed, when the second application of BBWC was denied, and that denial was approved by the ABCC, BBWC <u>successfully</u> convinced a Massachusetts Superior Court judge to grant that corporate entity the relief which it sought. Plaintiff has not shown, and cannot show, that he does not have adequate post-deprivation remedies.

(D)     Fourth, to the extent that plaintiff's claims (or those of BBWC) are bottomed on notions of substantive due process, even though a plaintiff need not show procedural irregularities, plaintiff (and BBWC) has still failed to make out a claim of a denial of substantive due process.

A showing of a substantive due process can be made out under one of two theories (<u>Pittsley</u> v. <u>Warish</u>, 927 F.2d 3, 6 (1st Cir. 1991))--

> The Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first theory, it is not required that the plaintiffs prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it "shocks the conscience." See <u>Rochin</u>, 342 U.S. at 172, 173, 72 S.Ct. at 209-10. To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process

-7-

clause.[18] See Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); see also Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (state must provide medical care to persons with serious medical needs while in state custody); Youngberg v. Romeo, 457 U.S. 307, 315, 319, 102 S.Ct. 2452, 2457, 2459, 73 L.Ed.2d 28 (1982) (individual committed to a state institution has a protected liberty interest in receiving reasonably safe living conditions and freedom from unreasonable bodily restraints); Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (corporal punishment of a student inflicted by a public school teacher violates substantive due process); Landrigan v. Warwick, 628 F.2d 736, 741-42 (1st Cir.1980) (substantive due process implicated where a policeman uses excessive force in the apprehension of a suspect). (Emphasis added).

Under the first theory, in this case, even assuming all that plaintiff has said - i.e., that the local licensing board (and the members of the ABCC upon review of the denial of its second application for a license by the local licensing board) never intended to give plaintiff (or BBWC) a fair shake in their applications for a liquor license[19] - neither plaintiff nor BBWC can show that the conduct of the board members (or the ABCC) "shocks the conscience" within the meaning of Rochin v. California, 342 U.S. 165 (1952), or its progeny. See e.g., Grendel's Den, Inc., supra.[20] And under the second theory, plaintiff

---

[18] The "property" interest referred to by the Court in Pittsley in the context of a substantive due process inquiry differs from a property interest required in the context of a procedural due process context. As to the latter, a court may look to state law for the existence of a property interest. As to the former, however, a plaintiff must show that the conduct complained of "...violated a specific constitutional guarantee or liberty interest protected by the substantive due process clause." Pittsley, at 7. (Emphasis added).

[19] Because one of the local licensing board's members wished to award the remaining available license to a relative of that member.

[20] In Grendel's Den, although doubting that one who seeks a liquor license has a property right thereto or a liberty interest therein, see note 15 above, the Court nevertheless proceeded to examine the due process claim on its merits. Upon that examination, that Court found no violation of procedural or substantive due process, clearly indicating that the denial of a liquor license, without more, is not so egregious or offensive as to fit within the definition of conduct which "shocks the conscience" within the meaning of Rochin.

This court's independent review (plaintiff cited none) of those cases in this Circuit and others where a court found a violation of substantive due process under the first theory indicates that the conduct in those cases was far more egregious and far more offensive to the community's sense of fair play than the conduct alleged here.

and BBWC has simply failed to identify a "...specific constitutional guarantee or liberty interest protected by the substantive due process clause." Plitsley, at 7. Indeed, that is also clear from the holding in Grendel's Den, Inc., supra.

(E) Fifth, insofar as due process claims are asserted against the individual members of the local licensing board, even assuming that plaintiff (or BBWC) could, for the first time, establish a property right or liberty interest where none has been established before,[21] these individual defendants have asserted a defense of qualified immunity.

Under settled precedent, in order to defeat a claim of qualified immunity, a plaintiff must show that the constitutional right alleged to have been violated was "clearly established" at the time of the alleged violation and that a similarly situated defendant would have known that the challenged conduct violated that "clearly established" constitutional right. E.g., Napier v. Town of Windham, 187 F.3d 177, 182 (1st Cir. 1999).[22]

Plaintiff clearly cannot establish either prong of the qualified immunity paradigm. Given that every court (federal and state) that has addressed the matter in terms of a liquor license under GL 138, § 23, has strongly intimated - if not concluded - that one does not have a property right to or liberty interest in the securing of a liquor license,

---

[21] And plaintiff cannot for the reasons set forth above.

