


Saturday, January 14, 2006                                                                              Lawyers Weekly, Inc.

Try 3 Free | Subscriber Services | Our Newspapers | Other Products | Advertise | Help

## DONOVAN

v.

## CITY OF WOBURN, et al.

04-P-734 Appeals Court

PETER J. DONOVAN vs. CITY OF WOBURN & another.[1]

No. 04-P-734.

Middlesex. March 10, 2005. - January 13, 2006.

Present: Laurence, Beck, & McHugh, JJ.

Alcoholic Liquors, License, Alcoholic Beverages Control Commission. Administrative Law, Judicial review.

Civil action commenced in the Superior Court Department on August 28, 2003.

The case was heard by S. Jane Haggerty, J., on motions for summary judgment.

Evan T. Lawson (Michael Williams with him) for the plaintiff.

Jocelyn M. Sednay for the defendants.

McHUGH, J. Since 1995, Peter J. Donovan, the appellant, has been engaged in a sustained and unsuccessful effort to obtain a "package store" liquor license, see G. L. c. 138, § 15, from the Woburn License Commission (commission) so that he could operate what he describes as a business selling corporate gift baskets containing high end wines and spirits. The commission denied his most recent application on August 5, 2003. Donovan challenged the denial in a certiorari-like action he brought in Superior Court. See G. L. c. 249, § 4. A judge of that court granted summary judgment in favor of the commission and dismissed the case. Donovan has appealed. We reverse.

Donovan's effort to obtain a license began in February, 1995, when, doing business as Boston Beer & Wine Company, he applied to the commission for a so-called "wine and malt" license. At that time, he sought to sell "high-end" beer and wine, primarily at wholesale but with retail deliveries to fill mail orders constituting about five percent of his business. The commission determined that it could not issue limited "wine and malt" licenses.[2] Donovan, therefore, applied for a full alcohol license although he did not change his business plan. The commission approved his application but issued the license with a restriction that Donovan only sell wine and beer.

A few months later, Woburn legal counsel advised the commission that it could not limit licenses it issued under § 15 to the sale of beer and wine. The commission then voted to deny Donovan's application. The commission's denial was followed by a series of appeals to the Alcohol Beverages Control Commission (ABCC), reapplications and more denials until 1997 when the dispute landed in Superior Court. At issue in the Superior Court proceeding was the commission's denial, affirmed by the ABCC, of what was then the latest Donovan application on grounds that Woburn already had enough liquor stores; retail sales were not allowed in the area where Donovan proposed to operate; and Woburn's best interests would not be served by a mail order liquor business because of problems assessing the age and sobriety of purchasers.

After hearing and a review of the administrative record, a judge of the Superior Court granted summary judgment to Donovan and remanded the case to the commission. The judge found that the commission's denial of Donovan's application on grounds that Woburn already had sufficient liquor stores amounted to an abuse of discretion because the commission had not addressed the specific merits of the application Donovan had made.[3] The commission did not appeal.

On remand, the commission again denied Donovan's application, this time on zoning grounds. Donovan sought whatever zoning approvals he needed from the Woburn Zoning Board of Appeals (zoning board) but the zoning board denied his application. He appealed the denial to the Superior Court, see G. L. c. 40A, § 17, and, while the appeal was pending, reached a settlement with the zoning board (zoning agreement). The zoning agreement placed substantial limitations on the type of business Donovan would be permitted to conduct at any of the locations he had identified in his applications to the commission. Specifically, Donovan and the zoning board agreed that Donovan would operate a "gift service business (a business service with no more than 5% retail sales business)." They also agreed to sixteen other restrictions, the majority of which Donovan had suggested, including: no transfer of any liquor license for ten years; no refrigeration on the premises; no external product signs; no advertising for walk-in sales; only one cash register and counter for walk-in sales; no sales of snacks, lottery tickets, tobacco, nips, half-pint, pints or single bottles of beer; no bottle redemption except to the extent required by statute; deliveries limited to two delivery trips per day in noncommercial vehicles between the hours of 10:00 A.M. and

3:00 P.M., with all deliveries to be logged and no deliveries to residential addresses; and overall hours of operation limited to the hours between 10:00 A.M. through 7:30 P.M., Monday through Saturday.