[22] There the Court observed:

There are two prongs to the qualified immunity analysis. The first prong is whether the constitutional right in question was clearly established at the time of the alleged violation. See Swain v. Spinney, 117 F.3d 1, 9 (1st Cir.1997). In the second prong, the court employs an "objective reasonableness" test in determining whether a reasonable, similarly situated official would understand that the challenged conduct violated the established right. See Id.

Grendel's Den, Inc., supra; T.T. The Bear's Place, Inc. v. Rodriguez, supra, it clearly cannot be established that plaintiff (or BBWC) had a "clearly established" right in securing a liquor license. And, for precisely the same reason, it cannot be reasonably said that the local licensing board members, in denying the applications for a license, should have known that their conduct in doing so violated a "clearly established" constitutional right.[23] Simply put, plaintiff cannot defeat a claim of qualified immunity asserted by the local licensing board members.

(F) Sixth, insofar as due process claims are asserted against the individual members of the ABCC (which, consistent with statutory mandate, reviewed on appeal the second decision of the local licensing board in denying the second application of BBWC, see GL 138, § 67), it is clear to this court that those members of the ABCC enjoy <u>absolute</u> immunity from a suit for damages as quasi-judicial officers. By legislative mandate, the members of the ABCC[24] are charged with responsibility of adjudicating appeals from denials (and/or revocations or modifications) of liquor licenses. The appeal process requires a petition to be filed, notice to the parties, and a hearing. The ABCC - and no other forum - is specifically charged with reviewing the decision of the local licensing board, and, after such review, granting relief deemed appropriate.

In this regard, it is clear, just as in the case of <u>Bettencourt</u> v. <u>Board of Registration in Medicine of the Commonwealth of Massachusetts</u>, 904 F.2d 772 (1st Cir. 1990), the

---

[23] Indeed, to do so, would hold the local licensing board members to a higher legal standard than the judges who decided the matters in Grendel's Den, Inc., and T.T. The Bear's Place, Inc., supra.

[24] And there are and were, at all relevant times, only three - those who are named as defendants in this case.

members of the ABCC, in reviewing the appeal of BBWC,[25] were acting in a quasi-judicial capacity. That is to say, all relevant quasi-judicial inquiries (Bettencourt, supra at 783),

> First, does a Board member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)? Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a physician's constitutional rights? See Butz v. Economou, 438 U.S. 478, 510-13, 98 S.Ct. 2894, 2912-14, 57 L.Ed.2d 895 (1977); Austin Mun. Securities v. Nat. Ass'n of Securities, 757 F.2d 676, 688 (5th Cir.1985); Simons v. Bellinger, 643 F.2d 774, 778 (D.C.Cir.1980),

must clearly be answered in the affirmative in this case. The ABCC members have clearly established quasi-judicial immunity in the circumstances of this case, and they are entitled to absolute immunity from a suit for damages. Bettencourt, supra.

Moreover, even if the ABCC defendants do not enjoy absolute immunity, they clearly enjoy qualified immunity, and plaintiff cannot defeat a claim of qualified immunity for the reasons set forth in Part II. E above.

For all of these reasons, plaintiff fails to state a claim for relief under Count III against the defendants named therein.

IV.  First Amendment Retaliation Claim (Count IV)

After the plaintiff initially applied for a liquor license on his own behalf, and then withdrew that application, he apparently[26] embarked on a letter writing campaign to the media and otherwise decrying his perception of the corruption inherent in the city

---

[25]    At BBWC's request, we might add.

[26]    Or so he says.

government. When the first application was filed by BBWC, the local licensing board denied the application. On account of his extensive and critical letter writing to the media and others, plaintiff now contends that the denial of the first BBWC application was in retaliation for his exercise of his First Amendment rights.[27]

None of the parties have briefed this issue. In this court's view, however, this claim should be analyzed in the same manner as in Arrington v. Dickerson, 915 F.Supp. 1516 (M.D.Ala. 1996) (also a denial of a liquor license case).

In Arrington, the court held (Id. at 1525):

That is, a plaintiff must show the following: (1) that his or [her] speech is protected by the First Amendment; (2) that the defendants took an adverse action against the plaintiff; and (3) that the adverse action was prompted or caused by the plaintiff's exercise of his or [her] First Amendment rights.

Applying that test to the allegations in this case, plaintiff, even assuming that the speech in which he engaged was protected by the First Amendment,[28] has failed to allege a claim for First Amendment retaliation.