With those restrictions in place, Donovan returned to the commission with a new application. The commission held a public hearing on July 31, 2003. Two citizens appeared to testify in opposition. No one testified in favor but Donovan did produce two surveys of nearby businesses he had conducted, one in 2001 and the other in 2003. The vast majority of the respondents said that there was a need for the gift business Donovan was proposing to conduct.

At the hearing's conclusion, the commission voted to deny the application. In the somewhat rancorous exchange that followed, commission members said they were denying the application because of the lack of public need for another liquor store in Woburn and some unspecified concern

regarding deliveries. Five days later, the commission sent Donovan a letter stating that it had denied his application because Woburn had enough liquor stores[4] and there were six other liquor stores in adjacent towns within two miles of Woburn's borders.[5] In addition, the commission's letter stated that it was unable to "condition" the license Donovan sought in a way that would satisfy "concerns" the commission specified as follows: "Concerns for proper control and need of mail order delivery business[,] given the City's current distribution of its package stores throughout the City, and availability to purchase alcohol" and "[c]oncern for possible later sale or transfer of license, to a full package store, that is, in this writer's judgment, not necessary" (emphasis in original).

With that as background, we turn to the governing law. The statutory language is clear. There is no right to a liquor license of the type specified in G. L. c. 138, § 15. The Legislature made that point explicit in c. 138, § 23, as amended by St. 1965, c. 399, when it said that:

"[t]he provisions for the issue of licenses and permits [under c. 138] imply no intention to create rights generally for persons to engage or continue in the transaction of the business authorized by the licenses or permits respectively, but are enacted with a view only to serve the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made."

Accordingly, the commission is invested with broad discretion to determine whether a license should issue and, as a consequence, it "may deny [a permit] even if the facts show[] that a permit could be lawfully granted." ACW Realty Mgmt., Inc. v. Planning Bd. of Westfield, 40 Mass. App. Ct. 242, 246 (1996), quoting from Zaltman v. Board of Appeals of Stoneham, 357 Mass. 482, 484 (1970).

Judicial review of the commission's decision is limited to determining whether the decision was arbitrary and capricious and whether the commission made an error of law. Great Atl. & Pac. Tea Co. v. Board of Lic. Commrs. of Springfield, 387 Mass. 833, 837 (1983); Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. 506, 511 (2000). In reviewing the administrative record, we do not substitute our judgment for the commission's. See Kinchla v. Board of Appeals of Falmouth, 11 Mass. App. Ct. 927, 927 (1981).

Neither the commission's broad discretion nor the limitations on judicial review, however, mean that the commission can do whatever it pleases whenever it chooses to do so. We have said before, and we repeat, that the commission "may exercise judgment about public convenience and public good that is very broad, but it is not untrammeled." Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. at 511. Accord Yerardi's Moody St. Restaurant and Lounge, Inc. v. Selectmen of Randolph, 19 Mass. App. Ct. 296, 301 (1985). Instead, "[w]here the factual premise on which [the commission] purports to exercise discretion is not supported by the record, its action is arbitrary and capricious and based upon an error of law, and cannot stand." Ruci v. Clients' Security Bd., 53 Mass. App. Ct. 737, 740 (2002).

We can dispense at once with one of the three grounds the commission proffered in support of its denial, namely, a fear that Donovan might transfer any license he was issued to someone who would use it for a "full" package store. The short answer to that concern is found in G. L. c. 138, § 23, which prohibits a licensee from transferring his or her license to a new person or place without commission approval. As we said in a different context, "a board may not deny a permit simply by conjuring a parade of horribles, particularly when it has the power to prevent them." Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 75 (2003).

The commission's fear that Donovan might transfer his license to someone who might use it for a "full" package store, however, illustrates the problem with the primary ground for its denial of Donovan's application – a belief that Woburn is already saturated with liquor or, at least, with liquor stores, and, therefore, there was no "need" for another.[6] Of course, the genuineness of that concern is substantially undercut by the commission's allowance of dramatic increases in the retail space of two existing stores while Donovan's applications were pending. But the real problem with the commission's saturation rationale stems from its failure to engage in a particularized analysis of the business Donovan was actually seeking to run and the location where he was seeking to run it.