The second element, "that the defendants took an adverse action against the plaintiff", has not been shown. Even assuming that one could reasonably infer that the licensing board was aware of the plaintiff's missives to the media, and even if it could be reasonably inferred that the licensing board denied a liquor license application on account of that fact, the application which was denied was the application of BBWC, not

---

[27] Specifically, plaintiff alleges:

Based on information and belief, Dever indirectly, and Maguire directly worked in unison and violated Plaintiff's First Amendment right to freedom of speech at the June 1996 WLC hearing. Maguire changed his position as a result of Plaintiff's criticism of the manner in which the WLC conducts business.

And this court assumes that it was for purposes of the motion to dismiss.

the plaintiff. Accordingly, the plaintiff has not established, and cannot establish, that the defendants "took an adverse action against the plaintiff" under the Arrington calculi.

So, too with the third element. As against a claim of qualified immunity, as has been asserted in this case by the members of the local licensing board,[29] a suitor must pass a heightened pleading standard. Crawford-El v. Britton, ___ U.S. ___, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998). That is to say, a plaintiff must allege "specific, nonconclusory factual allegations that establish that defendant acted based upon an improper motive". Judge, at 75.

In this case, plaintiff has failed to allege specific and nonconclusory factual allegations from which one could reasonably infer that denial of the BBWC liquor license application "was prompted or caused by the plaintiff's exercise of his First Amendment rights." On this, plaintiff simply alleges that (1) he engaged in extensive First Amendment activity; (2) that the defendants were aware of that First Amendment activity; and (3) that BBWC application was denied. Significantly absent, however, is anything from which one could reasonably infer (as opposed to surmise) that the action of the board was "prompted or caused" by plaintiff's First Amendment activity. Indeed, plaintiff's own steadfast allegations - indeed, his consistent theme woven throughout this entire case - belies the inference. At bottom, plaintiff has consistently maintained that his original personal application would have been denied,[30] and that all of the

---

[29] The only defendants named in Count IV.

[30] Before he withdrew that application.

-13-

applications on behalf of BBWC were denied because of a conflict of interest.[31] On this and plaintiff does not say that he has more, no reasonable trier of fact could reasonably infer or conclude that the denial of the license to BBWC was prompted or caused by plaintiff's First Amendment activity. Plaintiff fails to state a claim for relief under Count IV against the defendants named herein.

## V. The RICO Claim (Count X)

Plaintiff's initial complaint sans a RICO count was dismissed without prejudice by the district judge to this case was then assigned for failure to state a claim upon which relief may be granted.

In his Amended Complaint filed later, plaintiff upped the ante and included a RICO count against the city defendants and, perhaps, defendant McSheffrey, a current owner of a liquor license in Woburn.[32] Specifically, plaintiff alleged:

> At all relevant times to this complaint, Rabbitt, WLC, WLC Galante, Maguire, Robertson, Dever and Wentworth acted as an enterprise (a group) as defined by 18 USC §1964(4) that is engaged in, or has power to effect, interstate and foreign commerce. One of the purposes of the WLC is to issue liquor licenses that in turn effect interstate and foreign

---

[31] Indeed, that is precisely the claim made in support of Count III where the defendant alleges:

(1) It is believed that Galante never should of voted based on information including two family members having applications on file during all relevant time concerning this last liquor license. Hall v. Thayer, 105 Mass. 219 (1870); Taylor v. County Commissioners of Worcester, 105 Mass. 225 (1870) and Board of Selectman of Barnstable v. ABCC, 373 Mass. 708 (1977).

(2) It is believed that Maguire should not of voted because he derives his benefits from the city of Woburn and does sub contract work for the city of Woburn and he was influenced by Rabbit and Dever to change his vote.

(3) It is believed that Wentworth should not of voted based on information including being influenced by package store owners and Dever.

See note 13 above.

[32] Although it is not entirely clear that McSheffrey is being sued under Count X.

-14-

commerce and effect competition. The WLC is appointed by the Mayor of Woburn and controlled by the Mayor of Woburn. Therefore, no separation between the two offices and according to Massachusetts General Laws, both offices should be separate. The Mayor's office of Woburn and WLC act as one, with orders handed down from the Mayor.

Defendants knowingly and willfully associated with the enterprise, directly or indirectly, to protect this asi liquor license worth $100,000 from being issued but only to themselves, relatives, or friends and/or protect other package store owners from competition.

The pattern of racketeering engaged in by the Defendants involved two separate but related schemes, carried out at 1992 to present and directed at other applicants and the Plaintiff (the victims).