From the outset, Donovan stated that he sought to operate a gift liquor business, not a traditional

package store. Under Donovan's agreement with the zoning board, no more than five per cent of his business can consist of traditional retail sales. Moreover, he must forgo all exterior product signs, cannot advertise for walk-in customers and must restrict his hours and delivery times. He cannot sell nips, half-pints, pints of liquor or single beers. He has to keep a delivery log that is subject to review by the city authorities.

Nothing in the record suggests that any other liquor store in Woburn operates under anything remotely resembling those restrictions. Neither the commission's decision nor the proceedings that produced that decision, however, focused on, attempted to quantify or otherwise examined the impact on overall availability of liquor in Woburn that Donovan's constricted ability to sell at retail would have. Instead, although it implicitly acknowledged that Donovan would not be operating a "full" package store, the commission's analysis proceeded as if Donovan's store were indistinguishable from the others found in Woburn and in surrounding cities and towns.

Moreover, in making its decision regarding the "need" for Donovan's store, the commission simply looked at the total number of stores in Woburn and the surrounding towns. Proper assessment of "need" for another liquor store, however, requires a more particularized inquiry: "the test [for need] includes an assessment of public want and the appropriateness of a liquor license at a particular location." Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. at 511. The record reveals that, regardless of the total number of stores in Woburn, no other store is located within two and one-half miles of the location in the northeast corner of Woburn where Donovan seeks to conduct his operation. Donovan chose that location because office parks are nearby and provide a potential customer base for the corporate gifts on which he will chiefly concentrate. In 2001 and 2003, Donovan conducted surveys of businesses located in those office parks which showed that a significant number of respondents felt that there was a need for the service Donovan was offering to provide. None of those factors is reflected in the commission's decision.

At a very minimum, sound exercise of discretion required the commission to consider the need for the business Donovan sought to run, not the need for some hypothetical business or the need for a business of the type typically run by others. By failing to tailor its inquiry and decision to the substantial limitations the zoning agreement imposed on Donovan[7] and the location where he planned to carry out his business, the commission based its assessment of need on abstractions that had few, if any roots, in the evidence the record contained. Proceeding in that fashion was both arbitrary and capricious. See generally Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. at 512 (where there is no evidentiary support for a commission decision, the decision is arbitrary and capricious).

That brings us to the commission's final "concern" with Donovan's application. In the commission's words, that concern had to do with "proper control and need of mail order delivery business; given the City's current distribution of its package stores throughout the City, and availability to purchase alcohol" (emphasis in original). Part of that "concern" appears to be a restatement of the "saturation" concern with which we have just dealt. With respect to "proper control," there was some discussion at the hearing regarding the manner in which Donovan would insure that the he was delivering liquor to those who were at least twenty-one years of age. The zoning agreement limited Donovan to "two delivery trips per day" via passenger or noncommercial vehicle, and prohibited residential deliveries. Donovan said that the recipient would have to sign for each delivery, that each signer would have to show identification verifying his or her age, and that he would keep the log of each delivery and make that log available for unannounced inspection by city officials, all as required by the zoning agreement. There was also a brief discussion of the fact that each of Donovan's delivery vehicles had to have a permit issued by the ABCC, something the acting chair of the commission said he knew nothing about. See G. L. c. 138, § 22.

The commission's cryptic reference to its "concern" with "proper control" failed to identify the danger or dangers it believed would accompany Donovan's delivery process. It is difficult to find such dangers in the record. All deliveries will be by vehicle. The vehicles will have, as they must, a permit issued by the ABCC. Recipients will have to prove that they are at least twenty-one. No deliveries will be made to residences. A log of all deliveries will be available for city officials to inspect whenever they wish.

Moreover, Donovan's will not be the first liquor delivery arrangement in the Commonwealth or even the first liquor delivery system in which orders will be taken by telephone, mail or Internet. On the contrary, the ABCC already has a "protocol" under which out-of-State suppliers can deliver alcoholic beverages ordered via mail, telephone and Internet to residential consumers, a protocol accompanied by "sting guidelines" designed to allow investigators to monitor compliance with State

law. See BAA Massachusetts, Inc. v. Alcoholic Bevs. Control Commn., 49 Mass. App. Ct. 839, 840-841, 846 (2000).