(1) Scheme one: Rabbit promised this last license to the Galante family and appointed WLC Galante to the WLC to make sure this license was not issued to anyone else, but the Galante family. This involved using the taxpayers' money to defend Rabbit's personal promise to the Galantes. This also involved violating individual rights of applicants, including the Plaintiff, pursuant to the U.S. Constitution. This also involved a definite pattern of deception, obstruction of justice, withholding substantial evidence, conspiracy, collusion and deception.

(2) Scheme two: Dever was out to protect McSheffrey and other package store owners listed above, from competition. This involved a pattern of collusion, conspiracy and obstruction of justice. This also involved violating the Plaintiffs' individual rights pursuant to the U.S. Constitution.

Plaintiff believes the defendants committed numerous predicate acts of collusion through telephone calls and "secret" meetings with Rabbit and Dever, and not limited to, in and around pertinent dates that revolved around Plaintiff's WLC public hearings and not limited to other dates.

In the circumstances, plaintiff falls far short of pleading a valid RICO claim.

For one thing, even assuming that the plaintiff has identified predicate acts of racketeering, the plaintiff has failed to show that the enterprise was distinct from the persons against whom he has brought suit under Section 1962(a) or Section 1962(c).[33]

---

[33] Plaintiff has not specified which section, if any, his claim is based upon.

To prevail under Section 1962(a), plaintiff must allege that income derived from a pattern of racketeering was used in the acquisition of an enterprise. No such claim is made here. To prevail under Section 1962(c), the plaintiff must allege, and be able to show, that the person or persons conducting the racketeering be distinct from the enterprise. In this case, plaintiff alleges that the named defendants conducted the acts of racketeering and that they, and they alone, also were the enterprise.[34]

For another, the defendant has not sufficiently alleged predicate acts of racketeering within the meaning of RICO. Under settled precedent in this Circuit, to the extent that an alleged predicate act sounds in fraud, a heightened pleading standard obtains. Under that heightened pleading standard, a plaintiff must assert all of his elements according to the heightened pleading requirements of Rule 9(b), F.R.Civ.P. E.g., Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991); System Management, Inc. v. Loiselle, ___ F.Supp.2d ___, 2000 WL 294878 *4 (D.Mass. March 9, 2000). In this case, plaintiff fails to meet this standard. None of the acts alleged as predicate acts refers to an act of racketeering as defined in 18 U.S.C. § 1961(1).[35] And although plaintiff refers to the use

---

[34] "At all relevant times to this complaint, Rabbitt, WLC, WLC Galante, Maguire, Robertson, Dever and Wentworth acted as an enterprise (a group) as defined by 18 USC §1964(4) that is engaged in, or has power to effect, interstate and foreign commerce."

[35] He alleges:

"This also involved a definite pattern of deception, obstruction of justice, withholding substantial evidence, conspiracy, collusion and deception...collusion, conspiracy, and obstruction of justice."

In context, it is clear that the "obstruction of justice" referenced in his allegations are not the sort of offenses referred to in Section 1961(1)(C) - i.e., violations of Title 18, United States Code, Sections 1503, 1510, 1511, and 1512.

of the telephones." He has certainly not enumerated (indeed, he has not even mentioned) the elements of wire fraud (including the developing of a scheme to defraud within the meaning of the wire fraud statute, 18 U.S.C. § 1343), and he has certainly not pleaded the elements of wire fraud with the particularity required by Rule 9(b), F.R. Civ. P.[37]

For yet another, plaintiff has not alleged proper causation within the meaning of RICO. Assuming that plaintiff's claim is brought under Section 1962(a), he must allege and show that his "personal injury"[38] was caused by the use of the investment of the income generated by the acts of racketeering. E.g. System Management, Inc. v. Loiselle, ___ F.Supp.2d ___, 2000 WL 294878 *14 (D.Mass. March 9, 2000); Compagnie de Reassurance D'Ile de France v. New England Reinsurance, 57 F.3d 56, 91 (1st Cir.1995); Rhodes v. Consumers Buyline, Inc., 868 F.Supp. 368, 375 (D.Mass.1993) (Keeton, J.); Digital Equip. Corp. v. Currie Ent., 142 F.R.D. 27, 31 (D.Mass.1992) (Bowler, M.J.); Rhone v. Energy North, Inc., 790 F.Supp. 353, 357 (D.Mass.1991). In

---

[36] Plaintiff alleges that he believes, note 31 above, that "...defendants committed numerous predicate acts of collusion through telephone calls."