By requiring the commission to state its reasons for denying a license application, G. L. c. 138, § 23, fourth para., the Legislature has erected a barrier against arbitrary and ill-founded action. That barrier would quickly become an illusion if cryptic references to ephemeral concerns unanchored to evidence in the record were permitted to suffice. On the issue of delivery control, however, cryptic references to ill-defined and undeveloped abstractions are all the commission has proffered. They were an inadequate basis for denying Donovan's application.

We are left, then, with the question of the proper remedy. Donovan has been seeking a license for ten years. There have been numerous hearings before the commission and at least four proceedings in Superior Court.[8] As soon as a court invalidates one ground for denial or Donovan removes one commission-highlighted impediment to a license, the commission finds another. In the present proceeding, the commission has reverted, in part, to the ground for denial that was invalidated in 1997. Under these circumstances, we think that the appropriate remedy is an order requiring the commission to issue the license for which Donovan has applied. See MacGibbon v. Board of Appeals of Duxbury, 369 Mass. 512, 520 (1976); Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. at 513. See also Petrucci v. Board of Appeals of Westwood, 45 Mass. App. Ct. 818, 828 (1998).

The judgment of the Superior Court is vacated. The case is remanded to the Superior Court where a judgment shall enter requiring the Woburn License Commission to grant the application of the appellant, Peter J. Donovan, filed on June 19, 2003, for an "all alcoholic beverages" license under G. L. c. 138, § 15.

So ordered.

---

**FOOTNOTES:**

[1] License Commission of Woburn.

[2] The record does not show why the commission made that determination. Under G. L. c. 138, § 15, however, limited licenses, like full licenses, may be issued only if a city or town has voted to authorize them. Apparently, Woburn had not voted to authorize the limited licenses.

[3] The judge also noted that the commission had allowed an existing liquor store to more than triple its existing retail space by approving a request to expand that space from 1,700 to 5,300 square feet shortly after it denied Donovan's application.

[4] In that regard, the letter stated that the commission had issued seven of the eight package store licenses it was permitted by statute to issue in light of its population. See G. L. c. 138, § 17. It also said that Woburn had the highest ratio of package stores to people of any surrounding town, a conclusion apparently derived from an undetailed survey the chair of the commission announced in the middle of the hearing he had conducted almost two years earlier.

[5] The letter, however, did not address the reasons why the commission had allowed one existing package store to double its retail space and a second to increase its space approximately tenfold during the period that it repeatedly denied Donovan's application for lack of need.

[6] That is exactly the approach the commission took when it denied Donovan's application in 1995. As noted earlier, a judge of the Superior Court ultimately ordered entry of judgment invalidating that denial on grounds that a "saturation" rationale amounted to an "abandon[ment of] the exercise of discretion" governing statutes require. As also noted, the commission did not appeal that judgment.

[7] In that regard, it is irrelevant that the commission was not able to impose limitations on Donovan's liquor license that paralleled those required by settlement of the zoning case. Regardless of their source, the limitations defined the contours of the liquor distribution business Donovan was permitted to run.

[8] The first was the proceeding begun in 1997 at which the court invalidated the commission's denial of Donovan's application. Then there was a proceeding in 2002 that followed another commission hearing. At the conclusion of that proceeding, a judge other than the judge who had invalidated the commission's decision stated that, but for then unresolved zoning issues, she would order the commission to issue the license. Then there was the proceeding in which the zoning issues were resolved. Finally there is the present proceeding.

User Agreement For Subscriber-Only Online Benefits | Help | Our Privacy Policy
Send any questions or comments to comments@lawyersweekly.com

Customer Service: 1-800-451-9998   Technical Support: 1-800-444-5297 ext. 8156
© Copyright 2006 Lawyers Weekly, Inc. All Rights Reserved

DOLAN MEDIA COMPANY

Lawyers Weekly does not use spyware; however, we link to a number of other sites and do not take responsibility for any spyware they may use.

This site is best viewed with Internet Explorer 6 (click here to download) or Netscape 7 (click here to download)

68.163.179.150/5.93
0 milliseconds