[37] In Ahmed, supra, at 889, the Court observed vis a vis a RICO claim and Rule 9(b), F.R. Civ. P.:

Turning first to predicate acts, we previously have noted "[i]t is not enough for a plaintiff to file a RICO action, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." See Feinstein, 942 F.2d at 42. Ahmed's pleading contains only the bald assertion that the defendants (unspecified) used the U.S. mails to fraudulently convey their interests in Ahmed's properties, that the defendants (again unspecified) used the U.S. Postal Service by mailing unspecified materials, and that the defendants used wire communications.

In this case, plaintiff's allegations are even less specific than those in Ahmed. Moreover, to qualify as a predicate act for a RICO claim, a plaintiff must allege and show that telephone calls - even if made in furtherance of a scheme to defraud within the meaning of 18 U.S.C. § 1343 - were interstate calls within the meaning of that section. E.g. Brooke v. Schlesinger, 898 F.Supp. 1076 (S.D.N.Y. 1995); McCoy v. Goldberg, 748 F.Supp. 146 (S.D.N.Y. 1990).

[38] And he has none, since he never went forward with his personal license application.

-17-

this case, he has not alleged any use of income generated by the alleged acts of racketeering, much less the investment of such income by the defendant. And assuming that plaintiff's claim is brought under Section 1962(c), again, for the reasons set forth in Part I above, plaintiff has not alleged any injury to his business or property.

For all of these reasons, plaintiff fails to state a valid RICO claim.

## VI.   The Pending State Law Claims (Counts I, II, V, VI, VII, VIII, IX)

In this court's view, given the want of subject matter jurisdiction which was based exclusively on the federal claims referred to above,[39] this is an appropriate case for this court to exercise its discretion, see United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and dismiss the pendent state law claims without prejudice.

Although most - but not all - of the pendent state law claims have been fully briefed, this case, at bottom, involves plaintiff's claim (or that of the corporate entity, BBWC) to a stake in a liquor license in the City of Woburn.[40] Given the highly regulated nature of liquor and liquor licenses by the Commonwealth of Massachusetts, it is clear that the Commonwealth of Massachusetts, far more than this court, has a peculiar interest in the administration of the laws relating to the grant and denial of liquor licenses. Even more so in this case, since the very liquor license to which plaintiff lays claim is the subject of legal action currently pending in the courts of the Commonwealth

---

[39] And the subject matter jurisdiction of this court is based solely on the basis of his federal claims. Plaintiff does not, and cannot, allege complete diversity of the parties for purposes of diversity jurisdiction.

[40] As this court understands the fact, the claim relates to the sole remaining liquor license in the City of Woburn.

of Massachusetts."

Accordingly, plaintiff's pendent state law claims against the remaining defendants in this case shall be dismissed without prejudice.

VII. For the reasons set forth above, on Counts III, IV, and X, judgment shall enter against the plaintiff and in favor of the remaining defendants, and the remaining pendent state law claims shall be dismissed without prejudice.

*[signature]*
UNITED STATES MAGISTRATE JUDGE

---

[41] At the hearing, plaintiff expressed concern that dismissal of the pendent state law claims would bar his claims forever on statute of limitations grounds. That is not the case, however, provided that he comply with applicable state and/or federal law.

Massachusetts has enacted a statute dealing with the statute of limitations vis a vis pendent state law claims which have been dismissed without prejudice. G. L. c. 260 § 32 in relevant part states:

If an action duly commenced within the time limited in this chapter is dismissed ... the plaintiff ... may commence a new action for the same cause within one year after the dismissal or other determination of the original action ...

In Liberace v. Conway, 574 N.E.2d 1010, (Mass.App.Ct. 1991), the Massachusetts Appeals Court states: "We hold that G.L. c. 260 § 32, is applicable to pendent claims dismissed in a Federal Court." Id. at 1012.

The Massachusetts Supreme Judicial Court cited approvingly to the Liberace holding in Shafnacker v. Raymond James & Associates, Inc., 683 N.E.2d 662, 667 (Mass. 1997)(maintaining the term "action" includes claims brought originally in Federal court.)

Additionally, Section 1367(d) of Title 28 tolls the state statute of limitations on pendent state law claims dismissed without prejudice for a period of thirty (30) days.

[42] The remaining defendants do not include Sean Galvin and Giles Liquor, Inc. As to those two defendants, this court, on December 16, 1999, with the consent of the relevant parties, ordered the entry of separate judgment.

Some of the other named defendants w... ...re not officials of the City of Woburn and/or the Commonwealth of Massach... are not even named as c... ... the federal cla...s ... ...nts II, IV, and X.